## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

GOVERNMENT EMPLOYEES INSURANCE
CO., GEICO INDEMNITY CO., GEICO
GENERAL INSURANCE COMPANY, and
GEICO CASUALTY CO.,

           Plaintiffs,

v.

Case No.: 8:17-cv-2848-T-24TGW

PATH MEDICAL, LLC, PATH MEDICAL
CENTER HOLDINGS, INC., 1-800-411-PAIN
REFERRAL SERVICE, LLC, 1-800-411-I.P.
HOLDINGS, LLC, 411 PAIN ADVERTISING
GROUP, INC., ROBERT CASH LEWIN, D.C.,
HARLEY LEWIN, RUSSELL PERMAUL,
JOEL EARL MANION, D.C., LANDAU &
ASSOCIATES, P.A., THE LAW OFFICES OF
KANNER & PINTALUGA, P.A., TODD
LANDAU, HOWARD KANNER, ERIC
PINTALUGA, MICHAEL H. WILENSKY,
M.D., DAVID A. CHEESMAN, D.O.,
TIE QIAN, M.D., and RALPH G. MARINO,
M.D.,

           Defendants.

_____/



## COMPLAINT AND DEMAND FOR JURY TRIAL

    Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO

General Insurance Company and GEICO Casualty Co. (collectively "GEICO" or

"Plaintiffs"), as and for their Complaint against the Defendants, hereby allege as follows:

    1.    This action seeks to recover more than $15,000,000.00 that the Defendants

wrongfully obtained from GEICO by submitting, and causing to be submitted, thousands of

fraudulent no-fault ("no-fault", "personal injury protection", or "PIP") insurance charges through Defendant Path Medical, LLC ("Path Medical") relating to medically unnecessary, illusory, unlawful, and otherwise unreimbursable health care services, including initial examinations, follow-up examinations, diagnostic imaging, and physical therapy, and chiropractic services (collectively the "Fraudulent Services"), that purportedly were provided to automobile accident victims ("Insureds") who were eligible for coverage under GEICO Florida no-fault insurance policies.

2.      In addition, GEICO seeks a declaration that it is not legally obligated to pay reimbursement of more than $200,000.00 in pending, fraudulent no-fault insurance claims that the Defendants have submitted or caused to be submitted through Path Medical, because:

(i)      at all relevant times, Path Medical and its related entities were operated in pervasive violation of: (a) Florida's patient brokering act, Fla. Stat § 817.505 (the "Patient Brokering Act"); (b) Florida's anti-kickback statute, Fla. Stat. § 456.054 (the "Anti-Kickback Statute"); (c) Florida's Patient Self-Referral Act, Fla. Stat. § 456.053 (the "Self-Referral Act"); (d) the Florida Health Care Clinic Act, Fla. Stat. § 400.990 et seq. (the "Clinic Act"); and (e) Florida law regulating advertising by chiropractors, Fla. Stat. § 460.413, F.A.C. Rule 64B2-15.001 (the "Chiropractor Advertising Laws");

(ii)     the underlying Fraudulent Services were not medically necessary, and were provided – to the extent that they were provided at all – in pervasive violation of the Patient Brokering Act, the Anti-Kickback Statute, the Self-Referral Act, the Clinic Act, the Chiropractor Advertising Laws, and pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them;

(iii)    in many cases, the Fraudulent Services never were provided in the first instance; and

(iv)     the billing codes used for the Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to fraudulently inflate the charges submitted to GEICO.

3.      The Defendants fall into the following categories:

(i)     Defendant Path Medical, through which the Fraudulent Services purportedly were performed and were billed to automobile insurance companies, including GEICO, is a Florida limited liability company that owned and operated health care clinics throughout Florida in pervasive violation of Florida's Patient Brokering Act, Anti-Kickback Statute, Self-Referral Act, Clinic Act, and Chiropractor Advertising Laws.

(ii)    Defendant Path Medical Center Holdings, Inc. ("Path Holdings") is a Delaware corporation that owned and controlled Path Medical.

(iii)   Defendants 1-800-411-PAIN Referral Service, LLC ("411-PAIN"), 1-800-411-I.P. Holdings, LLC ("411-IP"), and 411 PAIN Advertising Group, Inc. ("411 Advertising") are Florida limited liability companies and a Florida corporation that operated what purported to be a legitimate medical and legal referral service, but actually were used to facilitate the Defendants' pervasive violation of Florida's Patient Brokering Act, Anti-Kickback Statute, Self-Referral Act, Clinic Act, and Chiropractor Advertising Laws.

(iv)    Defendant Robert Cash Lewin, D.C. ("Lewin") is a chiropractor licensed to practice chiropractic in Florida, owned and controlled Path Medical, Path Holdings, 411-PAIN, 411-IP, and 411 Advertising, operated Path Medical, Path Holdings, 411-PAIN, 411-IP, and 411 Advertising in pervasive violation of Florida's Patient Brokering Act, Anti-Kickback Statute, Self-Referral Act, Clinic Act, and Chiropractor Advertising Laws, and used Path Medical as a vehicle to submit fraudulent billing for the Fraudulent Services to GEICO and other insurers.

(v)     Defendant Harley Lewin ("H. Lewin") owned and controlled 411-PAIN, 411-IP, and 411 Advertising together with Lewin, and used 411-PAIN, 411-IP, and 411 Advertising to facilitate the Defendants' pervasive violation of Florida's Patient Brokering Act, Anti-Kickback Statute, Self-Referral Act, Clinic Act, and Chiropractor Advertising Laws.

(vi)    Defendants Russell Permaul ("Permaul") and Joel Earl Manion, D.C. ("Manion") owned and controlled Path Medical and Path Holdings together with Lewin, operated Path Medical and Path Holdings in pervasive violation of Florida's Patient Brokering Act, Anti-Kickback Statute, Self-Referral Act, Clinic Act, and Chiropractor Advertising Laws, and used Path Medical as a vehicle to submit fraudulent billing for the Fraudulent Services to GEICO and other insurers.

(vii)   Defendants Landau & Associates, P.A. ("Landau & Associates"), The Law Offices of Kanner & Pintaluga, P.A. ("Kanner & Pintaluga"), Todd Landau ("Landau"), Howard Kanner ("Kanner"), and Eric Pintaluga ("Pintaluga") are Florida law firms and attorneys who, upon information and belief as set forth below, participated in, conspired in, aided, and abetted their co-Defendants' fraud, as well as their pervasive violation of Florida's Patient Brokering Act, Anti-Kickback Statute, Self-Referral Act, Clinic Act, and Chiropractor Advertising Laws.

(viii)  Defendants Michael H. Wilensky, M.D. ("Wilensky"), David A. Cheesman, D.O. ("Cheesman"), Tie Qian, M.D. ("Qian"), and Ralph G. Marino, M.D. ("Marino") are physicians licensed to practice medicine in Florida, falsely purported to serve as the medical directors of numerous Path Medical clinics, purported to perform many of the Fraudulent Services that were billed to GEICO through Path Medical, and participated in the submission of fraudulent billing for the Fraudulent Services through Path Medical to GEICO.

4.      As set forth below, the Defendants at all relevant times have known that:

(i)     Path Medical and its related entities were operated in pervasive violation of the Patient Brokering Act, Anti-Kickback Statute, Self-Referral Act, Clinic Act, and Chiropractor Advertising Laws;

(ii)    the underlying Fraudulent Services were not medically necessary, were unlawful, and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them;

(iii)   in many cases, the Fraudulent Services never were provided in the first instance; and

(iv)    the billing codes used for the Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to fraudulently inflate the charges submitted to GEICO.

5.      As such, the Defendants do not now have – and never had – any right to be compensated for the Fraudulent Services that were billed to GEICO through Path Medical.

6.      The chart annexed hereto as Exhibit "1" sets forth a large and representative sample of the fraudulent claims that have been identified to date that the Defendants have

submitted, or caused to be submitted, to GEICO.

7.      The Defendants' fraudulent scheme began no later than 2014 and has continued uninterrupted since that time. As a result of the Defendants' fraudulent scheme, GEICO has incurred damages of more than $15,000,000.00.

## THE PARTIES

### I.      Plaintiffs

8.      Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. (collectively, "GEICO") are Maryland corporations with their principal places of business in Chevy Chase, Maryland. GEICO is authorized to conduct business and to issue automobile insurance policies in Florida.

### II.      Defendants

### A.      Path Medical and Path Holdings

9.      Defendant Path Medical is a Florida limited liability company with its principal place of business in Fort Lauderdale, Florida.

10.      Path Medical was organized in Florida on or about November 13, 2015, when its predecessor entity, a Florida corporation called "Path Medical, Inc." – which also was owned and controlled by Lewin – was converted into "Path Medical, LLC", a Florida limited liability company.

11.      Path Medical is owned and controlled by Lewin, Permaul, and Manion, and has Lewin, Permaul, and Manion as its members. In addition, since in or about October 2016,

Path Medical has been owned and controlled by Path Holdings, which like Path Medical is owned and controlled by Lewin, Permaul, and Manion.

12.     Since at least 2014, Path Medical and its predecessor entities have operated numerous health care clinics in Florida in pervasive violation of the Patient Brokering Act, Anti-Kickback Statute, Self-Referral Act, Clinic Act, and Chiropractor Advertising Laws, including clinics at the following locations:

(i)     Path Medical-Coral Springs Margate – 318 S. State Road 7, Margate, Florida 33068;

(ii)    Path Medical-Longwood (formerly known as Florida Injury Longwood) – 851 E. State Road 434, Suite 126, Longwood, Florida 32750;

(iii)   Path Medical-North Miami/North Miami Beach – 14741 Biscayne Boulevard, North Miami Beach, Florida 33181;

(iv)    Path Medical-ACI (formerly known as Absolute Care Imaging) – 3117 W. Columbus Drive, Suite 209, Tampa, Florida 33607;

(v)     Path Medical-Apex (formerly known as Apex Imaging) – 6148 Hanging Moss Road, Suite 100, Orlando, Florida 32807;

(vi)    Path Medical-Aventura – 18999 Biscayne Boulevard, Suite 201, Aventura, Florida 33180;

(vii)   Path Medical-Boca – 2300 Glades Road, Suite 200 E, Boca Raton, Florida 33431;

(viii)  Path Medical-Bradenton – 6060 26th Street West, Bradenton, Florida 34207;

(ix)    Path Medical-Broward – 2659 W. Oakland Park Boulevard, Fort Lauderdale, Florida 33311;

(x)     Path Medical-Central Tampa (formerly known as Injury Centers of Central Tampa) – 4700 N. Habana Avenue, Suite 100, Tampa, Florida 33194;

(xi)    Path Medical-Dade – 17325 N.W. 27th Avenue, Suite 111, Miami, Florida 33056;

(xii)   Path Medical-Deltona (formerly known as Florida Injury Deltona) – 104 Treemonte Drive, Suite 100, Orange City, Florida 32763;

(xiii)  Path Medical-East (formerly known as Florida Injury East) – 10967 Lake Underhill Road, Suite 120, Orlando, Florida 32825;

(xiv)   Path Medical-Haines City – 131 Patterson Road, Haines City, Florida 33844;

(xv)    Path Medical-Hollywood – 2544 N. State Road 7, Hollywood, Florida 33021;

(xvi)   Path Medical-Kissimmee (formerly known as Florida Injury Kissimmee) – 1040 E. Osceola Parkway, Kissimmee, Florida 34744;

(xvii)  Path Medical-Lakeland (formerly known as Injury Centers of Lakeland) – 809 S. Florida Avenue, Lakeland, Florida 33801;

(xviii) Path Medical-MRI Hallandale – 1016 W. Hallandale Beach Boulevard, Hallandale Beach, Florida 33009;

(xix)   Path Medical-North Tampa (formerly known as Injury Centers of North Tampa) – 14824 N. Florida Avenue, Suite A, Tampa, Florida 33613;

(xx)    Path Medical-OBT (formerly known as Florida Injury & Rehabilitation Centers) – 6220 S. Orange Blossom Trail, Suite 606, Orlando, Florida 32809;

(xxi)   Path Medical-Pines – 14818 Pines Boulevard, Pembroke Pines, Florida 33027;

(xxii)  Path Medical-Plantation – 8138 W. Broward Boulevard, Plantation, Florida 33324;

(xxiii) Path Medical-South Tampa (formerly known as Injury Centers of South Tampa) – 1369 Providence Road, Brandon, Florida 33511; and

(xxiv)  Path Medical-St. Pete (formerly known as Injury Centers of St Pete) – 3140 34th Street North, Saint Petersburg, Florida 33713.

13.    Defendant Path Holdings is a Delaware corporation with its principal place of business in Orlando, Florida.

14.    Path Holdings was incorporated in Delaware on or about October 2, 2016.

15.     Path Holdings, like Path Medical, is owned and controlled by Lewin, Permaul, and Manion. Since in or about October 2016, Path Holdings has owned and controlled Path Medical together with Lewin, Permaul, and Manion.

**B.      411-PAIN, 411-IP, and 411 Advertising**

16.     Defendant 411-PAIN is a Florida limited liability company with its principal place of business in Pembroke Pines, Florida.

17.     411-PAIN was organized in Florida on or about April 20, 2010, is owned and controlled by Lewin and H. Lewin, and has Lewin and H. Lewin as its members.

18.     Since at least 2014, 411-PAIN has been used by Lewin and H. Lewin to operate what purported to be a legitimate medical and legal referral service, but actually was used to facilitate the Defendants' pervasive violation of Florida's Patient Brokering Act, Anti-Kickback Statute, Self-Referral Act, Clinic Act, and Chiropractor Advertising Laws.

19.     Defendant 411-IP is a Florida limited liability company with its principal place of business in Pembroke Pines, Florida.

20.     411-IP was organized in Florida on or about April 20, 2010, is owned and controlled by Lewin and H. Lewin, and has Lewin and H. Lewin as its members.

21.     Since at least 2014, 411-IP has been used by Lewin and H. Lewin to operate what purported to be a legitimate medical and legal referral service, but actually was used to facilitate the Defendants' pervasive violation of Florida's Patient Brokering Act, Anti-Kickback Statute, Self-Referral Act, Clinic Act, and Chiropractor Advertising Laws.

22.     Defendant 411 Advertising is a Florida corporation with its principal place of business in Pembroke Pines, Florida.

23.     411 Advertising was incorporated in Florida on or about April 4, 2007, and is owned and controlled by Lewin and H. Lewin.

24.     Since at least 2014, 411 Advertising has been used by Lewin and H. Lewin to operate what purported to be a legitimate medical and legal referral service, but actually was used to facilitate the Defendants' pervasive violation of Florida's Patient Brokering Act, Anti-Kickback Statute, Self-Referral Act, Clinic Act, and Chiropractor Advertising Laws.

**C.     The Lewins**

25.     Defendant Lewin resides in and is a citizen of Florida.

26.     Lewin was licensed to practice chiropractic in Florida on or about January 29, 1998, owned and controlled Path Medical, Path Holdings, 411-PAIN, 411-IP, and 411 Advertising, operated Path Medical, Path Holdings, 411-PAIN, 411-IP, and 411 Advertising in pervasive violation of Florida's Patient Brokering Act, Anti-Kickback Statute, Self-Referral Act, Clinic Act, and Chiropractor Advertising Laws, and used Path Medical as a vehicle to submit fraudulent billing for the Fraudulent Services to GEICO and other insurers.

27.     Defendant H. Lewin resides in and is a citizen of Florida.

28.     H. Lewin owned and controlled 411-PAIN, 411-IP, and 411 Advertising together with Lewin, and used 411-PAIN, 411-IP, and 411 Advertising to facilitate the Defendants' pervasive violation of Florida's Patient Brokering Act, Anti-Kickback Statute, Self-Referral Act, Clinic Act, and Chiropractor Advertising Laws.

**D.     Permaul and Manion**

29.     Defendants Permaul and Manion reside in and are citizens of Florida.

30.     Manion was licensed to practice chiropractic in Florida on or about October 7, 2009.

31.     Together with Lewin, Permaul and Manion owned and controlled Path Medical and Path Holdings, operated Path Medical and Path Holdings in pervasive violation of Florida's Patient Brokering Act, Anti-Kickback Statute, Self-Referral Act, Clinic Act, and Chiropractor Advertising Laws, and used Path Medical as a vehicle to submit fraudulent billing for the Fraudulent Services to GEICO and other insurers.

**E.     The Attorney and Law Firm Defendants**

32.     Defendant Landau & Associates is a Florida legal professional corporation with its principal place of business in Hallandale Beach, Florida.

33.     Landau & Associates was incorporated in Florida on or about May 20, 2011, and is owned and controlled by Landau, Kanner, and Pintaluga.

34.     Upon information and belief as set forth below, Landau & Associates participated in, conspired in, aided, and abetted its co-Defendants' pervasive violation of Florida's Patient Brokering Act, Anti-Kickback Statute, Self-Referral Act, Clinic Act, and Chiropractor Advertising Laws.

35.     Defendant Kanner & Pintaluga is a Florida legal professional corporation with its principal place of business in Boca Raton, Florida.

36.     Kanner & Pintaluga was incorporated in Florida on or about June 13, 2003, and is owned and controlled by Kanner and Pintaluga.

37.     Upon information and belief as set forth below, Kanner & Pintaluga participated in, conspired in, aided, and abetted its co-Defendants' pervasive violation of

Florida's Patient Brokering Act, Anti-Kickback Statute, Self-Referral Act, Clinic Act, and Chiropractor Advertising Laws.

38.     Defendant Landau resides in and is a citizen of Florida.

39.     Landau was licensed to practice law in Florida on or about June 6, 2001.

40.     Upon information and belief as set forth below, Landau participated in, conspired in, aided, and abetted his co-Defendants' pervasive violation of Florida's Patient Brokering Act, Anti-Kickback Statute, Self-Referral Act, Clinic Act, and Chiropractor Advertising Laws.

41.     Defendant Kanner resides in and is a citizen of Florida.

42.     Kanner was licensed to practice law in Florida on or about December 19, 2001.

43.     Upon information and belief as set forth below, Kanner participated in, conspired in, aided, and abetted his co-Defendants' pervasive violation of Florida's Patient Brokering Act, Anti-Kickback Statute, Self-Referral Act, Clinic Act, and Chiropractor Advertising Laws.

44.     Defendant Pintaluga resides in and is a citizen of Florida.

45.     Pintaluga was licensed to practice law in Florida on or about October 1, 2001.

46.     Upon information and belief as set forth below, Pintaluga participated in, conspired in, aided, and abetted his co-Defendants' pervasive violation of Florida's Patient Brokering Act, Anti-Kickback Statute, Self-Referral Act, Clinic Act, and Chiropractor Advertising Laws.

47.     On or about August 22, 2013, Pintaluga was publicly reprimanded by the Florida Bar after he admitted to violating R. Regulating Fla. Bar Rules 5 1.1(e) and 5 1.1(f) by failing to hold personal injury settlement proceeds in his trust account, and failing to interplead the settlement proceeds to the court, when the disposition of the settlement proceeds was in dispute.

48.     Upon information and belief, Pintaluga's public disciplinary record has made it difficult for him to obtain legitimate client referrals, and contributed to his motive to participate in the fraudulent scheme described herein. For example, Pintaluga's public disciplinary record is readily available to potential clients and referral sources via a simple internet search.

**F.     The Medical Director Defendants**

49.     Defendant Wilensky resides in and is a citizen of Florida.

50.     Wilensky was licensed to practice medicine in Florida on or about August 2, 1978.

51.     Wilensky falsely purported to serve as "medical director" at numerous Path Medical clinics, including Path Medical-North Miami/North Miami Beach, Path Medical-Boca, Path Medical-Coral Springs Margate, Path Medical-Dade, and Path Medical-Hollywood, and purported to perform many of the Fraudulent Services on behalf of Path Medical.

52.     Defendant Cheesman resides in and is a citizen of Florida.

53.     Cheesman was licensed to practice medicine in Florida on or about August 23, 1980.

54.     Cheesman falsely purported to serve as "medical director" at numerous Path Medical clinics, including Path Medical-Central Tampa, Path Medical-Lakeland, Path Medical-North Tampa, Path Medical-South Tampa, and Path Medical-St. Pete, and purported to perform many of the Fraudulent Services on behalf of Path Medical.

55.     In October 1987, Cheesman was fined and reprimanded by the Florida Board of Osteopathic Medical Examiners after being charged with conduct that amounted to professional negligence and failure to maintain proper medical records.

56.     Then, on August 9, 1989, the Orlando Sentinel reported that Cheesman had been indicted by a federal grand jury on 23 counts of Medicare fraud.

57.     According to the report, Cheesman used various aliases, calling himself both "Chessman" and "John Hellen", and – even then – worked at a clinic with a poor reputation that was owned by a convicted criminal.

58.     Though the report noted that Cheesman protested his innocence, a subsequent February 2, 1990 report in the Orlando Sentinel indicated that: (i) the clinic where Cheesman worked had been fined $70,000.00 for submitting false Medicare claims; and (ii) though the federal criminal charges against Cheesman were ultimately dropped, they were dropped in exchange for a guilty plea from the clinic.

59.     Upon information and belief, Cheesman's personal and professional history – which can be located via a simple internet search – made it difficult for him to obtain legitimate employment as a physician, and contributed to his decision to participate in the fraudulent scheme described herein.

60.     Defendant Qian resides in and is a citizen of Florida.

61.     Qian was licensed to practice medicine in Florida on or about December 10, 2001.

62.     Qian falsely purported to serve as "medical director" at numerous Path Medical clinics, including Path Medical-Aventura, Path Medical-Broward, Path Medical-Pines, and Path Medical-Plantation, and purported to perform many of the Fraudulent Services on behalf of Path Medical.

63.     In 2007, Qian was employed as a physician at the Department of Veterans' Affairs Medical Center in Miami (the "VA Hospital"), when he was disciplined by his supervisor regarding "inappropriate copying and pasting of notes in the Computerized Patient Record System" and "failure by Dr. Qian to recognize, document, and treat abnormal lab issues."

64.     Thereafter, the VA Hospital convened a special review board to review Qian's practices, and the review board noted "serious deviations from the standard of care," harm to patients, and "a pattern of misrepresentation of the medical record."

65.     Another review board empaneled by the VA Hospital concluded that Qian "demonstrated a sustained pattern of unacceptable clinical practice and professional conduct that was not remedied despite repeated episodes of formal counseling."

66.     The review board found that Qian's practices "pose[d] an unacceptable risk to patients and represent[ed] a significant deviation from standard professional practice[,]" and further recommended that his medical staff privileges be revoked.

67.     Qian's privileges were revoked in early 2008, essentially resulting in his termination from the VA Hospital. Qian then commenced a federal lawsuit against Eric

Shinseki in his capacity as Secretary of the Department of Veteran's Affairs, alleging – in substance – that he was denied due process in connection with his termination. Not only was the suit dismissed on Secretary Shinseki's summary judgment motion, but – by filing the suit – Qian put the underlying facts into the public domain and made them readily available via a simple internet search.

68.     Upon information and belief, Qian's professional history – which can be located via a simple internet search – made it difficult for him to obtain legitimate employment as a physician, and contributed to his decision to participate in the fraudulent scheme described herein.

69.     Defendant Marino resides in and is a citizen of Florida.

70.     Marino was licensed to practice medicine in Florida on or about October 18, 1974.

71.     Marino falsely purported to serve as medical director at numerous Path Medical clinics, including Path Medical-OBT, Path Medical-Longwood, Path Medical-Kissimmee, Path Medical-East, and Path Medical-Deltona., and purported to perform many of the Fraudulent Services on behalf of Path Medical.

## JURISDICTION AND VENUE

72.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. § 1332(a)(1) because the total matter in controversy, exclusive of interest and costs, exceeds the jurisdictional threshold of $75,000.00, and is between citizens of different states.

73.     This Court also has original jurisdiction pursuant to 28 U.S.C. § 1331 over claims brought under 18 U.S.C. §§ 1961 et seq. (the Racketeer Influenced and Corrupt

Organizations ("RICO") Act).

74.    In addition, this Court has supplemental jurisdiction over the subject matter of the claims asserted in this action pursuant to 28 U.S.C. § 1367.

75.    Venue in this District is appropriate pursuant to 28 U.S.C. § 1391, as the Middle District of Florida is the District where one or more of the Defendants reside and because this is the District where a substantial amount of the activities forming the basis of the Complaint occurred.

## ALLEGATIONS COMMON TO ALL CLAIMS

## I.    An Overview of the Pertinent Law Governing No-Fault Insurance Reimbursement

### A.    The Florida No-Fault Law

76.    Florida has a comprehensive statutory system designed to ensure that motor vehicle accident victims are compensated for their injuries. The statutory system is embodied within the Florida Motor Vehicle No-Fault Law (the "No-Fault Law", Fla. Stat. §§ 627.730-627.7405), which requires automobile insurers to provide Personal Injury Protection benefits ("PIP Benefits") to Insureds.

77.    Under the No Fault Law, an Insured can assign his or her right to PIP Benefits to health care services providers in exchange for those services. See Fla. Stat. § 627.736. Pursuant to a duly executed assignment, a health care services provider may submit claims directly to an insurance company in order to receive payment for medically necessary services, using the required claim forms, including the Health Care Financing Administration/CMS insurance claim form (known as the "HCFA-1500 form"). See id.

B.     **No-Fault Reimbursement and Compliance with Florida Law Governing Health Care Practice**

78.     In order for a health care service to be eligible for PIP reimbursement, it must be "lawfully" provided. See Fla. Stat. § 627.736.

79.     Pursuant to the No-Fault Law, "lawful" or "lawfully" means "in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of state and federal law related to the provision of medical services or treatment." See Fla. Stat. § 627.732.

80.     Thus, health care services providers may not recover PIP Benefits for health care services that were not provided in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of Florida and federal law related to the provision of the underlying services or treatment – including, among other things, the Clinic Act, Self-Referral Act, Patient Brokering Act, Anti-Kickback Statute, and Chiropractor Advertising Laws. See, e.g., State Farm Mut. Auto. Ins. Co. v. B&A Diagnostic, Inc., 145 F. Supp. 3d 1154, 1163 (S.D. Fla. 2015); State Farm Mut. Auto. Ins. Co. v. Med. Serv. Ctr. of Fla., 103 F. Supp. 3d 1343, 1355 (S.D. Fla. 2015); State Farm Mut. Auto. Ins. Co. v. Physicians Group of Sarasota, L.L.C., 9 F. Supp. 3d 1303, 1306, 1311-1314 (M.D. Fla. 2014).

81.     By extension, insurers such as GEICO are not required to make any payments of PIP Benefits for health care services that were not provided in substantial compliance with all relevant applicable criminal, civil, and administrative requirements of Florida and federal law related to the provision of the underlying services or treatment.

C.     **No-Fault Reimbursement and the Clinic Act**

82.     Subject to certain limited exceptions that are not applicable in this case, the Clinic Act defines "clinic" to mean "an entity where health care services are provided to individuals and which tenders charges for reimbursement for such services, including a mobile clinic and a portable equipment provider." See Fla. Stat. § 400.9905.

83.     Pursuant to the Clinic Act, clinics operating in Florida must – among other things – "appoint a medical director or clinic director who shall agree in writing to accept legal responsibility for [certain enumerated] activities on behalf of the clinic." See Fla. Stat. § 400.9935(1).

84.     Among other things, a clinic medical director must "[c]onduct systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful. Upon discovery of an unlawful charge, the medical director or clinic director shall take immediate corrective action." See Fla. Stat. § 400.9935(1).

85.     What is more, a clinic medical director must "[r]eview any patient referral contracts or agreements executed by the clinic." See Fla. Stat. § 400.9935(1).

86.     Pursuant to the Clinic Act, "[a] charge or reimbursement claim made by or on behalf of a clinic that is required to be licensed under this part but that is not so licensed, or that is otherwise operating in violation of this part, regardless of whether a service is rendered or whether the charge or reimbursement claim is paid, is an unlawful charge and is noncompensable and unenforceable. A person who knowingly makes or causes to be made an unlawful charge commits theft within the meaning of, and punishable as provided in, [Fla. Stat. §] 812.014." See Fla. Stat. § 400.9935(3).

87.     Thus, pursuant to both the No-Fault Law and the Clinic Act, clinics and other health care providers that operate in violation of the Clinic Act's medical director requirements are not entitled to collect PIP Benefits, whether or not the underlying health care services were medically necessary or actually provided. See, e.g., Allstate Ins. Co. v. Vizcay, 826 F.3d 1326, 1330-1331 (11th Cir. 2015); B&A Diagnostic, Inc., supra, 145 F. Supp. 3d at 1164-1165.

88.     By extension, insurers such as GEICO are not required to make any payments of PIP Benefits to clinics and other health care providers that operate in violation of the Clinic Act's medical director requirements, or other requirements, whether or not the underlying health care services were medically necessary or actually provided. See, e.g., Med. Serv. Ctr. of Fla., supra, 103 F. Supp. 3d at 1355 ("Florida law clearly states that [an insurer] can refuse payment for services unlawfully rendered. Fla. Stat. § 627.736(5)(b)(1)(b). As a result of Defendants' conduct, Plaintiffs paid claims which it was statutorily entitled to deny. Accordingly, it would be inequitable to allow Defendants to retain those benefits, regardless of whether those services were medically necessary."); State Farm Fire & Cas. Co. v. Silver Star Health & Rehab, Inc., 2011 U.S. Dist. LEXIS 145629 at * 16 - * 17 (M.D. Fla. Dec. 19, 2011)(same).

**D.      No-Fault Reimbursement and the Self-Referral Act**

89.     Florida's Patient Self-Referral Act, Fla. Stat. § 456.053, prohibits health care providers from referring patients for certain designated health care services to any entity in which the health care provider is an investor or has an investment interest.

90.    In this context, licensed chiropractors are defined as "health care providers" under the Self-Referral Act, and "designated health services" include physical therapy and diagnostic imaging services such as those purportedly provided through the Path Medical clinics.

91.    The Self-Referral Act also provides that:

Any health care provider or other entity that enters into an arrangement or scheme, such as a cross-referral arrangement, which the physician or entity knows or should know has a principal purpose of assuring referrals by the physician to a particular entity which, if the physician directly made referrals to such entity, would be in violation of this section, shall be subject to a civil penalty of not more than $100,000 for each such circumvention arrangement or scheme to be imposed and collected by the appropriate board.

See Fla. Stat. § 456.053(5)(f).

92.    Pursuant to the Self-Referral Act, clinics and other health care providers may not submit any claim for payment to any insurer for services rendered pursuant to an unlawful self-referral. See Fla. Stat. § 456.053(5)(c).

93.    What is more, clinics and other health care providers that collect payments for services rendered pursuant to unlawful self-referrals must "refund such amount on a timely basis". See Fla. Stat. § 456.053(5)(d).

94.    More generally, clinics and other health care providers that operate in violation of the Self-Referral Act are not entitled to collect PIP Benefits, whether or not the underlying health care services were medically necessary or actually provided. See, e.g., B&A Diagnostic, Inc., supra; Med. Serv. Ctr. of Fla., supra.

95.    Likewise, insurers such as GEICO are not required to make any payments of PIP Benefits to clinics and other health care providers that operate in violation of the Self-

Referral Act, whether or not the underlying health care services were medically necessary or actually provided. <u>See</u>, <u>e.g.</u>, <u>Med. Serv. Ctr. of Fla.</u>, <u>supra</u>; <u>Silver Star Health & Rehab, Inc.</u>, <u>supra</u>.

**E.      No-Fault Reimbursement and the Patient Brokering Act**

96.      Florida's Patient Brokering Act, Fla. Stat. § 817.505, broadly prohibits any person from offering, paying, soliciting, or receiving any commission, bonus, rebate, kickback, or bribe – directly or indirectly, in cash or in kind – or from engaging in any fee-splitting arrangement of any type whatsoever, to either induce a patient referral or in exchange for a patient referral.

97.      What is more, the Patient Brokering Act makes it unlawful for any person to "aid, abet, advise, or otherwise participate" in such conduct.

98.      Though the Patient Brokering Act contains a limited exception for "a health … information service that provides information upon request and without charge to consumers about providers of health care goods or services to enable consumers to select appropriate providers or facilities", the limited exception does not apply unless – among other things – the health information service:

(i)      does not attempt through its standard questions for solicitation of consumer criteria or through any other means to steer or lead a consumer to select or consider selection of a particular health care provider or health care facility;

(ii)      does not provide or arrange for transportation of a consumer to or from the location of a health care provider or health care facility; and

(iii)      charges and collects fees from a health care provider or health care facility participating in its services that are set in advance, are consistent with the fair market value for those information services, and are not based on the potential value of a patient or patients to a health care provider or health care facility or

of the goods or services provided by the health care provider or health care facility.

See Fla. Stat. § 817.505(3)(i).

99.     Clinics and other health care providers that operate in violation of the Patient Brokering Act are not entitled to collect PIP Benefits, whether or not the underlying health care services were medically necessary or actually provided. See, e.g., B&A Diagnostic, Inc., supra; Med. Serv. Ctr. of Fla., supra.

100.    By extension, insurers such as GEICO are not required to make any payments of PIP Benefits to clinics and other health care providers that operate in violation of the Patient Brokering Act, whether or not the underlying health care services were medically necessary or actually provided. See, e.g., Med. Serv. Ctr. of Fla., supra; Silver Star Health & Rehab, Inc., supra.

**F.      No-Fault Reimbursement and the Anti-Kickback Statute**

101.    Florida's Anti-Kickback Statute, Fla. Stat. § 456.054, prohibits any health care provider from offering, paying, soliciting, or receiving a kickback, directly or indirectly, overtly or covertly, in cash or in kind, for referring or soliciting patients.

102.    Pursuant to Section 456.054, violations of the Anti-Kickback Statute also constitute violations of the Patient Brokering Act.

103.    As with the Patient Brokering Act, clinics and other health care providers that operate in violation of the Anti-Kickback Statute are not entitled to collect PIP Benefits, whether or not the underlying health care services were medically necessary or actually provided. See, e.g., B&A Diagnostic, Inc., supra; Med. Serv. Ctr. of Fla., supra.

104.    By extension, insurers such as GEICO are not required to make any payments of PIP Benefits to clinics and other health care providers that operate in violation of the Anti-Kickback Statute, whether or not the underlying health care services were medically necessary or actually provided. See, e.g., Med. Serv. Ctr. of Fla., supra; Silver Star Health & Rehab, Inc., supra.

**G.      No-Fault Reimbursement and the Chiropractor Advertising Laws**

105.    Florida law regulates advertising by chiropractors, and prohibits chiropractors from – among other things – advertising "under a name other than one's own", engaging in "[f]alse, deceptive, or misleading advertising", and "[s]oliciting patients either personally or through an agent, unless such solicitation falls into a category of solicitations approved by rule of the board [of chiropractic medicine]". See Fla. Stat. § 460.413.

106.    Similarly, the Florida Board of Chiropractic Medicine has promulgated various rules regarding chiropractor advertising. Among other things, these rules:

(i)      prohibit chiropractors from disseminating or causing the dissemination of any advertisement or advertising which is in any way fraudulent, false, deceptive or misleading; and

(ii)     require all advertisements generated by or on behalf of a chiropractor to disclose that they are generated by or on behalf of a chiropractor by including a reference to the chiropractor by name and degree.

See F.A.C. Rule 64B2-15.001.

107.    Clinics and other health care providers that operate in violation of the Chiropractor Advertising Laws are not entitled to collect PIP Benefits, whether or not the underlying health care services were medically necessary or actually provided. See, e.g., B&A Diagnostic, Inc., supra; Med. Serv. Ctr. of Fla., supra.

108.     Likewise, insurers such as GEICO are not required to make any payments of PIP Benefits to clinics and other health care providers that operate in violation of the Chiropractor Advertising Laws, whether or not the underlying health care services were medically necessary or actually provided. See, e.g., Med. Serv. Ctr. of Fla., supra; Silver Star Health & Rehab, Inc., supra.

## H.     No-Fault Reimbursement and Medical Necessity

109.     Pursuant to the No-Fault Law, insurers such as GEICO are only required to pay PIP Benefits for medically necessary services. See Fla. Stat. § 627.736. Concomitantly, a health care services provider, including a clinic organized under the Clinic Act, is only eligible to receive PIP Benefits for medically necessary services. Id.

110.     Pursuant to the No-Fault Law, "medically necessary" means:

a medical service or supply that a prudent physician would provide for the purpose of preventing, diagnosing, or treating an illness, injury, disease, or symptom in a manner that is:

(a) In accordance with generally accepted standards of medical practice;

(b) Clinically appropriate in terms of type, frequency, extent, site, and duration; and

(c) Not primarily for the convenience of the patient, physician, or other health care provider.

See Fla. Stat. § 627.732.

## I.     No-Fault Billing and No-Fault Reimbursement

111.     Pursuant to the No-Fault Law, insurers such as GEICO are not required to pay PIP Benefits:

(i)     For any service or treatment that was not lawful at the time rendered;

(ii)     To any person who knowingly submits a false or misleading statement relating to the claim or charges; or

(iii)    With respect to a bill or statement that does not substantially meet the billing requirements set forth in the No-Fault Law.

See Fla. Stat. § 627.736.

112.    The No-Fault Law's billing requirements provide – among other things – that all PIP billing must, to the extent applicable, comply with the instructions promulgated by the Centers for Medicare & Medicaid Services for the completion of HCFA-1500 forms, as well as the guidelines promulgated by the American Medical Association ("AMA") in connection with the use of current procedural terminology ("CPT") codes. See Fla. Stat. § 627.736.

**II.     The Defendants' Fraudulent Scheme**

113.    Beginning no later than 2014, and continuing through the present day, the Defendants masterminded and implemented a massive fraudulent scheme in which they billed GEICO millions of dollars, or caused GEICO to be billed millions of dollars, for unlawful, medically unnecessary, illusory, and otherwise unreimbursable services.

**A.     The Antecedents and Corporate Structure of the Path Medical Clinics and the 411-PAIN "Referral Service"**

**1.      The Origins, Corporate Structure, and Ownership of the Path Medical Clinics**

114.     In the early 1990s, Lewin and another chiropractor – Guy Shapiro, D.C. ("Shapiro") – sought to establish a chain of chiropractic offices that would purport to specialize in treating automobile accident victims.

115.    Toward that end, beginning in 1995 Lewin and Shapiro began to establish a series of chiropractic offices throughout Florida. As set forth below, these chiropractic offices later were merged into and/or acquired by Path Medical, becoming the current Path

Medical clinics.

116.     In 2007, Shapiro was assaulted at an Opa-locka, Florida service station, which led to his death. Shortly thereafter, Lewin assumed control over the Lewin-Shapiro chiropractic offices.

117.     Between 2007 and 2014, Lewin continued to open and/or acquire interests in Florida chiropractic offices. By 2014, Lewin – together with his business partners, Defendants Permaul and Manion – owned and/or controlled a large number of chiropractic offices in Florida, which they operated as separate business entities under a variety of different corporate names.

118.     In 2015, Lewin, Permaul, and Manion sought to consolidate their large number of chiropractic offices in Florida within a single corporate structure, in an attempt to insulate themselves from liability for their activities at the chiropractic offices.

119.     Toward that end, in November 2015 Lewin, Permaul, and Manion converted a predecessor entity, "Path Medical, Inc." – which they owned and controlled – into "Path Medical, LLC", a limited liability company that had Lewin, Permaul, and Manion as its members.

120.     Then, over the course of late 2015 and 2016, Lewin, Permaul, and Manion caused Path Medical to acquire or merge with the large number of Florida chiropractic offices that they owned and/or controlled, with Path Medical as the surviving entity.

121.     After each of the Florida chiropractic offices that Lewin, Permaul, and Manion owned and/or controlled was acquired by or merged into Path Medical, Lewin, Permaul, and Manion caused Path Medical to file to do business under a new fictitious name,

typically including the words "Path Medical" and the location of the pertinent office. For example, one of the Lewin chiropractic offices that merged into Path Medical – Injury Centers of Lakeland, LLC – became known as "Path Medical-Lakeland". Another of the Lewin chiropractic offices that merged into Path Medical – Pines Injury Center, LLC – became known as "Path Medical-Pines", and so forth.

122.    When each of the Florida chiropractic offices that Lewin, Permaul, and Manion owned and/or controlled was acquired by or merged into Path Medical, Lewin, Permaul, Manion, and Path Medical caused each of the chiropractic offices to be licensed as a health care clinic, to the extent that the respective offices were not already licensed as health care clinics.

123.    Then, in October 2016, Lewin, Permaul, and Manion incorporated yet another entity – Path Holdings – which, like Path Medical, had Lewin, Permaul, and Manion as its owners.

124.    Once Path Holdings was organized in October 2016, Lewin, Permaul, and Manion transferred ownership of Path Medical to Path Holdings.

125.    As a result, Lewin, Permaul, and Manion own and control Path Holdings, which in turn owns and controls Path Medical, which in turn operates numerous separately-licensed health care clinics throughout Florida – namely the Path Medical clinics.

126.    Lewin, Permaul, and Manion transferred ownership of Path Medical, which they owned and controlled, to Path Holdings, which they also owned and controlled, in order to conceal the fact that Lewin, Permaul, and Manion were the ultimate owners of all of the Path Medical clinics, and in an attempt to further insulate themselves from liability for their

activities at the Path Medical clinics.

127.    Lewin, Permaul, and Manion wanted to conceal the fact that they were the ultimate owners of all of the Path Medical clinics because – by doing so – they could conceal the Defendants' collusive and unlawful self-referral, cross-referral, and patient brokering scheme, as more fully described below.

**2.    The Origins, Corporate Structure, and Ownership of the 1-800-411-PAIN "Referral Service"**

128.    In 1997, shortly after they began to establish the series of chiropractic offices throughout Florida that ultimately would become the Path Medical clinics, Lewin and Shapiro obtained the 1-800-411-PAIN toll-free number, and by the early 2000s they had registered the trademark "411PAIN", as well as other, related trademarks.

129.    Thereafter, Lewin and Shapiro assigned the exclusive right to use the "411PAIN" and related trademarks to Broward Rehab Center, Inc. ("Broward Rehab"), the first of the chiropractic offices they opened in Florida (which ultimately was converted into a limited liability company, merged into Path Medical in 2016, and now is known as Path Medical-Broward).

130.    Between 1997 and 2007, Lewin, Shapiro, and Broward Rehab spent millions of dollars using the 1-800-411-PAIN toll-free number to advertise for Lewin and Shapiro's various chiropractic offices, and also to advertise a personal injury attorney "referral service".

131.    In 2007, while Shapiro was on life support following the assault that led to his death, Lewin incorporated 411 Advertising to manage the placement of advertisements using the "411PAIN" and related trademarks for his various chiropractic offices.

132.    Then, following Shapiro's death in 2007, Shapiro's estate assigned the "411PAIN" trademark and related trademarks to Lewin.

133.    Between 2007 and 2010, Lewin, Broward Rehab, and 411 Advertising continued to spend millions of dollars using the 1-800-411-PAIN toll-free number and "411PAIN" trademarks to advertise for Lewin's various chiropractic offices, and also to advertise a personal in attorney "referral service".

134.    By 2010, Lewin was facing increasing scrutiny regarding the relationships between his chiropractic offices, the 1-800-411-PAIN toll-free number, and the personal injury attorneys to whom accident victims were referred after calling the 1-800-411-PAIN number.

135.    For example, in 2010, two automobile accident victims filed a lawsuit against Lewin, Broward Rehab, and 411 Advertising – among others – alleging, among other things, that Lewin and his associates engaged in a massive, deceptive advertising campaign aimed at misleading accident victims into believing that they would personally receive $10,000.00 in PIP Benefits if they used the 411-PAIN referral service, when in fact the objective of the advertising campaign was to generate specious personal injury lawsuits and siphon accident victims' PIP Benefits off for medically unnecessary services.

136.    What is more, in 2010, Lewin and the 411-PAIN referral service were the subject of a critical report in the Miami New Times entitled "Crash Course: 411-PAIN network will line their pockets with your insurance money". The report – which was written with Lewin's participation – indicated that Lewin's 411-PAIN "referral service" was a scam targeted at naïve or underprivileged communities, and was aimed at generating large amounts

of PIP billing for medically unnecessary services, as well as specious personal injury claims, while leaving the automobile accident victims who used the "referral service" with little or nothing in return.

137.    As a result of this increasing scrutiny, Lewin sought to insulate himself and his chiropractic offices from liability by reorganizing the 411-PAIN "referral service". Toward that end, in April 2010 Lewin and H. Lewin organized 411-PAIN and 411-IP. Then, Lewin transferred his direct ownership of the "411PAIN" trademark and related trademarks to 411-IP, and transferred the exclusive license to use the "411PAIN" trademark and related trademarks from Broward Rehab to 411-PAIN.

138.    Thereafter, 411-IP acted as the owner of the "411PAIN" and related trademarks, and licensed those trademarks to 411-PAIN, which – together with Lewin, H. Lewin, and 411 Advertising – used those trademarks to operate the 1-800-411-PAIN personal injury attorney and health care "referral service".

139.    Then, in a June 1, 2012 action entitled State of Florida Office of Attorney General Department of Legal Affairs v. 1-800-411-PAIN Referral Service, LLC, Case No. 12-015527 (Broward Circuit Court)(the "Florida v. 411-PAIN Action"), the Florida Attorney General sued 411-PAIN, seeking injunctive relief, civil penalties, and disgorgement of profits, based on alleged violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 510.204(1), as well as the Florida law against misleading advertising, Fla. Stat. § 817.41(1).

140.    The Attorney General's Complaint in the Florida v. 411-PAIN Action alleged, among other things, that:

(i)     411-PAIN misrepresented to Florida consumers that they could be entitled to $100,000.00 or more for injuries and lost wages sustained in accidents;

(ii)    411-PAIN misrepresented to Florida consumers that the attorneys to whom consumers would be referred were specialists in accident cases;

(iii)   411-PAIN misrepresented to Florida consumers that it had physicians on staff who specialized in certain areas of medicine;

(iv)    411-PAIN used "testimonials" in its advertising that were not actual testimonials by actual people who actually used the 411-PAIN referral service;

(v)     411-PAIN frequently "target[ed] minorities" with its misrepresentations;

(vi)    411-PAIN's conduct was unfair, deceptive, and unconscionable; and

(vii)   thousands of Florida consumers had been affected by 411-PAIN's misrepresentations due to 411-PAIN's deceptive conduct.

141.    The Florida v. 411-PAIN Action was immediately resolved via a June 1, 2012 Consent Judgment. In the Consent Judgment – which was executed by both Lewin and H. Lewin on behalf of 411-PAIN – the Attorney General noted that her office had received more than 40 consumer complaints regarding 411-PAIN's conduct, and reiterated the allegations in the Complaint.

142.    Although 411-PAIN formally disputed the Attorney General's investigative findings, it agreed pursuant to the Consent Judgment to:

(i)     permanently desist from engaging in the conduct alleged by the Attorney General;

(ii)    pay $75,000.00 in attorneys' fees and investigative fees and costs; and

(iii)   contribute $550,000.00 to two specified charities, "[d]ue to the fact that consumer restitution is not practical nor possible in this case".

143.    Even so, 411-PAIN did not desist from its fraudulent and unconscionable

conduct. Rather, and as set forth more fully below, Lewin and H. Lewin – in conjunction with their co-Defendants – continued to operate 411-PAIN, 411-IP, and 411 Advertising in pervasive violation of Florida's Self-Referral Act, Patient Brokering Act, Anti-Kickback Statute, Clinic Act, and Chiropractor Advertising Laws.

**B.     The Violations of the Self-Referral Act**

144.    As set forth above, the Self-Referral Act prohibits any health care provider from referring patients for certain designated health care services to any entity in which the health care provider is an investor or has an investment interest. See Fla. Stat. § 456.053.

145.    Moreover, and as set forth above, the Self-Referral Act prohibits collusive cross-referral arrangements, whereby a health care provider refers a patient to a third party, with the understanding that the third party will – as consideration for the initial referral – refer the patient back to the health care provider or an entity owned by the health care provider for certain designated health care services. See Fla. Stat. § 456.053(5)(f).

146.    What is more, and as set forth above, pursuant to the Self-Referral Act, clinics and other health care providers may not submit any claim for payment to any insurer for services rendered pursuant to an unlawful self-referral. See Fla. Stat. § 456.053(5)(c).

147.    In addition, clinics and other health care providers that collect payments for services rendered pursuant to unlawful self-referrals must "refund such amount[s] on a timely basis". See Fla. Stat. § 456.053(5)(d).

148.    In the context of the Self-Referral Act, Lewin – as a licensed chiropractor – was a "health care provider".

149.    In the context of the Self-Referral Act, the putative physical therapy,

rehabilitative, and diagnostic imaging services that the Path Medical clinics purported to provide were "designated health care services".

150.    In the context of the Self-Referral Act, Lewin – who was an owner, member, and manager of Path Holdings and Path Medical – was both an investor in and had an investment interest in the Path Medical clinics.

151.    Accordingly, Lewin could not lawfully self-refer Insureds to the Path Medical clinics – directly or indirectly – for designated health care services such as the putative physical therapy, rehabilitative, and diagnostic imaging services that the Path Medical clinics purported to provide.

152.    Nor could Lewin lawfully refer Insureds to personal injury attorneys, directly or indirectly, with the understanding that the personal injury attorneys would – in consideration for the initial referrals, or anything else – then cross-refer the Insureds to the Path Medical clinics.

153.    However, after consolidating Lewin, Manion, and Permaul's existing network of chiropractic offices into Path Medical, Lewin, Manion, Permaul, Path Medical, and – after October 2016 – Path Holdings needed to ensure a steady flow of patients into the Path Medical clinics, so that they could submit billing to GEICO and other insurers and generate profit.

154.    Lewin, Manion, Permaul, Path Medical, and Path Holdings were concerned that there was not a sufficient, legitimate demand for the fraudulent, medically unnecessary, and in some cases illusory health care "services" that they purported to provide through the Path Medical clinics.

155.    Accordingly, Lewin, Manion, Permaul, Path Medical, Path Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, and Landau & Associates entered into a secret scheme, whereby they agreed to routinely violate the Self-Referral Act by causing Insureds solicited through the 1-800-411-PAIN "referral service" to be self-referred to the Path Medical clinics, while simultaneously concealing the nature and extent of the unlawful self-referrals.

156.    In some cases, Lewin, Manion, Permaul, Path Medical, Path Holdings, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising agreed that Insureds solicited through the 1-800-411-PAIN "referral service" would be referred directly by the "referral service" to the Path Medical clinics.

157.    These types of self-referrals violated the Self-Referral Act because they amounted to direct referrals from the 1-800-411-PAIN "referral service" (which Lewin owned and controlled) to the Path Medical clinics (which Lewin also owned and controlled).

158.    For example:

(i)     On March 10, 2017, an Insured named SS was involved in an automobile accident. SS then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Path Medical-St. Pete. Though the referral violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to SS at Path Medical-St. Pete, and then failed to refund the resulting payments – more than $5,000.00 – on a timely basis.

(ii)    On April 22, 2017, an Insured named AB was involved in an automobile accident. AB then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Path Medical-Apex and Path Medical-Kissimmee. Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to AB at Path Medical-Apex and Path Medical-Kissimmee, and then failed to refund the resulting payments – more than $4,500.00 – on a timely basis.

(iii)    On May 1, 2017, an Insured named HS was involved in an automobile accident. HS then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Path Medical-East. Though the referral violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to HS at Path Medical-East, and then failed to refund the resulting payments – more than $6,800.00 – on a timely basis.

(iv)    On May 3, 2017, an Insured named KS was involved in an automobile accident. KS then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Path Medical-OBT. Though the referral violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to KS at Path Medical-OBT, and then failed to refund the resulting payments – more than $225.00 – on a timely basis.

(v)    On June 5, 2017, an Insured named WP was involved in an automobile accident. WP then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Path Medical-Aventura. Though the referral violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to WP at Path Medical-Aventura, and then failed to refund the resulting payments – more than $600.00 – on a timely basis.

(vi)    On June 18, 2017, an Insured named DG was involved in an automobile accident. WG was then referred by 1-800-411-PAIN – at Lewin and H. Lewin's direction – to Path Medical-Longwood. Though the referral violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to DG at Path Medical-Longwood, and then failed to refund the resulting payments – more than $3,400.00 – on a timely basis.

(vii)    On July 3, 2017, an Insured named SH was involved in an automobile accident. SH then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Path Medical-Deltona. Though the referral violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to SH at Path Medical-Deltona, and then failed to refund the resulting payments – more than $3,300.00 – on a timely basis.

(viii)    On July 3, 2017, an Insured named JC was involved in an automobile accident. JC then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Path Medical-Dade. Though the referral violated the

Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to JC at Path Medical-Dade, and then failed to refund the resulting payments – more than $700.00 – on a timely basis.

159.    Lewin, Manion, Permaul, Path Medical, Path Holdings, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising knew that these types of direct referrals from the 411-PAIN "referral service" to the Path Medical clinics violated the Self-Referral Act, and were concerned that – if the referrals came to light – they would draw scrutiny from insurance company investigative departments, regulatory authorities, and law enforcement.

160.    Accordingly, Lewin, Manion, Permaul, Path Medical, Path Holdings, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising entered into collusive and unlawful cross-referral arrangements with Kanner, Pintaluga, Kanner & Pintaluga, Landau, and Landau & Associates, among other attorneys and law firms.

161.    Pursuant to these collusive and unlawful cross-referral arrangements, Lewin, Manion, Permaul, Path Medical, Path Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, and Landau & Associates agreed that:

(i)     in exchange for personal injury client referrals from the 411-PAIN "referral service" – Kanner, Pintaluga, and Kanner & Pintaluga would cross-refer their personal injury clients to the Path Medical clinics; and

(ii)    as further consideration for the cross-referrals, Path Medical would retain Landau & Associates – which was owned not only by Landau, but also by Kanner and Pintaluga – to pursue collection on virtually all of Path Medical's billing, thereby generating massive attorneys' fees for Landau & Associates, Landau, Kanner, and Pintaluga.

162.    For example:

(i)     On February 15, 2017, an Insured named DM was involved in an automobile

accident. DM then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Kanner & Pintaluga. Then – pursuant to the collusive and unlawful cross-referral arrangement between Lewin, Manion, Permaul, Path Medical, Path Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, and Kanner & Pintaluga – Kanner & Pintaluga, at the direction of Kanner and Pintaluga, cross-referred DM to Path Medical-Dade. Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to DM at Path Medical-Dade, and then failed to refund the resulting payments – more than $3,200.00 – on a timely basis.

(ii)     On March 9, 2017, an Insured named MH was involved in an automobile accident. MH then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Kanner & Pintaluga. Then – pursuant to the collusive and unlawful cross-referral arrangement between Lewin, Manion, Permaul, Path Medical, Path Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, and Kanner & Pintaluga – Kanner & Pintaluga, at the direction of Kanner and Pintaluga, cross-referred MH to Path Medical-East. In fact, Kanner, Pintaluga, and Kanner & Pintaluga actually sent one of their personal injury attorneys to meet MH at Path Medical-East on her first day of "treatment" there. Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to MH at Path Medical-East, and then failed to refund the resulting payments – more than $9,900.00 – on a timely basis.

(iii)    On March 15, 2017, an Insured named DY was involved in an automobile accident. DY then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Kanner & Pintaluga. Then – pursuant to the collusive and unlawful cross-referral arrangement between Lewin, Manion, Permaul, Path Medical, Path Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, and Kanner & Pintaluga – Kanner & Pintaluga, at the direction of Kanner and Pintaluga, cross-referred DY to Path Medical-Coral Springs Margate. Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to DY at Path Medical-Coral Springs Margate, and then failed to refund the resulting payments – more than $6,500.00 – on a timely basis.

(iv)     On April 25, 2017, an Insured named VR was involved in an automobile accident. VR then spoke with H. Lewin, and was referred by H. Lewin to Kanner & Pintaluga. Then – pursuant to the collusive and unlawful cross-referral arrangement between Lewin, Manion, Permaul, Path Medical, Path

Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, and Kanner & Pintaluga – Kanner & Pintaluga, at the direction of Kanner and Pintaluga, cross-referred VR to Path Medical-Margate. Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to VR at Path Medical-Margate, and then failed to refund the resulting payments – more than $1,400.00 – on a timely basis.

(v)     On April 27, 2017, an Insured named DM was involved in an automobile accident. DM then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Kanner & Pintaluga. Then – pursuant to the collusive and unlawful cross-referral arrangement between Lewin, Manion, Permaul, Path Medical, Path Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, and Kanner & Pintaluga – Kanner & Pintaluga, at the direction of Kanner and Pintaluga, cross-referred DM to Path Medical-St. Pete. Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to DM at Path Medical-St. Pete, and then failed to refund the resulting payments – more than $750.00 – on a timely basis.

(vi)    On May 4, 2017, an Insured named TT was involved in an automobile accident. TT then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Kanner & Pintaluga. Then – pursuant to the collusive and unlawful cross-referral arrangement between Lewin, Manion, Permaul, Path Medical, Path Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, and Kanner & Pintaluga – Kanner & Pintaluga, at the direction of Kanner and Pintaluga, cross-referred TT to Path Medical-Longwood. Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to TT at Path Medical-Longwood, and then failed to refund the resulting payments – more than $2,900.00 – on a timely basis.

(vii)   On May 4, 2017, an Insured named LC was involved in an automobile accident. LC then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Kanner & Pintaluga. Then – pursuant to the collusive and unlawful cross-referral arrangement between Lewin, Manion, Permaul, Path Medical, Path Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, and Kanner & Pintaluga – Kanner & Pintaluga, at the direction of Kanner and Pintaluga, cross-referred LC to Path Medical-Kissimmee. Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to LC at Path Medical-

Longwood, and then failed to refund the resulting payments – more than $7,300.00 – on a timely basis.

(viii)   On May 11, 2017, an Insured named GC was involved in an automobile accident. GC then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Kanner & Pintaluga. Then – pursuant to the collusive and unlawful cross-referral arrangement between Lewin, Manion, Permaul, Path Medical, Path Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, and Kanner & Pintaluga – Kanner & Pintaluga, at the direction of Kanner and Pintaluga, cross-referred GC to Path Medical-Longwood. Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to GC at Path Medical-Longwood, and then failed to refund the resulting payments – more than $5,600.00 – on a timely basis.

(ix)   On June 12, 2017, an Insured named KB was involved in an automobile accident. KB then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Kanner & Pintaluga. Then – pursuant to the collusive and unlawful cross-referral arrangement between Lewin, Manion, Permaul, Path Medical, Path Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, and Kanner & Pintaluga – Kanner & Pintaluga, at the direction of Kanner and Pintaluga, cross-referred KB to Path Medical-Margate. Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to KB at Path Medical-Margate, and then failed to refund the resulting payments – more than $3,600.00 – on a timely basis.

(x)   On June 13, 2017, an Insured named SV was involved in an automobile accident. SV then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Kanner & Pintaluga. Then – pursuant to the collusive and unlawful cross-referral arrangement between Lewin, Manion, Permaul, Path Medical, Path Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, and Kanner & Pintaluga – Kanner & Pintaluga, at the direction of Kanner and Pintaluga, cross-referred SV to Path Medical-Hollywood. Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to SV at Path Medical-Hollywood, and then failed to refund the resulting payments – more than $2,100.00 – on a timely basis.

(xi)   On August 4, 2017, an Insured named KK was involved in an automobile accident. KK then called 1-800-411-PAIN, and was referred – at Lewin and

H. Lewin's direction – to Kanner & Pintaluga. Then – pursuant to the collusive and unlawful cross-referral arrangement between Lewin, Manion, Permaul, Path Medical, Path Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, and Kanner & Pintaluga – Kanner & Pintaluga, at the direction of Kanner and Pintaluga, cross-referred KK to Path Medical-North Miami/North Miami Beach. Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to KK at Path Medical-North Miami/North Miami Beach, and then failed to refund the resulting payments – more than $2,000.00 – on a timely basis.

163.    These are only representative examples. In the claims identified in Exhibit "1", Lewin, Manion, Permaul, Path Medical, Path Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, and Landau & Associates routinely colluded to violate the Self-Referral Act by submitting claims to GEICO for designated health care services rendered at the Path Medical clinics pursuant to Lewin's illegal self-referrals, or by causing such claims to be submitted, and by failing to refund the resulting payments back to GEICO.

164.    In keeping with the fact that – in exchange for personal injury client referrals from the 411-PAIN "referral service" – Kanner, Pintaluga, and Kanner & Pintaluga cross-referred virtually all of their personal injury clients to the Path Medical clinics, at least 15 percent of the thousands of GEICO Insureds who purportedly treated at the Path Medical clinics were represented in personal injury cases by Kanner, Pintaluga, and Kanner & Pintaluga.

165.    In keeping with the fact that – as further consideration for the cross-referrals – Lewin, Manion, Permaul, Path Medical, and Path Holdings retained Landau & Associates to pursue collection of virtually all of Path Medical's billing, Landau & Associates has represented Path Medical in at least 90 percent of the collections suits that Path Medical has

filed since 2015.

166.    What is more, Kanner, Pintaluga, Kanner & Pintaluga, Landau, and Landau & Associates were not the only personal injury attorneys and law firms with whom Lewin, Manion, Permaul, Path Medical, Path Holdings, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising entered into collusive and unlawful self-referral arrangements.

167.    Upon information and belief, Lewin, Manion, Permaul, Path Medical, Path Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising also entered into collusive and unlawful self-referral arrangements with – among others – the following personal injury law firms:

(i)     Morgan & Morgan;

(ii)    Catania & Catania;

(iii)   The Trial Professionals;

(iv)    Law Office of Mario J. Louis;

(v)     Feingold & Posner;

(vi)    Michael T. Gibson, P.A.;

(vii)   Wites & Kapetan;

(viii)  The Ward Law Group; and

(ix)    Chalik & Chalik.

168.    In particular, pursuant to Fla. Bar Reg. R. 4-7.22, attorneys in Florida may not participate in any attorney referral service unless – among other things – the referral service furnishes the Florida Bar with the names of all attorneys who are participating in the referral service.

169.     Accordingly, 411-PAIN was obligated to provide the Florida Bar with the names of all attorneys who participated in its putative "referral service".

170.     In periodic submissions to the Florida Bar, 411-PAIN listed not only Kanner and Pintaluga, but also one or more of the principals of Morgan & Morgan, Catania & Catania, the Law Office of Mario J. Louis, The Trial Professionals, Feingold & Posner, Michael T. Gibson, P.A., Wites & Kapetan, The Ward Law Group, and Chalik & Chalik, as participants in its putative "referral service".

171.     Accordingly, Morgan & Morgan, Catania & Catania, the Law Office of Mario J. Louis, The Trial Professionals, Feingold & Posner, Michael T. Gibson, P.A., Wites & Kapetan, The Ward Law Group, and Chalik & Chalik regularly received personal injury client referrals from Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising.

172.     At the same time, as a pre-negotiated quid-pro-quo for the personal injury client referrals, Morgan & Morgan, Catania & Catania, the Law Office of Mario J. Louis, The Trial Professionals, Feingold & Posner, Michael T. Gibson, P.A., Wites & Kapetan, The Ward Law Group, Chalik & Chalik, and their principals agreed to cross-refer the Insureds to the Path Medical clinics.

173.     For example:

(i)      On January 22, 2017, an Insured named JM was involved in an automobile accident. JM then called 1-800-411-PAIN. Upon calling 1-800-411-PAIN, JM was referred – at Lewin and H. Lewin's direction – to Feingold & Posner, with the understanding that Feingold & Posner would then cross-refer JM to a Path Medical clinic. Thereafter, Feingold & Posner cross-referred JM to Path Medical-Hollywood, as consideration for the initial personal injury referral from the 1-800-411-PAIN "referral service". Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to JM at Path Medical-Hollywood, and then failed to refund the resulting payments – more

than $2,300.00 – on a timely basis.

(ii)     On January 22, 2017, an Insured named JS was involved in an automobile accident. JS then called 1-800-411-PAIN. Upon calling 1-800-411-PAIN, JS was referred – at Lewin and H. Lewin's direction – to Morgan & Morgan, with the understanding that Morgan & Morgan would then cross-refer JS to a Path Medical clinic. Thereafter, Morgan & Morgan cross-referred JS to Path Medical-Longwood, as consideration for the initial personal injury referral from the 1-800-411-PAIN "referral service". Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to JS at Path Medical-Longwood, and then failed to refund the resulting payments – more than $9,800.00 – on a timely basis.

(iii)    On March 7, 2017, an Insured named BG was involved in an automobile accident. BG then called 1-800-411-PAIN. Upon calling 1-800-411-PAIN, BG was referred – at Lewin and H. Lewin's direction – to The Ward Law Group, with the understanding that The Ward Law Group would then cross-refer BG to a Path Medical clinic. Thereafter, The Ward Law Group cross-referred BG to Path Medical-Pines, as consideration for the initial personal injury referral from the 1-800-411-PAIN "referral service". Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to BG at Path Medical-Pines, and then failed to refund the resulting payments – more than $3,400.00 – on a timely basis.

(iv)     On March 9, 2017, an Insured named ST was involved in an automobile accident. Thereafter, ST retained The Trial Professionals to represent her in a personal injury case. Upon information and belief, ST retained The Trial Professionals pursuant to a referral from the 1-800-411-PAIN "referral service". Then, in exchange for the referrals that it received from the 1-800-411-PAIN "referral service", The Trial Professionals cross-referred ST to Path Medical-Kissimmee. Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to ST at Path Medical-Kissimmee, and then failed to refund the resulting payments – more than $450.00 – on a timely basis.

(v)      On March 31, 2017, an Insured named JP was involved in an automobile accident. Thereafter, JP retained Morgan & Morgan to represent him in a personal injury case. Upon information and belief, JP retained Morgan & Morgan pursuant to a referral from the 1-800-411-PAIN "referral service". Then, in exchange for the referrals that it received from the 1-800-411-PAIN "referral service", Morgan & Morgan cross-referred JP to Path Medical-Dade.

Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to JP at Path Medical-Dade, and then failed to refund the resulting payments – more than $9,000.00 – on a timely basis.

(vi)     On April 12, 2017, an Insured named AS was involved in an automobile accident. AS then called 1-800-411-PAIN. Upon calling 1-800-411-PAIN, AS was referred – at Lewin and H. Lewin's direction – to Michael T. Gibson, P.A., with the understanding that Michael T. Gibson, P.A. would then cross-refer AS to a Path Medical clinic. Thereafter, Michael T. Gibson, P.A. cross-referred AS to Path Medical-OBT, as consideration for the initial personal injury referral from the 1-800-411-PAIN "referral service". Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to AS at Path Medical-OBT, and then failed to refund the resulting payments – more than $4,500.00 – on a timely basis.

(vii)    On April 13, 2017, an Insured named MR was involved in an automobile accident. MR then called 1-800-411-PAIN. Upon calling 1-800-411-PAIN, MR was referred – at Lewin and H. Lewin's direction – to Feingold & Posner, with the understanding that Feingold & Posner would then cross-refer MR to a Path Medical clinic. Thereafter, Feingold & Posner cross-referred MR to Path Medical-Hollywood, as consideration for the initial personal injury referral from the 1-800-411-PAIN "referral service". Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to MR at Path Medical-Hollywood, and then failed to refund the resulting payments – more than $2,700.00 – on a timely basis.

(viii)   On April 18, 2017, an Insured named TS was involved in an automobile accident. Thereafter, TS retained Catania & Catania to represent her in a personal injury case. Upon information and belief, TS retained Catania & Catania pursuant to a referral from the 1-800-411-PAIN "referral service". Then, in exchange for the referrals that it received from the 1-800-411-PAIN "referral service", Catania & Catania – upon information and belief – cross-referred TS to Path Medical-South Tampa. For instance, during a September 5, 2017 examination under oath, TS's counsel at Catania & Catania instructed her not to answer questions regarding the identity of the person who referred her to Path Medical-South Tampa, because to do so supposedly would encroach upon "attorney-client privilege". Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to TS at Path Medical-South Tampa, and then failed to refund the resulting payments – more than $6,400.00 – on a timely basis.

(ix)     On April 18, 2017, an Insured named PL was involved in an automobile accident. Thereafter, PL retained The Trial Professionals to represent him in a personal injury case. In exchange for the referrals that it received from the 1-800-411-PAIN "referral service", The Trial Professionals cross-referred PL to Path Medical-East. Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to PL at Path Medical-East, and then failed to refund the resulting payments – more than $4,800.00 – on a timely basis.

(x)      On April 18, 2017, an Insured named KL was involved in an automobile accident. Thereafter, KL retained Catania & Catania to represent him in a personal injury case. Upon information and belief, KL retained Catania & Catania pursuant to a referral from the 1-800-411-PAIN "referral service". Then, in exchange for the referrals that it received from the 1-800-411-PAIN "referral service", Catania & Catania – upon information and belief – cross-referred KL to Path Medical-South Tampa. For instance, during a September 5, 2017 examination under oath, KL's counsel at Catania & Catania instructed him not to answer questions regarding the identity of the person who referred him to Path Medical-South Tampa, because to do so supposedly would encroach upon "attorney-client privilege". Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to KL at Path Medical-South Tampa, and then failed to refund the resulting payments – more than $6,400.00 – on a timely basis.

(xi)     On April 23, 2017, an Insured named HH was involved in an automobile accident. Thereafter, HH retained The Ward Law Group to represent her in a personal injury case. Upon information and belief, HH retained The Ward Law Group pursuant to a referral from the 1-800-411-PAIN "referral service". Then, in exchange for the referrals that it received from the 1-800-411-PAIN "referral service", The Ward Law Group cross-referred HH to Path Medical-Broward. Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to HH at Path Medical-Broward, and then failed to refund the resulting payments – more than $11,000.00 – on a timely basis.

(xii)    On May 3, 2017, an Insured named JR was involved in an automobile accident. JR then called 1-800-411-PAIN. Upon calling 1-800-411-PAIN, JR was referred – at Lewin and H. Lewin's direction – to Wites & Kapetan, with the understanding that Wites & Kapetan would then cross-refer JR to a Path Medical clinic. Thereafter, Wites & Kapetan cross-referred JR to Path

Medical-Dade, as consideration for the initial personal injury referral from the 1-800-411-PAIN "referral service". Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to JR at Path Medical-Dade, and then failed to refund the resulting payments – more than $6,800.00 – on a timely basis.

(xiii)  On May 5, 2017, an Insured named AS was involved in an automobile accident. Thereafter, AS retained Chalik & Chalik to represent her in a personal injury case. Upon information and belief, AS retained Chalik & Chalik pursuant to a referral from the 1-800-411-PAIN "referral service". Then, in exchange for the referrals that it received from the 1-800-411-PAIN "referral service", Chalik & Chalik cross-referred AS to Path Medical-North Miami/North Miami Beach. Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to AS at Path Medical-North Miami/North Miami Beach, and then failed to refund the resulting payments – more than $3,300.00 – on a timely basis.

(xiv)  On June 8, 2017, an Insured named JO was involved in an automobile accident. Thereafter, JO retained The Trial Professionals to represent him in a personal injury case. Upon information and belief, JO retained The Trial Professionals pursuant to a referral from the 1-800-411-PAIN "referral service". Then, in exchange for the referrals that it received from the 1-800-411-PAIN "referral service", The Trial Professionals cross-referred JO to Path Medical-East. Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to JO at Path Medical-East, and then failed to refund the resulting payments – more than $1,900.00 – on a timely basis.

(xv)  On June 27, 2017, an Insured named KG was involved in an automobile accident. Thereafter, KG retained Wites & Kapetan to represent her in a personal injury case. Upon information and belief, KG retained Wites & Kapetan pursuant to a referral from the 1-800-411-PAIN "referral service". Then, in exchange for the referrals that it received from the 1-800-411-PAIN "referral service", Wites & Kapetan cross-referred KG to Path Medical-Pines. Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to KG at Path Medical-Pines, and then failed to refund the resulting payments – more than $900.00 – on a timely basis.

(xvi)  On July 2, 2017, an Insured named CN was involved in an automobile accident. CN then called 1-800-411-PAIN. Upon calling 1-800-411-PAIN,

CN was referred – at Lewin and H. Lewin's direction – to the Law Office of Mario J. Louis, with the understanding that the Law Office of Mario J. Louis would then cross-refer CN to a Path Medical clinic. Thereafter, the Law Office of Mario J. Louis cross-referred CN to Path Medical-Broward, as consideration for the initial personal injury referral from the 1-800-411-PAIN "referral service". What is more, when the Law Office of Mario J. Louis cross-referred CN to Path Medical-Broward, they told her that she had to pursue treatment at Path Medical-Broward so "they could build her case", and also told her that she "needed to go to therapy for three months to show that she was really hurt." However, because CN was not seriously injured in the underlying accident, she only treated at Path Medical-Broward for a short period of time, and – as a result – the Law Office of Mario J. Louis dropped her case. Though the referrals violated the Self-Referral Act, Path Holdings, Path Medical, Lewin, Permaul, and Manion nonetheless billed GEICO for services they purported to provide to CN at Path Medical-Broward, and then failed to refund the resulting payments – more than $3,000.00 – on a timely basis.

174.    These arrangements were the continuation of the same illegal and collusive self-referral practices that Lewin and his associates had engaged in for years.

175.    For example, in 2010 – before his network of chiropractic offices was reorganized into the Path Medical clinics – Lewin was interviewed for the critical report in the <u>Miami New Times</u> entitled "Crash Course: 411-PAIN network will line their pockets with your insurance money". During the interview, Lewin indicated that his chiropractic offices (which later merged into Path Medical) and the personal injury attorneys who received referrals from the 1-800-411-PAIN "referral service" had a "reciprocal relationship". Pursuant to this so-called "reciprocal relationship", upon receiving a referral from the 1-800-411-PAIN "referral service", the attorneys then would cross-refer their newly-minted clients to Lewin's chiropractic offices.

176.    In 2012, in a report entitled "State leaders probing accident referrals like 411 Pain", WKMG-TV – the Orlando, Florida CBS affiliate – illustrated how the collusive and

unlawful "reciprocal relationship" described by Lewin in the <u>Miami New Times</u> article

worked. Specifically:

(i)     The WKMG-TV report recounted the story of one automobile accident victim who called 1-800-411-PAIN seeking a referral to a personal injury attorney. Though the accident victim called seeking a referral to a personal injury attorney, she instead was sent by the 411-PAIN "referral service" directly to one of the Lewin chiropractic offices that later was merged into Path Medical. When she arrived at the Lewin chiropractic office, she was met at the chiropractic office by a representative of a personal injury law firm, who told her that she had to report to the chiropractic office on a regular basis for "treatment". Within just two months, the bills from the Lewin chiropractic office not only had exhausted the accident victim's $10,000.00 in PIP Benefits, but had far exceeded the available PIP Benefits, leaving the accident victim $5,000.00 in debt. Only at that point did the personal injury firm advise its putative "client" that she had no case, because the other motorist had no bodily injury coverage that she could sue for.

(ii)    The WKMG-TV report recounted the story of two other automobile accident victims who called 1-800-411-PAIN seeking a referral to a personal injury attorney. These two accident victims not only were put in touch with an attorney, but also were sent by the 411-PAIN "referral service" directly to one of the Lewin chiropractic offices that later was merged into Path Medical. The personal injury attorney and the Lewin chiropractic office told the accident victims that they had to receive "treatment" at the Lewin chiropractic office for three-to-four months before they could "start a case". When the two accident victims began to feel better before the three-to-four months elapsed, their personal injury attorney urged them to continue to receive medically unnecessary "treatment" at the Lewin chiropractic office, because otherwise they would not be able to recover on their personal injury claims.

177.    The WKMG-TV report also noted the presence of a van operated by the 411-PAIN "referral service" outside of the Lewin chiropractic office, and WKMG-TV reporters followed the 411-PAIN van as it ferried patients to and from the Lewin chiropractic office.

178.    What is more, in 2011 the Florida Bar created a Special Committee on Lawyer Referral Services (the "Florida Bar Special Committee"), in response to growing public concern regarding personal injury attorney and health care "referral services", including the

"referral service" operated by Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising.

179.   In July 2012, the Florida Bar Special Committee issued its Final Report, which contained disturbing findings regarding personal injury attorney and health care "referral services" in general, and – in particular – the 1-800-411-PAIN "referral service" operated by Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising.

180.   For example, the Florida Bar Special Committee's Final Report noted – among other things – that:

> Review of lawyer referral service registrations within The Florida Bar indicates that most for profit referral services are owned by persons or entities other than lawyers, particularly in the area of personal injury referral services. Non-lawyer owned entities are not subject to the Rules Regulating The Florida Bar. For example, 1-800-ASK-GARY ("ASK GARY"), one of the more heavily advertised and utilized referral services, operating extensively throughout Florida, is apparently a trade name, the ownership of which can ultimately be traced to Dr. Gary Kompothecras, D.C., a chiropractor in Sarasota. Entities owned or controlled by Kompothecras also own or control a chain of clinics operating throughout Florida and in at least two other states. Callers to the ASK GARY hotline are referred exclusively to the Kompothecras controlled clinics. Although the referral service itself is not subject to the jurisdiction of The Florida Bar, approximately 76 members of The Florida Bar were listed as participating members of ASK GARY as of June, 2012.

> Similarly, ownership of 1-800-411-PAIN ("411 PAIN"), another heavily advertised referral service operating throughout the state, can be traced to Robert C. Lewin, a Hollywood chiropractor. It appears that 411 PAIN recruits physicians to become independent contractors or affiliates of its chiropractic clinics. Approximately 139 members of The Florida Bar are listed as participating in 411 PAIN as of June, 2012.

181.   The Florida Bar Special Committee's Final Report included – among other things – a case study regarding the 1-800-411-PAIN "referral service" operated by Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising that underscores the collusive and unlawful self-referral arrangements between Lewin, the chiropractic offices that later became the Path

Medical clinics, and the personal injury attorneys who received client referrals from the 411-

PAIN "referral service". Specifically, and as set forth in the Final Report:

> Kathy Wilson, an employee of a Head Start Early Childhood Education program in Jacksonville, appeared through a video statement. After being involved in a minor automobile accident, she thought she needed to get checked out and called 411 PAIN. Wilson provided information about the accident and her personal injury protection insurance to the referral service and was advised she would be contacted shortly. She was called the next day and arrangements were made for her to be picked up at her home and taken – with several other people – to a pain clinic in a neighboring community. When she got to the clinic, Wilson was surprised to be told she must first meet with an attorney before seeing a doctor. The attorney, who was waiting for her at the clinic, advised Wilson about the approximate length of the treatment that she would need, what she might expect from a personal injury claim, and then had her sign legal documents. Wilson then saw the doctor, who took x-rays, prescribed a 60- to 90-day program of massage and other treatments with a physical therapist, and indicated she would need four to five treatments a week. Wilson was also advised that she would be transported to and from the clinic. Wilson said she never went back because the process felt wrong to her, indicating there was a lot of pressure on her to sign up with the law firm, leaving her with a bad impression about attorneys. According to Wilson, it seemed the lawyers were trying to scheme her insurance company out of money and not trying to help her very much.

182.    The Florida Bar Special Committee's Final Report concluded by recommending – among other things – that the Florida Bar:

(i)      prohibit attorneys from accepting referrals from any referral service that also refers clients for any other professional services – such as health care services – based upon the same underlying incident;

(ii)     prohibit attorneys from referring clients for any other professional services – such as health care services – in consideration for the attorneys' receipt of referrals from any attorney referral service; and

(iii)    require attorneys that receive referrals from a referral service to disclose the entirety of their relationships with the referral service, including ownership of the referral service, and the financial relationships between the referral service and the attorneys.

183.    Despite this scrutiny, in the claims identified in Exhibit "1", Lewin, Manion,

Permaul, Path Medical, Path Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, and Landau & Associates routinely colluded to violate the Self-Referral Act by submitting claims to GEICO for designated health care services rendered at the Path Medical clinics pursuant to Lewin's illegal self-referrals, or by causing such claims to be submitted, and by failing to refund the resulting payments back to GEICO.

184.    Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising knew that Lewin's use of the 1-800-411-PAIN "referral service" to self-refer Insureds to the Path Medical clinics violated the Self-Referral Act, and so they sought to conceal the self-referrals. Specifically, Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising sought to conceal the self-referrals by falsely representing the 1-800-411-PAIN "referral service" as an independent, legitimate health care referral service, when in fact it was used in Florida to steer Insureds almost exclusively to Path Medical clinics.

185.    For example, the website for the 1-800-411-PAIN "referral service" falsely represented that "our medical referral team will find the physician or doctor to take care of your needs!" However, the 1-800-411-PAIN website failed to disclose that there was no "finding" involved in the purported "referral service". Rather, virtually every Florida Insured who called 1-800-411-PAIN seeking a health care referral was referred either to the closest Path Medical clinic, or to a personal injury law firm – including Kanner & Pintaluga – who then cross-referred the Insured to the closest Path Medical clinic.

186.    Similarly, though the 1-800-411-PAIN website contended that "411 PAIN can help you find the right doctor for whatever situation you may have", it omitted to mention

that the only doctors to whom callers would be referred were doctors who worked for the Path Medical clinics.

187.    Moreover, the 1-800-411-PAIN website failed to disclose, anywhere, that the Path Medical clinics were owned and controlled by Lewin, who likewise owned and controlled the 1-800-411-PAIN "referral service".

188.    In the claims identified in Exhibit "1", Lewin, Permaul, Manion, Path Medical, and Path Holdings routinely falsely represented that the underlying health care services were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable because they were provided – to the extent that they were provided at all – pursuant to the Defendants' collusive and illegal self-referral and cross-referral scheme.

**C.    The Violations of the Patient Brokering Act and Anti-Kickback Statute**

189.    As set forth above, the Patient Brokering Act broadly prohibits any person from offering, paying soliciting, or receiving any commission, bonus, rebate, kickback, or bribe – directly or indirectly, in cash or in kind – or from engaging in any fee-splitting arrangement of any type whatsoever, to either induce a patient referral or in exchange for a patient referral.

190.    What is more – and again, set forth above, the Patient Brokering Act makes it unlawful for any person to "aid, abet, advise, or otherwise participate" in such conduct.

191.    Moreover, the Anti-Kickback Statute prohibits any health care provider from offering, paying, soliciting, or receiving a kickback, directly or indirectly, overtly or covertly, in cash or in kind, for referring or soliciting patients.

192.    As set forth above, violations of the Anti-Kickback Statute also constitute violations of the Patient Brokering Act.

193.    Not only did the Defendants engage in pervasive violations of the Self-Referral Act, but they also engaged in pervasive violations of the Patient Brokering Act and Anti-Kickback Statute.

194.    The Defendants engaged in pervasive violations of the Patient Brokering Act and Anti-Kickback Statute in the following ways:

(i)     In exchange for personal injury client referrals from the 411-PAIN "referral service", which was operated by Defendants Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising, personal injury attorneys and law firms in the "referral network" – including but not limited to Defendants Kanner, Pintaluga, and Kanner & Pintaluga – agreed to cross-refer their newly-minted clients to the Path Medical clinics, which were operated by Lewin, Manion, Permaul, Path Medical, and Path Holdings.

(ii)    As further consideration for the cross-referrals from Kanner, Pintaluga, and Kanner & Pintaluga to the Path Medical clinics, Lewin, Manion, Permaul, Path Medical, and Path Holdings agreed to retain Landau & Associates – which was owned not only by Landau, but also by Kanner and Pintaluga – to pursue collection on virtually all of Path Medical's billing, thereby generating massive attorneys' fees for Landau & Associates, Landau, Kanner, and Pintaluga.

195.    For example:

(i)     On January 22, 2017, an Insured named JS was involved in an automobile accident. JS then called 1-800-411-PAIN. Upon calling 1-800-411-PAIN, JS was referred – at Lewin and H. Lewin's direction – to Morgan & Morgan, with the understanding that Morgan & Morgan would then cross-refer JS to a Path Medical clinic. Specifically, as unlawful consideration for the initial referral from Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising, Morgan & Morgan agreed to and did cross-refer JS to Path Medical-Longwood.

(ii)    On January 22, 2017, an Insured named JM was involved in an automobile accident. JM then called 1-800-411-PAIN. Upon calling 1-800-411-PAIN, JM was referred – at Lewin and H. Lewin's direction – to Feingold & Posner,

with the understanding that Feingold & Posner would then cross-refer JM to a Path Medical clinic. Specifically, as unlawful consideration for the initial referral from Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising, Feingold & Posner agreed to and did cross-refer JM to Path Medical-Hollywood.

(iii)    On February 15, 2017, an Insured named DM was involved in an automobile accident. DM then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Kanner & Pintaluga. As unlawful consideration for the initial referral from Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising, Kanner & Pintaluga – at the direction of Kanner and Pintaluga – agreed to and did cross-refer DM to Path Medical-Dade. What is more, as further consideration for the cross-referral from Kanner & Pintaluga to Path Medical-Dade, Lewin, Manion, Permaul, Path Medical, and Path Holdings agreed to retain Landau & Associates – which was owned not only by Landau, but also by Kanner and Pintaluga – to pursue collection on virtually all of Path Medical's billing.

(iv)    On March 7, 2017, an Insured named BG was involved in an automobile accident. BG then called 1-800-411-PAIN. Upon calling 1-800-411-PAIN, BG was referred – at Lewin and H. Lewin's direction – to The Ward Law Group, with the understanding that The Ward Law Group would then cross-refer BG to a Path Medical clinic. Specifically, as unlawful consideration for the initial referral from Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising, The Ward Law Group agreed to and did cross-refer BG to Path Medical-Pines.

(v)    On March 9, 2017, an Insured named MH was involved in an automobile accident. MH then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Kanner & Pintaluga. As unlawful consideration for the initial referral from Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising, Kanner & Pintaluga – at the direction of Kanner and Pintaluga – agreed to and did cross-refer MH to Path Medical-East. What is more, as further consideration for the cross-referral from Kanner & Pintaluga to Path Medical-East, Lewin, Manion, Permaul, Path Medical, and Path Holdings agreed to retain Landau & Associates – which was owned not only by Landau, but also by Kanner and Pintaluga – to pursue collection on virtually all of Path Medical's billing.

(vi)    On March 15, 2017, an Insured named DY was involved in an automobile accident. DY then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Kanner & Pintaluga. As unlawful consideration for the initial referral from Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising, Kanner & Pintaluga – at the direction of Kanner and Pintaluga –

agreed to and did cross-refer DY to Path Medical-Coral Springs Margate. What is more, as further consideration for the cross-referral from Kanner & Pintaluga to Path Medical-Coral Springs Margate, Lewin, Manion, Permaul, Path Medical, and Path Holdings agreed to retain Landau & Associates – which was owned not only by Landau, but also by Kanner and Pintaluga – to pursue collection on virtually all of Path Medical's billing.

(vii)    On April 12, 2017, an Insured named AS was involved in an automobile accident. AS then called 1-800-411-PAIN. Upon calling 1-800-411-PAIN, AS was referred – at Lewin and H. Lewin's direction – to Michael T. Gibson, P.A., with the understanding that Michael T. Gibson, P.A. would then cross-refer AS to a Path Medical clinic. Specifically, as unlawful consideration for the initial referral from Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising, Michael T. Gibson, P.A. agreed to and did cross-refer AS to Path Medical-OBT.

(viii)    On April 25, 2017, an Insured named VR was involved in an automobile accident. VR then spoke with H. Lewin, and was referred by H. Lewin to Kanner & Pintaluga. As unlawful consideration for the initial referral from Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising, Kanner & Pintaluga – at the direction of Kanner and Pintaluga – agreed to and did cross-refer VR to Path Medical-Margate. What is more, as further consideration for the cross-referral from Kanner & Pintaluga to Path Medical-Margate, Lewin, Manion, Permaul, Path Medical, and Path Holdings agreed to retain Landau & Associates – which was owned not only by Landau, but also by Kanner and Pintaluga – to pursue collection on virtually all of Path Medical's billing.

(ix)    On April 27, 2017, an Insured named DM was involved in an automobile accident. DM then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Kanner & Pintaluga. As unlawful consideration for the initial referral from Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising, Kanner & Pintaluga – at the direction of Kanner and Pintaluga – agreed to and did cross-refer DM to Path Medical-St. Pete. What is more, as further consideration for the cross-referral from Kanner & Pintaluga to Path Medical-St. Pete, Lewin, Manion, Permaul, Path Medical, and Path Holdings agreed to retain Landau & Associates – which was owned not only by Landau, but also by Kanner and Pintaluga – to pursue collection on virtually all of Path Medical's billing.

(x)    On May 3, 2017, an Insured named JR was involved in an automobile accident. JR then called 1-800-411-PAIN. Upon calling 1-800-411-PAIN, JR was referred – at Lewin and H. Lewin's direction – to Wites & Kapetan, with the understanding that Wites & Kapetan would then cross-refer JR to a Path Medical clinic. Specifically, as unlawful consideration for the initial referral

from Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising, Wites & Kapetan agreed to and did cross-refer JR to Path Medical-Dade.

(xi)     On May 4, 2017, an Insured named TT was involved in an automobile accident. TT then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Kanner & Pintaluga. As unlawful consideration for the initial referral from Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising, Kanner & Pintaluga – at the direction of Kanner and Pintaluga – agreed to and did cross-refer DM to Path Medical-Longwood. What is more, as further consideration for the cross-referral from Kanner & Pintaluga to Path Medical-Longwood, Lewin, Manion, Permaul, Path Medical, and Path Holdings agreed to retain Landau & Associates – which was owned not only by Landau, but also by Kanner and Pintaluga – to pursue collection on virtually all of Path Medical's billing.

(xii)    On May 9, 2017, an Insured named LC was involved in an automobile accident. LC then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Kanner & Pintaluga. As unlawful consideration for the initial referral from Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising, Kanner & Pintaluga – at the direction of Kanner and Pintaluga – agreed to and did cross-refer DM to Path Medical-Kissimmee. What is more, as further consideration for the cross-referral from Kanner & Pintaluga to Path Medical-Kissimmee, Lewin, Manion, Permaul, Path Medical, and Path Holdings agreed to retain Landau & Associates – which was owned not only by Landau, but also by Kanner and Pintaluga – to pursue collection on virtually all of Path Medical's billing.

(xiii)   On May 11, 2017, an Insured named GC was involved in an automobile accident. GC then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Kanner & Pintaluga. As unlawful consideration for the initial referral from Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising, Kanner & Pintaluga – at the direction of Kanner and Pintaluga – agreed to and did cross-refer GC to Path Medical-Longwood. What is more, as further consideration for the cross-referral from Kanner & Pintaluga to Path Medical-Longwood, Lewin, Manion, Permaul, Path Medical, and Path Holdings agreed to retain Landau & Associates – which was owned not only by Landau, but also by Kanner and Pintaluga – to pursue collection on virtually all of Path Medical's billing.

(xiv)    On June 8, 2017, an Insured named JO was involved in an automobile accident. JO then called 1-800-411-PAIN. Upon calling 1-800-411-PAIN, JO was referred – at Lewin and H. Lewin's direction – to The Trial Professionals, with the understanding that The Trial Professionals would then cross-refer JO to a Path Medical clinic. Specifically, as unlawful consideration for the initial

referral from Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising, The Trial Professionals agreed to and did cross-refer JO to Path Medical-East.

(xv)   On June 12, 2017, an Insured named KB was involved in an automobile accident. KB then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Kanner & Pintaluga. As unlawful consideration for the initial referral from Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising, Kanner & Pintaluga – at the direction of Kanner and Pintaluga – agreed to and did cross-refer KB to Path Medical-Margate. What is more, as further consideration for the cross-referral from Kanner & Pintaluga to Path Medical-Margate, Lewin, Manion, Permaul, Path Medical, and Path Holdings agreed to retain Landau & Associates – which was owned not only by Landau, but also by Kanner and Pintaluga – to pursue collection on virtually all of Path Medical's billing.

(xvi)   On June 13, 2017, an Insured named SV was involved in an automobile accident. SV then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Kanner & Pintaluga. As unlawful consideration for the initial referral from Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising, Kanner & Pintaluga – at the direction of Kanner and Pintaluga – agreed to and did cross-refer SV to Path Medical-Hollywood. What is more, as further consideration for the cross-referral from Kanner & Pintaluga to Path Medical-Hollywood, Lewin, Manion, Permaul, Path Medical, and Path Holdings agreed to retain Landau & Associates – which was owned not only by Landau, but also by Kanner and Pintaluga – to pursue collection on virtually all of Path Medical's billing.

(xvii)   On June 27, 2017, an Insured named KG was involved in an automobile accident. KG then called 1-800-411-PAIN. Upon calling 1-800-411-PAIN, KG was referred – at Lewin and H. Lewin's direction – to Wites & Kapetan, with the understanding that Wites & Kapetan would then cross-refer KG to a Path Medical clinic. Specifically, as unlawful consideration for the initial referral from Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising, Wites & Kapetan agreed to and did cross-refer KG to Path Medical-Pines.

(xviii)  On July 2, 2017, an Insured named CN was involved in an automobile accident. CN then called 1-800-411-PAIN. Upon calling 1-800-411-PAIN, CN was referred – at Lewin and H. Lewin's direction – to the Law Office of Mario J. Louis, with the understanding that the Law Office of Mario J. Louis would then cross-refer CN to a Path Medical clinic. Specifically, as unlawful consideration for the initial referral from Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising, the Law Office of Mario J. Louis agreed to and did cross-refer CN to Path Medical-Broward.

(xix)   On August 4, 2017, an Insured named KK was involved in an automobile accident. KK then called 1-800-411-PAIN, and was referred – at Lewin and H. Lewin's direction – to Kanner & Pintaluga. As unlawful consideration for the initial referral from Lewin, H. Lewin, 411-PAIN, 411-IP, and 411 Advertising, Kanner & Pintaluga – at the direction of Kanner and Pintaluga – agreed to and did cross-refer KK to Path Medical-North Miami/North Miami Beach. What is more, as further consideration for the cross-referral from Kanner & Pintaluga to Path Medical-North Miami/North Miami Beach, Lewin, Manion, Permaul, Path Medical, and Path Holdings agreed to retain Landau & Associates – which was owned not only by Landau, but also by Kanner and Pintaluga – to pursue collection on virtually all of Path Medical's billing.

196.   These are only representative examples. In the claims identified in Exhibit "1", Lewin, Manion, Permaul, Path Medical, Path Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, and Landau & Associates – as well as other personal injury attorneys and law firms – routinely violated the Patient Brokering and Anti-Kickback Statute through their collusive and unlawful cross-referral scheme.

197.    These patient brokering arrangements were the continuation of the unlawful and collusive business model Lewin and his associates had pursued for years.

198.   For example, and as set forth above, Lewin acknowledged in his interview with the Miami New Times that his chiropractic offices (which later merged into Path Medical) and the personal injury attorneys who received referrals from the 1-800-411-PAIN "referral service" had a "reciprocal relationship".

199.   Pursuant to this so-called "reciprocal relationship", upon receiving a referral from the 1-800-411-PAIN "referral service", the attorneys then would cross-refer their newly-minted clients to Lewin's chiropractic offices.

200.   Not even the initial personal injury referrals from the 411-PAIN "referral

58

service" to Kanner & Pintaluga, and the lucrative right to pursue collection on virtually all of Path Medical's billing via Landau & Associates, were sufficient to compensate Kanner, Pintaluga, and Kanner & Pintaluga for their collusive and unlawful cross-referrals to the Path Medical clinics, which accounted for a substantial percentage of Path Medical's overall billing.

201.    Accordingly, Lewin, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, and Landau entered into a secret arrangement to funnel additional consideration to Kanner and Pintaluga in exchange for their collusive and unlawful cross-referrals to the Path Medical clinics.

202.    In particular:

(i)     Kanner, Pintaluga, and Landau agreed to form a purported Michigan law firm called Motor City Accident Attorneys, P.L.L.C. ("Motor City Accident Attorneys"), which would have Kanner, Pintaluga, and Landau as its members.

(ii)    Then, Lewin, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, and Landau agreed that Kanner, Pintaluga, and Landau would approach personal injury attorneys in Michigan, and offer those Michigan personal injury attorneys the opportunity to participate in the 411-PAIN "referral network".

(iii)   However, in order to participate in the 411-PAIN "referral network", the Michigan personal injury attorneys would have to agree to pay Motor City Accident Attorneys – i.e., Kanner, Pintaluga, and Landau – up to 50 percent of the settlements in the resulting personal injury cases, ostensibly as compensation for Motor City Accident Attorneys' services as "co-counsel" on the cases.

(iv)    However, Motor City Accident Attorneys never actually served as legitimate "co-counsel" or did any work on the cases. Rather, the money that Motor City Accident Attorneys received from Michigan personal injury lawyers who participated in the 411-PAIN "referral service" was additional, disguised consideration in exchange for Kanner, Pintaluga, and Kanner & Pintaluga's collusive and unlawful cross-referrals to the Path Medical clinics in Florida.

203.    For example, in State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic, P.C., E.D. Mich. Case No. 4:14-cv-11521 (the "Warren Chiropractic Action"), State Farm Mutual Automobile Insurance Company ("State Farm") sued a group of Michigan health care providers and their associates, alleging – in substance – that they submitted fraudulent PIP billing for medically unnecessary treatment and transportation services. State Farm also alleged that the defendants falsified diagnoses to curry favor with non-party personal injury attorneys with whom the defendants had cross-referral relationships.

204.    Thereafter, State Farm took the deposition of Cherie Lobb, Esq. ("Lobb"), one of the non-party personal injury attorneys, in the Warren Chiropractic Action. During her deposition, Lobb gave testimony indicating that:

(i)     She was contacted by Landau & Associates' manager, who arranged for her to meet with Landau, Kanner, and Pintaluga at a hotel in Michigan.

(ii)    During the meeting, Landau, Kanner, and Pintaluga told Lobb that 411-PAIN would commence a large-scale advertising campaign in Michigan, akin to the 411-PAIN advertising in Florida.

(iii)   Landau, Kanner, and Pintaluga arranged for Lobb's law firm to receive personal injury client referrals from the 411-PAIN "referral service", in exchange for which Lobb's law firm agreed to pay Motor City Accident Attorneys – i.e., Kanner, Pintaluga, and Landau – between 40 and 50 percent of any recovery in the resulting personal injury cases.

(iv)    Though Motor City Accident Attorneys supposedly was to receive this 40-50 percent of the personal injury lawsuit recoveries as compensation for its purported service as "co-counsel" on the underlying cases, in fact Motor City Accident Attorneys did no actual work on the cases, and would not even allow itself to be listed on the pleadings.

205.    Upon information and belief, the arrangement between Lewin, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Landau, and Motor City Accident

Attorneys, on the one hand, and Lobb's law firm, on the other, was just one of many similar arrangements in which Lewin, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Landau, and Motor City Accident Attorneys arranged to funnel additional consideration to Kanner and Pintaluga in exchange for referrals from Kanner, Pintaluga, and Kanner & Pintaluga to the Path Medical clinics.

206.    For example, during her deposition testimony, Lobb indicated that Kanner, Pintaluga, Landau, and Motor City Accident Attorneys approached numerous other Michigan personal injury lawyers with their phony "co-counsel" proposal.

207.    In the claims identified in Exhibit "1", Lewin, Permaul, Manion, Path Medical, and Path Holdings routinely falsely represented that the underlying health care services were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable because they were provided – to the extent that they were provided at all – pursuant to the Defendants' illegal patient brokering and kickback scheme.

**D.    The Violations of the Chiropractor Advertising Laws**

208.    As set forth above, the Chiropractor Advertising Laws prohibit chiropractors from – among other things – advertising "under a name other than one's own", engaging in "[f]alse, deceptive, or misleading advertising", disseminating or causing the dissemination of any advertisement or advertising which is in any way fraudulent, false, deceptive or misleading, and soliciting patients, either personally or through an agent, unless such solicitation falls within a category of solicitations approved by the Florida Board of Chiropractic Medicine.

209.    Lewin and Manion – who are chiropractors – have violated the Chiropractor

Advertising Laws by advertising under a name other than their own, engaging in false, deceptive, and misleading advertising, and engaging in unapproved patient solicitation.

210.    Specifically, Lewin and Manion have acted in concert with H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Permaul, Path Medical, and Path Holdings to engage in fraudulent, false, deceptive, and misleading advertising through 411-PAIN, 411-IP, and 411 Advertising by:

(i)    misrepresenting 411-PAIN as an independent, legitimate medical and legal referral service, and omitting that it is – in fact – used in Florida solely to refer patients only to the Path Medical clinics and to personal injury attorneys who secretly agree to cross-refer their clients to the Path Medical clinics;

(ii)    advertising under a name – i.e., 411-PAIN – other than Lewin, Manion, or Path Medical's name; and

(iii)    making representations regarding the quality of the chiropractic services offered, and conveying the impression that the chiropractors at the Path Medical clinics possess qualifications, skills, or other attributes that are superior to other chiropractors.

211.    For example, and as set forth above, the website for the 411-PAIN "referral service" falsely represented that "our medical referral team will find the physician or doctor to take care of your needs!" However, the 1-800-411-PAIN website failed to disclose that there was no "finding" involved in the purported "referral" service. Rather, virtually every Florida Insured who called 1-800-411-PAIN seeking a health care referral was referred either to the closest Path Medical clinic, or to a personal injury law firm – including Kanner & Pintaluga – who then cross-referred the Insured to the closest Path Medical clinic.

212.    Similarly, though the 1-800-411-PAIN website contended that "411 PAIN can help you find the right doctor for whatever situation you may have", it omitted to mention that the only doctors to whom callers would be referred were doctors who worked for the

Path Medical clinics.

213.    Along similar lines, the 1-800-411-PAIN website falsely contended that callers could "have access to hundreds of doctors in our network with one call to 1-800-411-PAIN." This representation was false because the 411-PAIN "referral network" did not contain hundreds of doctors. To the contrary, virtually every Florida caller was referred – either directly or through the Defendants unlawful and collusive cross-referral scheme – to one or another of the Path Medical clinics.

214.    Moreover, the 1-800-411-PAIN website failed to disclose, anywhere, that the Path Medical clinics were owned and controlled by Lewin, who likewise owned and controlled the 1-800-411-PAIN "referral service".

215.    Pursuant to the Chiropractor Advertising Laws, chiropractor advertising is deemed to be fraudulent, false, deceptive, or misleading if – among other things – it "[c]onveys the impression that the chiropractor or chiropractors, disseminating the advertising or referred to therein, possess qualifications, skills, or other attributes which are superior to other chiropractors, other than a simple listing of earned professional post-doctoral or other professional achievements."

216.    Even so, the 1-800-411-PAIN website falsely contended that the chiropractors at the Path Medical clinics – the only clinics to which Florida callers would be referred after calling 1-800-411-PAIN – possessed qualifications, skills, or other attributes that were superior to other chiropractors.

217.    For example, the 1-800-411-PAIN website falsely represented that the "professionals" in the 411-PAIN "network of doctors" supposedly "specialize[d] in auto

accidents". In fact, the 411-PAIN "network of doctors" was comprised almost entirely of chiropractors employed at the Path Medical clinics, none of whom possessed any legitimate "specialization" in automobile accident cases, or any other qualifications, skills, or attributes superior to other chiropractors.

218.    Similarly, the 1-800-411-PAIN website falsely represented that the "doctors" in its "referral network" – i.e., the chiropractors and handful of physicians employed at the Path Medical clinics – had been "vetted out". In fact, neither 411-PAIN, nor anyone associated with 411-PAIN, ever legitimately "vetted" any of the chiropractors or physicians who worked at Path Medical, or otherwise confirmed in any way that they were superior in any way to any other chiropractors or physicians.

219.    In keeping with the fact that 1-800-411-PAIN never "vetted" any of the doctors in its "referral network", the Path Medical clinics – virtually the only clinics to which Insureds who called 1-800-411-PAIN were referred – employed Cheesman and Qian as purported "medical directors". Any legitimate "vetting" by 411-PAIN would have revealed, among other things, that Cheesman and Qian had extremely troubling personal and professional histories, which called their professional competence and ethics into serious question.

220.    What is more, pursuant to the Chiropractor Advertising Laws, chiropractor advertising is deemed to be fraudulent, false, deceptive, or misleading if – among other things – it "[c]reates false, or unjustified expectations of beneficial treatment or successful cures."

221.    Nonetheless, the 1-800-411-PAIN website created false, or unjustified

expectations of beneficial treatment or successful cures. For example, the 1-800-411-PAIN website represented that callers would "be quickly on the road to recovery", and be able to "[s]top experiencing pain".

222.    In the claims identified in Exhibit "1", Lewin, Permaul, Manion, Path Medical, and Path Holdings routinely falsely represented that the underlying health care services were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable because they were provided – to the extent that they were provided at all – pursuant to the Defendants' pervasive violation of the Chiropractor Advertising Laws.

**E.      The Violations of the Clinic Act**

223.    Because the Path Medical clinics were subject to the Clinic Act, Lewin, Permaul, Manion, Path Medical, and Path Holdings could not lawfully operate the Path Medical clinics, or use the Path Medical clinics as vehicles to submit PIP billing to GEICO and other insurers, unless they recruited and retained licensed physicians to serve as the Path Medical clinics' medical directors. See Fla. Stat. §§ 400.9905, 440.9935.

224.    However, if Lewin, Permaul, Manion, Path Medical, and Path Holdings recruited and retained legitimate physicians to serve as legitimate medical directors at the Path Medical clinics, the physicians actually would be obligated to fulfill the statutory requirements applicable to clinic medical directors. See, e.g., Fla. Stat. § 400.9935(1). By extension, any such legitimate medical directors would impede Lewin, Permaul, Manion, Path Medical, and Path Holdings' ability to use the Path Medical clinics as vehicles to submit a large amount of fraudulent PIP billing to GEICO and other Florida automobile insurers.

225.    Accordingly, Lewin, Permaul, Manion, Path Medical, and Path Holdings required pliable physicians willing to falsely pose as the "medical directors" at the Path Medical clinics, but who – in actuality – would not even attempt to fulfill the statutory requirements applicable to clinic medical directors, and thereby would permit Lewin, Permaul, Manion, Path Medical, and Path Holdings to use the Path Medical clinics as vehicles to submit a large amount of fraudulent PIP billing to GEICO and other insurers.

1.    **Cheesman's Service as the Phony Medical Director at Path Medical-Central Tampa, Path Medical-Lakeland, Path Medical-North Tampa, Path Medical-South Tampa, and Path Medical-St. Pete**

226.    Toward that end, after consolidating Lewin's existing network of chiropractic offices into Path Medical, Lewin, Permaul, Manion, Path Medical, and Path Holdings retained Cheesman, a licensed physician who was willing to falsely pose as the legitimate medical director at the Path Medical clinics known as Path Medical-Central Tampa, Path Medical-Lakeland, Path Medical-North Tampa, Path Medical-South Tampa, and Path Medical-St. Pete.

227.    Upon information and belief, Cheesman was receptive to the offer from Lewin, Permaul, Manion, Path Medical, and Path Holdings because his advanced age, lack of professional qualifications, professional disciplinary history, and personal history made it extremely difficult for him to obtain legitimate, sufficiently-remunerative employment as a physician.

228.    For instance, Cheesman was in his early to mid 70s during the period – from 2015 to the present – when he simultaneously purported to serve as the "medical director" at five separate Path Medical clinics.

229.    What is more, Cheesman never became board certified in any medical specialty, which – like his advanced age – limited his prospects for medical employment.

230.    Moreover, and as set forth above, Cheesman had previously been subjected to professional discipline in a case involving negligence and failure to maintain medical records, and the records regarding Cheesman's professional discipline were available via a simple internet search, which likewise rendered him unattractive to potential employers.

231.    In addition – and again, as set forth above – Cheesman had been indicted by a federal grand jury on 23 counts of Medicare fraud in connection with another corrupt health care clinic. Though the charges against Cheesman were ultimately dropped, they were dropped in exchange for a guilty plea from the clinic.

232.    Furthermore, media coverage regarding the federal charges against Cheesman – which, like his professional disciplinary history, was available via a simple internet search – indicated that Cheesman used various aliases, and otherwise raised serious questions about his professional standards.

233.    In order to circumvent Florida law and induce the Florida Agency for Health Care Administration to maintain Path Medical's licensure and to permit Path Medical to operate the clinics known as Path Medical-Central Tampa, Path Medical-Lakeland, Path Medical-North Tampa, Path Medical-South Tampa, and Path Medical-St. Pete, Lewin, Permaul, Manion, Path Medical, and Path Holdings entered into a secret scheme with Cheesman.

234.    Specifically, in exchange for a designated salary from Lewin, Permaul, Manion, Path Medical, and Path Holdings, Cheesman agreed to falsely represent, to the

Florida Agency for Health Care Administration, to the Insureds who sought treatment at Path Medical, and to the insurers including GEICO that received PIP claims from Path Medical, that he was the true medical director at Path Medical-Central Tampa, Path Medical-Lakeland, Path Medical-North Tampa, Path Medical-South Tampa, and Path Medical-St. Pete, and that he truly fulfilled the statutory requirements applicable to clinic medical directors at those clinics.

235.   However, Cheesman never genuinely served as medical director at Path Medical-Central Tampa, Path Medical-Lakeland, Path Medical-North Tampa, Path Medical-South Tampa, and Path Medical-St. Pete. Instead, from the beginning of his association with those Path Medical clinics as their phony "medical director", Cheesman ceded all day-to-day decision-making and oversight regarding health care services at those clinics, and the resulting billing, to Lewin, Permaul, Manion, Path Medical and – since October 2016 – to Path Holdings.

236.   Cheesman never legitimately served as medical director at Path Medical-Central Tampa, Path Medical-Lakeland, Path Medical-North Tampa, Path Medical-South Tampa, and Path Medical-St. Pete, inasmuch as he never conducted systematic reviews of the billing from those clinics to ensure that the billing was not fraudulent or unlawful, and never even made any attempt to discover the unlawful charges submitted through those clinics, much less take any immediate corrective action. See Fla. Stat. § 400.9935(1).

237.   Indeed, given the fraudulent treatment and billing protocol described below – which was pervasive across all of the billing submitted to GEICO through Path Medical-Central Tampa, Path Medical-Lakeland, Path Medical-North Tampa, Path Medical-South

Tampa, and Path Medical-St. Pete – there is simply no way that Cheesman could have legitimately conducted systematic reviews of the billing from those clinics to ensure that the billing was not fraudulent or unlawful.

238.   In fact, Cheesman – who was in his early to mid 70s at the time – could not possibly have legitimately fulfilled his statutory duty to conduct systematic reviews of the massive amount of billing submitted to GEICO through Path Medical-Central Tampa, Path Medical-Lakeland, Path Medical-North Tampa, Path Medical-South Tampa, and Path Medical-St. Pete.

239.   For example, between 2015 and the present, thousands of individual bills, containing tens of thousands of discrete charges, were submitted to GEICO through Path Medical-Central Tampa, Path Medical-Lakeland, Path Medical-North Tampa, Path Medical-South Tampa, and Path Medical-St. Pete.

240.   What is more, GEICO is only one of the automobile insurance companies doing business in the Florida automobile insurance market.

241.   It is extremely improbable, to the point of impossibility, that the Defendants only submitted fraudulent billing to GEICO through Path Medical-Central Tampa, Path Medical-Lakeland, Path Medical-North Tampa, Path Medical-South Tampa, and Path Medical-St. Pete, and that the Defendants did not simultaneously bill other automobile insurers through those clinics.

242.   Accordingly, upon information and belief, the thousands of individual bills and tens of thousands of individual charges submitted to GEICO that Cheesman falsely purported to "systematically review" at Path Medical-Central Tampa, Path Medical-

Lakeland, Path Medical-North Tampa, Path Medical-South Tampa, and Path Medical-St. Pete constituted only a fraction of the <u>total</u> number of bills that Cheesman falsely purported to "systematically review" during his phony tenure as "medical director" at those clinics.

243.    Not even a legitimate physician in the prime of his or her life could have "systematically reviewed" the massive amount of billing generated by Path Medical-Central Tampa, Path Medical-Lakeland, Path Medical-North Tampa, Path Medical-South Tampa, and Path Medical-St. Pete pursuant to the Defendants' pervasive violation of the Self-Referral Act, the Patient Brokering Act, the Anti-Kickback Statute, and the Chiropractor Advertising Laws.

244.    What is more, even as Cheesman was falsely purporting to serve as "medical director" at five separate Path Medical clinics, at his advanced age, he also was simultaneously purporting to personally perform – or at least directly supervise – a massive amount of health care services that were billed to GEICO.

245.    For example, between 2015 and the present alone, Cheesman purported to personally perform – or at least directly supervise – more than $660,000.00 worth of purported health care services that were billed to GEICO through various of the Path Medical clinics, as well as Cheesman's personal medical practice.

246.    It is improbable, to the point of impossibility, that Cheesman actually could have fulfilled his statutory duty as medical director at five separate Path Medical clinics, while simultaneously purporting to personally perform – or at least directly supervise – such a massive number of discrete health care services.

247.   What is more – and as set forth above – GEICO is only one of the many insurance companies in the Florida automobile insurance market.

248.   Accordingly, the massive number of discrete health care services that Cheesman purported to personally perform or directly supervise during the period when he also was purporting to serve as medical director at five separate Path Medical clinics constituted only a fraction of the total number of discrete health care services that Cheesman purported to personally perform or directly supervise during the period when he also was purporting to serve as medical director at those clinics.

249.   Nor, for that matter, did Cheesman ever "[r]eview any patient referral contracts or agreements executed by" Path Medical-Central Tampa, Path Medical-Lakeland, Path Medical-North Tampa, Path Medical-South Tampa, and Path Medical-St. Pete, as required by the Clinic Act. See Fla. Stat. § 400.9935(1).

250.   Had Cheesman actually reviewed the collusive and unlawful cross-referral and self-referral agreements between and among the Path Medical clinics, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, Landau & Associates, and the other personal injury attorneys and law firms in the 411-PAIN "referral network", he would have noted that they were collusive, violated the Self-Referral Act, Patient Brokering Act, and Anti-Kickback Statute, and he would have put a stop to them.

251.   Rather, true authority over the provision of health care services through Path Medical-Central Tampa, Path Medical-Lakeland, Path Medical-North Tampa, Path Medical-South Tampa, and Path Medical-St. Pete, and the resulting billing – including the authority

that would, at a legitimate clinic, be vested in the medical director – was held at all times by Lewin, Permaul, Manion, Path Medical and, since October 2016, by Path Holdings.

252.    Similarly, true authority over the Defendants' collusive and unlawful cross-referral and self-referral arrangements – including the authority that would, at a legitimate clinic, be vested in the medical director – was held at all times by Lewin, Permaul, Manion, Path Medical  and, since October 2016, by Path Holdings.

253.    Lewin, Permaul, Manion, Path Medical, and Path Holdings used the façade of Cheesman's phony "appointment" as the ersatz "medical director" at Path Medical-Central Tampa, Path Medical-Lakeland, Path Medical-North Tampa, Path Medical-South Tampa, and Path Medical-St. Pete to do indirectly what they were forbidden from doing directly – namely: (i) to operate those clinics without a legitimate medical director; (ii) to engage in unlicensed medical decision-making with respect to the Insureds who sought treatment at those clinics; (iii) to engage in their collusive and unlawful cross-referral and self-referral scheme; and (iv) to use those clinics as vehicles to submit a massive amount of fraudulent PIP billing to GEICO and other insurers.

254.    In fact, the only thing that Cheesman did during his phony tenure as the fake "medical director" at Path Medical-Central Tampa, Path Medical-Lakeland, Path Medical-North Tampa, Path Medical-South Tampa, and Path Medical-St. Pete was to occasionally purport to perform the initial and follow-up examinations that were billed through those clinics to GEICO and other insurers, and to occasionally sign bills and treatment reports prepared by other personnel at those clinics.

255.     Cheesman unlawfully permitted Lewin, Permaul, Manion, Path Medical, and Path Holdings to dictate every aspect of the manner in which Insureds would be treated at Path Medical-Central Tampa, Path Medical-Lakeland, Path Medical-North Tampa, Path Medical-South Tampa, and Path Medical-St. Pete, and to dictate every aspect of the manner in which health care services at those clinics would be billed to GEICO and other insurers, because he sought to continue profiting from the Defendants' fraudulent scheme.

256.     Cheesman also unlawfully permitted Lewin, Permaul, Manion, Path Medical, and Path Holdings to dictate every aspect of the manner in which Insureds would be treated at Path Medical-Central Tampa, Path Medical-Lakeland, Path Medical-North Tampa, Path Medical-South Tampa, and Path Medical-St. Pete, and to dictate every aspect of the manner in which health care services at those clinics would be billed to GEICO and other insurers, because he was ineligible for legitimate medical employment as the result of his personal and professional history.

**2.     Marino's Service as the Phony Medical Director at Path Medical-OBT, Path Medical-Longwood, Path Medical-Kissimmee, Path Medical-East, and Path Medical-Deltona**

257.     Similarly, after consolidating Lewin's existing network of chiropractic offices into Path Medical, Lewin, Permaul, Manion, Path Medical, and Path Holdings retained Marino, a licensed physician who was willing to falsely pose as the legitimate medical director at the Path Medical clinics known as Path Medical-OBT, Path Medical-Longwood, Path Medical-Kissimmee, Path Medical-East, Path Medical-Deltona.

258.     Upon information and belief, Marino was receptive to the offer from Lewin, Permaul, Manion, Path Medical, and Path Holdings because his advanced age made it

difficult for him to obtain legitimate, sufficiently-remunerative employment as a physician.

259. For instance, Marino was in his mid to late 70s during the period – from 2015 to the present – when he simultaneously purported to serve as the "medical director" at five separate Path Medical clinics.

260. In order to circumvent Florida law and induce the Florida Agency for Health Care Administration to maintain Path Medical's licensure and to permit Path Medical to operate the clinics known as Path Medical-OBT, Path Medical-Longwood, Path Medical-Kissimmee, Path Medical-East, Path Medical-Deltona, Lewin, Permaul, Manion, Path Medical, and Path Holdings entered into a secret scheme with Marino.

261. Specifically, in exchange for a designated salary from Lewin, Permaul, Manion, Path Medical, and Path Holdings, Marino agreed to falsely represent, to the Florida Agency for Health Care Administration, to the Insureds who sought treatment at Path Medical, and to the insurers including GEICO that received PIP claims from Path Medical, that he was the true medical director at Path Medical-OBT, Path Medical-Longwood, Path Medical-Kissimmee, Path Medical-East, Path Medical-Deltona, and that he truly fulfilled the statutory requirements applicable to clinic medical directors at those clinics.

262. However, Marino never genuinely served as medical director at Path Medical-OBT, Path Medical-Longwood, Path Medical-Kissimmee, Path Medical-East, and Path Medical-Deltona. Instead, from the beginning of his association with those Path Medical clinics as their phony "medical director", Marino ceded all day-to-day decision-making and oversight regarding health care services at those clinics, and the resulting billing, to Lewin, Permaul, Manion, Path Medical and – since October 2016 – to Path Holdings.

263.     Marino never legitimately served as medical director at Path Medical-OBT, Path Medical-Longwood, Path Medical-Kissimmee, Path Medical-East, and Path Medical-Deltona, inasmuch as he never conducted systematic reviews of the billing from those clinics to ensure that the billing was not fraudulent or unlawful, and never even made any attempt to discover the unlawful charges submitted through those clinics, much less take any immediate corrective action. See Fla. Stat. § 400.9935(1).

264.     Indeed, given the fraudulent treatment and billing protocol described below – which was pervasive across all of the billing submitted to GEICO through Path Medical-OBT, Path Medical-Longwood, Path Medical-Kissimmee, Path Medical-East, and Path Medical-Deltona – there is simply no way that Marino could have legitimately conducted systematic reviews of the billing from those clinics to ensure that the billing was not fraudulent or unlawful.

265.     In fact, Marino – who was in his mid to late 70s at the time – could not possibly have legitimately fulfilled his statutory duty to conduct systematic reviews of the massive amount of billing submitted to GEICO through Path Medical-OBT, Path Medical-Longwood, Path Medical-Kissimmee, Path Medical-East, and Path Medical-Deltona.

266.     For example, between 2015 and the present, thousands of individual bills, containing tens of thousands of discrete charges, were submitted to GEICO through Path Medical-OBT, Path Medical-Longwood, Path Medical-Kissimmee, Path Medical-East, and Path Medical-Deltona.

267.     What is more, and as set forth above, GEICO is only one of the automobile insurance companies doing business in the Florida automobile insurance market.

268.    It is extremely improbable, to the point of impossibility, that the Defendants only submitted fraudulent billing to GEICO through Path Medical-OBT, Path Medical-Longwood, Path Medical-Kissimmee, Path Medical-East, and Path Medical-Deltona, and that the Defendants did not simultaneously bill other automobile insurers through those clinics.

269.    Accordingly, upon information and belief, the thousands of individual bills and tens of thousands of individual charges submitted to GEICO that Marino falsely purported to "systematically review" at Path Medical-OBT, Path Medical-Longwood, Path Medical-Kissimmee, Path Medical-East, and Path Medical-Deltona constituted only a fraction of the <u>total</u> number of bills that Marino falsely purported to "systematically review" during his phony tenure as "medical director" at those clinics.

270.    Not even a legitimate physician in the prime of his or her life could have "systematically reviewed" the massive amount of billing generated by Path Medical-OBT, Path Medical-Longwood, Path Medical-Kissimmee, Path Medical-East, and Path Medical-Deltona pursuant to the Defendants' pervasive violation of the Self-Referral Act, the Patient Brokering Act, the Anti-Kickback Statute, and the Chiropractor Advertising Laws.

271.    Nor, for that matter, did Marino ever "[r]eview any patient referral contracts or agreements executed by" Path Medical-OBT, Path Medical-Longwood, Path Medical-Kissimmee, Path Medical-East, and Path Medical-Deltona, as required by the Clinic Act. <u>See</u> Fla. Stat. § 400.9935(1).

272.    Had Marino actually reviewed the collusive and unlawful cross-referral and self-referral agreements between and among the Path Medical clinics, 411-PAIN, 411-IP,

411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, Landau & Associates, and the other personal injury attorneys and law firms in the 411-PAIN "referral network", he would have noted that they were collusive, violated the Self-Referral Act, Patient Brokering Act, and Anti-Kickback Statute, and he would have put a stop to them.

273.     Rather, true authority over the provision of health care services through Path Medical-OBT, Path Medical-Longwood, Path Medical-Kissimmee, Path Medical-East, and Path Medical-Deltona, and the resulting billing – including the authority that would, at a legitimate clinic, be vested in the medical director – was held at all times by Lewin, Permaul, Manion, Path Medical and – since October 2016 – by Path Holdings.

274.     Similarly, true authority over the Defendants' collusive and unlawful cross-referral and self-referral arrangements – including the authority that would, at a legitimate clinic, be vested in the medical director – was held at all times by Lewin, Permaul, Manion, Path Medical  and – since October 2016 – by Path Holdings.

275.     Lewin, Permaul, Manion, Path Medical, and Path Holdings used the façade of Marino's phony "appointment" as the ersatz "medical director" at Path Medical-OBT, Path Medical-Longwood, Path Medical-Kissimmee, Path Medical-East, and Path Medical-Deltona to do indirectly what they were forbidden from doing directly – namely: (i) to operate those clinics without a legitimate medical director; (ii) to engage in unlicensed medical decision-making with respect to the Insureds who sought treatment at those clinics; (iii) to engage in their collusive and unlawful cross-referral and self-referral scheme; and (iv) to use those clinics as vehicles to submit a massive amount of fraudulent PIP billing to GEICO and other insurers.

276.    In fact, the only thing that Marino did during his phony tenure as the fake "medical director" at Path Medical-OBT, Path Medical-Longwood, Path Medical-Kissimmee, Path Medical-East, and Path Medical-Deltona was to occasionally purport to perform the initial and follow-up examinations that were billed through those clinics to GEICO and other insurers, and to occasionally sign bills and treatment reports prepared by other personnel at those clinics.

277.    Marino unlawfully permitted Lewin, Permaul, Manion, Path Medical, and Path Holdings to dictate every aspect of the manner in which Insureds would be treated at Path Medical-OBT, Path Medical-Longwood, Path Medical-Kissimmee, Path Medical-East, Path Medical-Deltona, and to dictate every aspect of the manner in which health care services at those clinics would be billed to GEICO and other insurers, because he sought to continue profiting from the Defendants' fraudulent scheme.

**3.     Qian's Service as the Phony Medical Director at Path Medical-Aventura, Path Medical-Broward, Path Medical-Pines, and Path Medical-Plantation**

278.    Similarly, after consolidating Lewin's existing network of chiropractic offices into Path Medical, Lewin, Permaul, Manion, Path Medical, and Path Holdings retained Qian, a licensed physician who was willing to falsely pose as the legitimate medical director at the Path Medical clinics known as Path Medical-Aventura, Path Medical-Broward, Path Medical-Pines, and Path Medical-Plantation.

279.    Upon information and belief, Qian was receptive to the offer from Lewin, Permaul, Manion, Path Medical, and Path Holdings because his employment history made it extremely difficult for him to obtain legitimate, sufficiently-remunerative employment as a physician.

280.    For instance, and as set forth above, Qian's staff privileges had been revoked at the VA Hospital after review boards empaneled by the VA Hospital determined – among other things – that Qian engaged in "inappropriate copying and pasting of notes in the Computerized Patient Record System", failed to "recognize, document, and treat abnormal lab issues", engaged in "serious deviations from the standard of care", "a pattern of misrepresentation of the medical record", and "demonstrated a sustained pattern of unacceptable clinical practice and professional conduct that was not remedied despite repeated episodes of formal counseling."

281.    Then, as set forth above, Qian commenced a federal lawsuit against Eric Shinseki in his capacity as Secretary of the Department of Veteran's Affairs, which was dismissed on summary judgment, but not before Qian put the facts of his employment history into the public record, rendering him all-but-unemployable as a legitimate physician.

282.    In order to circumvent Florida law and induce the Florida Agency for Health Care Administration to maintain Path Medical's licensure and to permit Path Medical to operate the clinics known as Path Medical-Aventura, Path Medical-Broward, Path Medical-Pines, and Path Medical-Plantation, Lewin, Permaul, Manion, Path Medical, and Path Holdings entered into a secret scheme with Qian.

283.    Specifically, in exchange for a designated salary from Lewin, Permaul, Manion, Path Medical, and Path Holdings, Qian agreed to falsely represent, to the Florida Agency for Health Care Administration, to the Insureds who sought treatment at Path Medical, and to the insurers including GEICO that received PIP claims from Path Medical, that he was the true medical director at Path Medical-Aventura, Path Medical-Broward, Path

Medical-Pines, and Path Medical-Plantation, and that he truly fulfilled the statutory requirements applicable to clinic medical directors at those clinics.

284.    However, Qian never genuinely served as medical director at Path Medical-Aventura, Path Medical-Broward, Path Medical-Pines, and Path Medical-Plantation. Instead, from the beginning of his association with those Path Medical clinics as their phony "medical director", Qian ceded all day-to-day decision-making and oversight regarding health care services at those clinics, and the resulting billing, to Lewin, Permaul, Manion, Path Medical and – since October 2016 – to Path Holdings.

285.    Qian never legitimately served as medical director at Path Medical-Aventura, Path Medical-Broward, Path Medical-Pines, and Path Medical-Plantation, inasmuch as he never conducted systematic reviews of the billing from those clinics to ensure that the billing was not fraudulent or unlawful, and never even made any attempt to discover the unlawful charges submitted through those clinics, much less take any immediate corrective action. See Fla. Stat. § 400.9935(1).

286.    Indeed, given the fraudulent treatment and billing protocol described below – which was pervasive across all of the billing submitted to GEICO through Path Medical-Aventura, Path Medical-Broward, Path Medical-Pines, and Path Medical-Plantation – there is simply no way that Qian could have legitimately conducted systematic reviews of the billing from those clinics to ensure that the billing was not fraudulent or unlawful.

287.    In fact, Qian could not possibly have legitimately fulfilled his statutory duty to conduct systematic reviews of the massive amount of billing submitted to GEICO through

Path Medical-Aventura, Path Medical-Broward, Path Medical-Pines, and Path Medical-Plantation.

288.   For example, between 2015 and the present, thousands of individual bills, containing tens of thousands of discrete charges, were submitted to GEICO through Path Medical-Aventura, Path Medical-Broward, Path Medical-Pines, and Path Medical-Plantation.

289.   What is more, GEICO is only one of the automobile insurance companies doing business in the Florida automobile insurance market.

290.   It is extremely improbable, to the point of impossibility, that the Defendants only submitted fraudulent billing to GEICO through Path Medical-Aventura, Path Medical-Broward, Path Medical-Pines, and Path Medical-Plantation, and that the Defendants did not simultaneously bill other automobile insurers through those clinics.

291.   Accordingly, upon information and belief, the thousands of individual bills and tens of thousands of individual charges submitted to GEICO that Qian falsely purported to "systematically review" at Path Medical-Aventura, Path Medical-Broward, Path Medical-Pines, and Path Medical-Plantation constituted only a fraction of the total number of bills that Cheesman falsely purported to "systematically review" during his phony tenure as "medical director" at those clinics.

292.   Not even a legitimate physician could have "systematically reviewed" the massive amount of billing generated by Path Medical-Aventura, Path Medical-Broward, Path Medical-Pines, and Path Medical-Plantation pursuant to the Defendants' pervasive violation of the Self-Referral Act, the Patient Brokering Act, the Anti-Kickback Statute, and the Chiropractor Advertising Laws.

293.   What is more, even as Qian was falsely purporting to serve as "medical director" at four separate Path Medical clinics, he also was simultaneously purporting to personally perform – or at least directly supervise – a massive amount of health care services that were billed to GEICO.

294.   For example, between 2015 and the present alone, Qian purported to personally perform – or at least directly supervise – more than $3,150,000.00 worth of purported health care services that were billed to GEICO through various of the Path Medical clinics, as well as at least seven other health care practices.

295.   It is improbable, to the point of impossibility, that Qian actually could have fulfilled his statutory duty as medical director at four separate Path Medical clinics, while simultaneously purporting to personally perform – or at least directly supervise – such a massive number of discrete health care services.

296.   What is more – and as set forth above – GEICO is only one of the many insurance companies in the Florida automobile insurance market.

297.   Accordingly, the massive number of discrete health care services that Qian purported to personally perform or directly supervise during the period when he also was purporting to serve as medical director at four separate Path Medical clinics constituted only a fraction of the total number of discrete health care services that Qian purported to personally perform or directly supervise during the period when he also was purporting to serve as medical director at those clinics.

298.   Nor, for that matter, did Qian ever "[r]eview any patient referral contracts or agreements executed by" Path Medical-Aventura, Path Medical-Broward, Path Medical-

82

Pines, and Path Medical-Plantation, as required by the Clinic Act. See Fla. Stat. § 400.9935(1).

299.    Had Qian actually reviewed the collusive and unlawful cross-referral and self-referral agreements between and among the Path Medical clinics, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, Landau & Associates, and the other personal injury attorneys and law firms in the 411-PAIN "referral network", he would have noted that they were collusive, violated the Self-Referral Act, Patient Brokering Act, and Anti-Kickback Statute, and he would have put a stop to them.

300.    Rather, true authority over the provision of health care services through Path Medical-Aventura, Path Medical-Broward, Path Medical-Pines, and Path Medical-Plantation, and the resulting billing – including the authority that would, at a legitimate clinic, be vested in the medical director – was held at all times by Lewin, Permaul, Manion, Path Medical and, since October 2016, by Path Holdings.

301.    Similarly, true authority over the Defendants' collusive and unlawful cross-referral and self-referral arrangements – including the authority that would, at a legitimate clinic, be vested in the medical director – was held at all times by Lewin, Permaul, Manion, Path Medical  and, since October 2016, by Path Holdings.

302.    Lewin, Permaul, Manion, Path Medical, and Path Holdings used the façade of Qian's phony "appointment" as the ersatz "medical director" at Path Medical-Aventura, Path Medical-Broward, Path Medical-Pines, and Path Medical-Plantation to do indirectly what they were forbidden from doing directly – namely: (i) to operate those clinics without a legitimate medical director; (ii) to engage in unlicensed medical decision-making with

respect to the Insureds who sought treatment at those clinics; (iii) to engage in their collusive and unlawful cross-referral and self-referral scheme; and (iv) to use those clinics as vehicles to submit a massive amount of fraudulent PIP billing to GEICO and other insurers.

303.    In fact, the only thing that Qian did during his phony tenure as the fake "medical director" at Path Medical-Aventura, Path Medical-Broward, Path Medical-Pines, and Path Medical-Plantation was to occasionally purport to perform the initial and follow-up examinations that were billed through those clinics to GEICO and other insurers, and to occasionally sign bills and treatment reports prepared by other personnel at those clinics.

304.    Qian unlawfully permitted Lewin, Permaul, Manion, Path Medical, and Path Holdings to dictate every aspect of the manner in which Insureds would be treated at Path Medical-Aventura, Path Medical-Broward, Path Medical-Pines, and Path Medical-Plantation, and to dictate every aspect of the manner in which health care services at those clinics would be billed to GEICO and other insurers, because he sought to continue profiting from the Defendants' fraudulent scheme.

305.    Qian also unlawfully permitted Lewin, Permaul, Manion, Path Medical, and Path Holdings to dictate every aspect of the manner in which Insureds would be treated at Path Medical-Aventura, Path Medical-Broward, Path Medical-Pines, and Path Medical-Plantation, and to dictate every aspect of the manner in which health care services at those clinics would be billed to GEICO and other insurers, because he was ineligible for legitimate medical employment as the result of his employment history.

4.   **Wilensky's Service as the Phony Medical Director at Path Medical-North Miami/North Miami Beach, Path Medical-Boca, Path Medical-Coral Springs Margate, Path Medical-Dade, and Path Medical-Hollywood**

306.   Likewise, after consolidating Lewin's existing network of chiropractic offices into Path Medical, Lewin, Permaul, Manion, Path Medical, and Path Holdings retained Wilensky, a licensed physician who was willing to falsely pose as the legitimate medical director at the Path Medical clinics known as Path Medical-North Miami/North Miami Beach, Path Medical-Boca, Path Medical-Coral Springs Margate, Path Medical-Dade, and Path Medical-Hollywood.

307.   Upon information and belief, Wilensky was receptive to the offer from Lewin, Permaul, Manion, Path Medical, and Path Holdings because his advanced age made it difficult for him to obtain legitimate, sufficiently-remunerative employment as a physician.

308.   For instance, Wilensky was in his late 60s to early 70s during the period – from 2015 to the present – when he simultaneously purported to serve as the "medical director" at five separate Path Medical clinics.

309.   In order to circumvent Florida law and induce the Florida Agency for Health Care Administration to maintain Path Medical's licensure and to permit Path Medical to operate the clinics known as Path Medical-North Miami/North Miami Beach, Path Medical-Boca, Path Medical-Coral Springs Margate, Path Medical-Dade, and Path Medical-Hollywood, Lewin, Permaul, Manion, Path Medical, and Path Holdings entered into a secret scheme with Wilensky.

310.   Specifically, in exchange for a designated salary from Lewin, Permaul, Manion, Path Medical, and Path Holdings, Wilensky agreed to falsely represent, to the

Florida Agency for Health Care Administration, to the Insureds who sought treatment at Path Medical, and to the insurers including GEICO that received PIP claims from Path Medical, that he was the true medical director at Path Medical-North Miami/North Miami Beach, Path Medical-Boca, Path Medical-Coral Springs Margate, Path Medical-Dade, and Path Medical-Hollywood, and that he truly fulfilled the statutory requirements applicable to clinic medical directors at those clinics.

311.    However, Wilensky never genuinely served as medical director at Path Medical-North Miami/North Miami Beach, Path Medical-Boca, Path Medical-Coral Springs Margate, Path Medical-Dade, and Path Medical-Hollywood. Instead, from the beginning of his association with those Path Medical clinics as their phony "medical director", Wilensky ceded all day-to-day decision-making and oversight regarding health care services at those clinics, and the resulting billing, to Lewin, Permaul, Manion, Path Medical and – since October 2016 – to Path Holdings.

312.    Wilensky never legitimately served as medical director at Path Medical-North Miami/North Miami Beach, Path Medical-Boca, Path Medical-Coral Springs Margate, Path Medical-Dade, and Path Medical-Hollywood, inasmuch as he never conducted systematic reviews of the billing from those clinics to ensure that the billing was not fraudulent or unlawful, and never even made any attempt to discover the unlawful charges submitted through those clinics, much less take any immediate corrective action. See Fla. Stat. § 400.9935(1).

313.    Indeed, given the fraudulent treatment and billing protocol described below – which was pervasive across all of the billing submitted to GEICO through Path Medical-

North Miami/North Miami Beach, Path Medical-Boca, Path Medical-Coral Springs Margate, Path Medical-Dade, and Path Medical-Hollywood – there is simply no way that Wilensky could have legitimately conducted systematic reviews of the billing from those clinics to ensure that the billing was not fraudulent or unlawful.

314.    In fact, Wilensky – who was in his late 60s and early 70s at the time – could not possibly have legitimately fulfilled his statutory duty to conduct systematic reviews of the massive amount of billing submitted to GEICO through Path Medical-North Miami/North Miami Beach, Path Medical-Boca, Path Medical-Coral Springs Margate, Path Medical-Dade, and Path Medical-Hollywood.

315.    For example, between 2015 and the present, thousands of individual bills, containing tens of thousands of discrete charges, were submitted to GEICO through Path Medical-North Miami/North Miami Beach, Path Medical-Boca, Path Medical-Coral Springs Margate, Path Medical-Dade, and Path Medical-Hollywood.

316.    What is more, GEICO is only one of the automobile insurance companies doing business in the Florida automobile insurance market.

317.    It is extremely improbable, to the point of impossibility, that the Defendants only submitted fraudulent billing to GEICO through Path Medical-North Miami/North Miami Beach, Path Medical-Boca, Path Medical-Coral Springs Margate, Path Medical-Dade, and Path Medical-Hollywood, and that the Defendants did not simultaneously bill other automobile insurers through those clinics.

318.    Accordingly, upon information and belief, the thousands of individual bills and tens of thousands of individual charges submitted to GEICO that Wilensky falsely

purported to "systematically review" at Path Medical-North Miami/North Miami Beach, Path Medical-Boca, Path Medical-Coral Springs Margate, Path Medical-Dade, and Path Medical-Hollywood constituted only a fraction of the total number of bills that Wilensky falsely purported to "systematically review" during his phony tenure as "medical director" at those clinics.

319.   Not even a legitimate physician in the prime of his or her life could have "systematically reviewed" the massive amount of billing generated by Path Medical-North Miami/North Miami Beach, Path Medical-Boca, Path Medical-Coral Springs Margate, Path Medical-Dade, and Path Medical-Hollywood pursuant to the Defendants' pervasive violation of the Self-Referral Act, the Patient Brokering Act, the Anti-Kickback Statute, and the Chiropractor Advertising Laws.

320.   What is more, even as Wilensky was falsely purporting to serve as "medical director" at five separate Path Medical clinics, at his advanced age, he also was simultaneously purporting to personally perform – or at least directly supervise – a massive amount of health care services that were billed to GEICO.

321.   For example, between 2015 and the present alone, Wilensky purported to personally perform – or at least directly supervise – more than $900,000.00 worth of purported health care services that were billed to GEICO through various of the Path Medical clinics, as well as other health care practices.

322.   It is improbable, to the point of impossibility, that Wilensky actually could have fulfilled his statutory duty as medical director at five separate Path Medical clinics,

while simultaneously purporting to personally perform – or at least directly supervise – such a massive number of discrete health care services.

323.    What is more – and as set forth above – GEICO is only one of the many insurance companies in the Florida automobile insurance market.

324.    Accordingly, the massive number of discrete health care services that Wilensky purported to personally perform or directly supervise during the period when he also was purporting to serve as medical director at five separate Path Medical clinics constituted only a fraction of the total number of discrete health care services that Wilensky purported to personally perform or directly supervise during the period when he also was purporting to serve as medical director at those clinics.

325.    Nor, for that matter, did Wilensky ever "[r]eview any patient referral contracts or agreements executed by" Path Medical-North Miami/North Miami Beach, Path Medical-Boca, Path Medical-Coral Springs Margate, Path Medical-Dade, and Path Medical-Hollywood, as required by the Clinic Act. See Fla. Stat. § 400.9935(1).

326.    Had Wilensky actually reviewed the collusive and unlawful cross-referral and self-referral agreements between and among the Path Medical clinics, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, Landau & Associates, and the other personal injury attorneys and law firms in the 411-PAIN "referral network", he would have noted that they were collusive, violated the Self-Referral Act, Patient Brokering Act, and Anti-Kickback Statute, and he would have put a stop to them.

327.    Rather, true authority over the provision of health care services through Path Medical-North Miami/North Miami Beach, Path Medical-Boca, Path Medical-Coral Springs

Margate, Path Medical-Dade, and Path Medical-Hollywood, and the resulting billing – including the authority that would, at a legitimate clinic, be vested in the medical director – was held at all times by Lewin, Permaul, Manion, Path Medical and, since October 2016, by Path Holdings.

328.    Similarly, true authority over the Defendants' collusive and unlawful cross-referral and self-referral arrangements – including the authority that would, at a legitimate clinic, be vested in the medical director – was held at all times by Lewin, Permaul, Manion, Path Medical  and, since October 2016, by Path Holdings.

329.    Lewin, Permaul, Manion, Path Medical, and Path Holdings used the façade of Wilensky's phony "appointment" as the ersatz "medical director" at Path Medical-North Miami/North Miami Beach, Path Medical-Boca, Path Medical-Coral Springs Margate, Path Medical-Dade, and Path Medical-Hollywood to do indirectly what they were forbidden from doing directly – namely: (i) to operate those clinics without a legitimate medical director; (ii) to engage in unlicensed medical decision-making with respect to the Insureds who sought treatment at those clinics; (iii) to engage in their collusive and unlawful cross-referral and self-referral scheme; and (iv) to use those clinics as vehicles to submit a massive amount of fraudulent PIP billing to GEICO and other insurers.

330.    In fact, the only thing that Wilensky did during his phony tenure as the fake "medical director" at Path Medical-North Miami/North Miami Beach, Path Medical-Boca, Path Medical-Coral Springs Margate, Path Medical-Dade, and Path Medical-Hollywood was to occasionally purport to perform the initial and follow-up examinations that were billed

through those clinics to GEICO and other insurers, and to occasionally sign bills and treatment reports prepared by other personnel at those clinics.

331.    Wilensky unlawfully permitted Lewin, Permaul, Manion, Path Medical, and Path Holdings to dictate every aspect of the manner in which Insureds would be treated at Path Medical-North Miami/North Miami Beach, Path Medical-Boca, Path Medical-Coral Springs Margate, Path Medical-Dade, and Path Medical-Hollywood, and to dictate every aspect of the manner in which health care services at those clinics would be billed to GEICO and other insurers, because he sought to continue profiting from the Defendants' fraudulent scheme.

332.    In the claims identified in Exhibit "1", Lewin, Permaul, Manion, Path Medical, and Path Holdings routinely falsely represented that the underlying health care services were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable because they were provided – to the extent that they were provided at all – through the Path Medical clinics, which were operated without legitimate medical directors in violation of the Clinic Act.

**F.      The Fraudulent Treatment and Billing Protocol at the Path Medical Clinics**

333.    In keeping with the fact that the Path Medical clinics were operated without legitimate medical directors, Lewin, Permaul, Manion, Path Medical, Path Holdings, Cheesman, Marino, Wilensky, and Qian used the clinics as vehicles to submit a massive amount of fraudulent PIP billing to GEICO and other insurers.

334.    The billing not only misrepresented the Path Medical clinics' compliance with the Clinic Act, Self-Referral Act, Patient Brokering Act, Anti-Kickback Statute, and

Chiropractor Advertising Laws, but also misrepresented the medical necessity of the underlying health care services, and whether the underlying health care services actually were performed in the first instance.

335.   The ultimate goal of the Defendants' fraudulent scheme not only was to generate as much fraudulent PIP billing as possible through the Path Medical clinics, but also to falsely depict the "patients" who treated at the Path Medical clinics as seriously injured, and thereby create a false basis for personal injury lawsuits filed by the personal injury attorneys – including Kanner, Pintaluga, and Kanner & Pintaluga – who referred insureds to the Path Medical clinics pursuant to the Defendants' collusive and unlawful cross-referral scheme.

336.   However, in the claims identified in Exhibit "1", virtually all of the Insureds who purported to treat at the Path Medical clinics were involved in minor, low-speed, low-impact "fender-bender" accidents, to the extent that they were involved in any actual accidents at all.

337.   Concomitantly, in the claims identified in Exhibit "1", almost none of the Insureds to whom Lewin, Permaul, Manion, Path Medical, Path Holdings, Cheesman, Marino, Wilensky, and Qian purported to provide treatment at the Path Medical clinics suffered from any significant injuries or health problems as a result of the relatively minor accidents they experienced or purported to experience.

338.   Even so, in the claims identified in Exhibit "1", Lewin, Permaul, Manion, Path Medical, Path Holdings, and – depending on the Path Medical clinic at issue – either Cheesman, Marino, Wilensky, or Qian, purported to subject virtually every Insured to a

medically unnecessary course of "treatment" that was provided pursuant to a pre-determined, fraudulent protocol designed to maximize the billing that they could submit to insurers, including GEICO, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to it.

339.    Lewin, Permaul, Manion, Path Medical, Path Holdings, Cheesman, Marino, Wilensky, and Qian purported to provide their pre-determined fraudulent treatment protocol to the Insureds in the claims identified in Exhibit "1" without regard for the Insureds' individual symptoms or presentment, or – in most cases – the total absence of any actual medical problems arising from any actual automobile accidents.

340.    Each step in this fraudulent treatment protocol was designed to falsely reinforce the rationale for the previous step and provide a false justification for the subsequent step, and thereby permit the Defendants to generate and falsely justify the maximum amount of fraudulent PIP billing for each Insured.

341.    What is more, each step in this fraudulent treatment protocol was designed to create a false basis for personal injury lawsuits filed by the personal injury attorneys – including Kanner, Pintaluga, and Kanner & Pintaluga – who referred insureds to the Path Medical clinics pursuant to the Defendants' collusive and unlawful cross-referral scheme.

342.    No legitimate physician, chiropractor, clinic, or other health care provider would permit the fraudulent treatment and billing protocol described below to proceed under his, her, or its auspices.

343.    Lewin, Permaul, Manion, Path Medical, Path Holdings, Cheesman, Marino, Wilensky, and Qian permitted the fraudulent treatment and billing protocol described below

to proceed under their auspices because: (i) the Path Medical clinics were, at all relevant times, operated in violation of the Clinic Act, without legitimate medical directors who legitimately fulfilled their statutory duties as medical directors; (ii) all decision-making with respect to medical care and billing at the Path Medical clinics was, at all relevant times, vested entirely with Lewin, Permaul, Manion, Path Medical, and Path Holdings in violation of Florida law; and (iii) the Defendants sought to profit from the fraudulent billing they submitted to GEICO and other insurers.

**1.    The Fraudulent Charges for Initial Examinations**

344.    As an initial step in the fraudulent treatment and billing protocol at the Path Medical clinics, Lewin, Permaul, Manion, Path Medical, Path Holdings and – depending on the Path Medical clinic at issue – either Wilensky, Cheesman, Qian, or Marino, purported to provide each of the Insureds in the claims identified in Exhibit "1" with a putative initial examination.

345.    The initial examinations in the claims identified in Exhibit "1" were purportedly performed by physicians and chiropractors at the Path Medical clinics under the purported supervision of either Wilensky, Cheesman, Qian, or Marino.

346.    As set forth in Exhibit "1", Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino then virtually always billed the purported initial examinations to GEICO under CPT code 99203, resulting in charges of either $250.00 or $260.00 for each initial examination that they purported to provide.

347.    In the claims for initial examinations identified in Exhibit "1", the charges for the initial examinations were fraudulent in that they misrepresented Path Medical's eligibility to collect PIP Benefits in the first instance.

348.    In fact, and as set forth above, Path Medical never was eligible to collect PIP Benefits, inasmuch as it was operated in violation of the licensing requirements set forth in the Clinic Act, as well as the Self-Referral Act, the Patient Brokering Act, the Anti-Kickback Statute, and the Chiropractor Advertising Laws.

349.    As set forth below, Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino's charges for the initial examinations identified in Exhibit "1" also were fraudulent in that they misrepresented the nature and extent of the initial examinations.

**(i)      Misrepresentations Regarding the Severity of the Insureds' Presenting Problems**

350.    As set forth above, the No-Fault Law's billing requirements provide that all PIP billing must – among other things – comply with the guidelines promulgated by the American Medical Association ("AMA") in connection with the use of current procedural terminology, or CPT, codes. See Fla. Stat. § 627.736.

351.    The primary guidelines promulgated by the AMA for the use of CPT codes are contained in the AMA's CPT Assistant.

352.    Pursuant to the CPT Assistant, the use of CPT code 99203 to bill for an initial patient examination represents that the Insured presented with problems of moderate severity.

353.    The CPT Assistant provides various clinical examples of the types of presenting problems that qualify as moderately severe, and thereby justify the use of CPT code 99203 to bill for an initial patient examination.

354.    For example, the CPT Assistant provides the following clinical examples of presenting problems that might support the use of CPT code 99203 to bill for an initial patient examination:

(i)     Office visit for initial evaluation of a 48-year-old man with recurrent low back pain radiating to the leg. (General Surgery)

(ii)    Initial office evaluation of 49-year-old male with nasal obstruction. Detailed exam with topical anesthesia. (Plastic Surgery)

(iii)   Initial office evaluation for diagnosis and management of painless gross hematuria in new patient, without cystoscopy. (Internal Medicine)

(iv)    Initial office visit for evaluation of 13-year-old female with progressive scoliosis. (Physical Medicine and Rehabilitation)

(v)     Initial office visit with couple for counseling concerning voluntary vasectomy for sterility. Spent 30 minutes discussing procedure, risks and benefits, and answering questions. (Urology)

355.    Thus, pursuant to the CPT Assistant, the moderately severe presenting problems that could support the use of CPT code 99203 to bill for an initial patient examination typically are either chronic and relatively serious problems, acute problems requiring immediate invasive treatment, or issues that legitimately require physician counseling.

356.    By contrast, to the extent that the Insureds in the claims identified in Exhibit "1" had any presenting problems at all as the result of their minor automobile accidents, the problems virtually always were low severity soft tissue injuries such as sprains and strains.

These garden-variety sprains and strains – to the extent that the Insureds suffered from them at all – were neither chronic nor severe, did not require any immediate invasive treatment, or any invasive treatment at all, and did not require any physician counseling.

357.    For instance, and in keeping with the fact that the Insureds in the claims identified in Exhibit "1" either had no presenting problems at all as the result of their minor automobile accidents, or else low severity soft tissue injuries such as sprains and strains, in the vast majority of the claims identified in Exhibit "1" the Insureds did not seek treatment at any hospital as the result of their accidents.

358.    Furthermore, in the vast majority of the claims identified in Exhibit "1", contemporaneous police reports indicated that the underlying accidents involved low-speed, low-impact collisions, that the Insureds' vehicles were drivable following the accidents, and that no one was injured in the accidents.

359.    Even so, in the claims for initial examinations identified in Exhibit "1", Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino routinely billed for their putative initial examinations using CPT code 99203, and thereby falsely represented that the Insureds presented with problems of moderate severity.

360.    For example:

(i)     On February 27, 2014, an Insured named RG was involved in a minor automobile accident in a parking lot. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the airbags in RG's vehicle did not deploy, that the damage to RG's vehicle was minor, that there was no damage to the other vehicle, that RG's vehicle was drivable following the accident, that RG drove the vehicle following the accident, and that RG was not injured in the accident. In keeping with the fact that RG was not seriously injured in the minor accident, RG did not visit any hospital following the accident. To the extent that RG suffered any health problems at all as the result of her minor accident, they were of low severity.

Even so, following a purported initial examination of RG at Path Medical-Hollywood on March 10, 2017, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that RG presented with moderately severe health problems as the result of her minor accident.

(ii)    On May 12, 2014, an Insured named JE was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed collision, that the airbags in JE's vehicle did not deploy, and that no one was injured in the accident. In keeping with the fact that JE was not seriously injured in the minor accident, JE did not visit any hospital following the accident. To the extent that JE suffered any health problems at all as the result of his minor accident, they were of low severity. Even so, following a purported initial examination of JE at Path Medical-Hollywood on May 13, 2014, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that JE presented with moderately severe health problems as the result of his minor accident.

(iii)   On May 13, 2014, an Insured named LR was involved in a minor automobile accident. The contemporaneous police report indicated that the airbags in LR's vehicle did not deploy, and that no one was injured in the accident. In keeping with the fact that LR was not seriously injured in the minor accident, LR did not visit any hospital following the accident. To the extent that LR suffered any health problems at all as the result of her minor accident, they were of low severity. Even so, following a purported initial examination of LR at Path Medical-Hollywood on May 17, 2014, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that LR presented with moderately severe health problems as the result of his minor accident.

(iv)    On May 29, 2014, an Insured named VP was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the damage to VP's vehicle was minor, that the airbags in VP's vehicle did not deploy, that VP's vehicle was drivable following the accident, that VP drove the vehicle following the accident, and that no one was injured in the accident. To the extent that VP suffered any health problems at all as the result of her minor accident, they were of low severity. Even so, following a purported initial examination of VP at Path Medical-Hollywood on June 6, 2014, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that VP presented with moderately severe health problems as the result of his minor accident.

(v)     On August 11, 2014, an Insured named CB was involved in a minor automobile accident. In keeping with the fact that CB was not seriously injured in the minor accident, CB did not visit any hospital following the accident. To the extent that CB suffered any health problems at all as the result of her minor accident, they were of low severity. Even so, following a purported initial examination of CB at Path Medical-Dade on August 22, 2014, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that CB presented with moderately severe health problems as the result of her minor accident.

(vi)    On September 9, 2014, an Insured named NZ was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the damage to NZ's vehicle was minor, that the airbags in NZ's vehicle did not deploy, that NZ's vehicle was drivable following the accident, that NZ drove the vehicle following the accident, and that no one was injured in the accident. In keeping with the fact that NZ was not seriously injured in the minor accident, NZ did not visit any hospital following the accident. To the extent that NZ suffered any health problems at all as the result of her minor accident, they were of low severity. Even so, following a purported initial examination of NZ at Path Medical-Broward on September 9, 2014, Path Medical, Lewin, Permaul, Manion, and Qian billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that NZ presented with moderately severe health problems as the result of her minor accident.

(vii)   On September 20, 2014, an Insured named EM was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the airbags in EM's vehicle did not deploy, that EM's vehicle was drivable following the accident, that EM drove the vehicle following the accident, and that no one was injured in the accident. In keeping with the fact that EM was not seriously injured in the minor accident, EM did not visit any hospital following the accident. To the extent that EM suffered any health problems at all as the result of his minor accident, they were of low severity. Even so, following a purported initial examination of EM at Path Medical-Dade on September 22, 2014, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that EM presented with moderately severe health problems as the result of his minor accident.

(viii)  On November 18, 2014, an Insured named CS was involved in a minor automobile accident. The contemporaneous police report indicated that the airbags in CS's vehicle did not deploy and that no one was injured in the

accident. In keeping with the fact that CS was not seriously injured in the minor accident, CS did not visit any hospital following the accident. To the extent that CS suffered any health problems at all as the result of her minor accident, they were of low severity. Even so, following a purported initial examination of CS at Path Medical-Wilensky on November 26, 2014, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that CS presented with moderately severe health problems as the result of his minor accident.

(ix)   On December 18, 2014, an Insured named TC was involved in a minor automobile accident. In keeping with the fact that TC was not seriously injured in the minor accident, TC did not visit any hospital following the accident. To the extent that TC suffered any health problems at all as the result of her minor accident, they were of low severity. Even so, following a purported initial examination of TC at Path Medical-Broward on December 22, 2014, Path Medical, Lewin, Permaul, Manion, and Qian billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that TC presented with moderately severe health problems as the result of his minor accident.

(x)   On May 3, 2015, an Insured named CP was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed collision, that the airbags in CP's vehicle did not deploy, and that no one was injured in the accident. In keeping with the fact that CP was not seriously injured in the minor accident, CP did not visit any hospital following the accident. To the extent that CP suffered any health problems at all as the result of her minor accident, they were of low severity. Even so, following a purported initial examination of CP at Path Medical-Pines on May 4, 2015, Path Medical, Lewin, Permaul, Manion, and Qian billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that CP presented with moderately severe health problems as the result of her minor accident.

(xi)   On May 3, 2015, an Insured named EM was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed collision, that the airbags in EM's vehicle did not deploy, and that no one was injured in the accident. In keeping with the fact that EM was not seriously injured in the minor accident, EM did not visit any hospital following the accident. To the extent that EM suffered any health problems at all as the result of her minor accident, they were of low severity. Even so, following a purported initial examination of EM at Path Medical-Pines on May 4, 2015, Path Medical, Lewin, Permaul, Manion, and Qian billed GEICO for the initial examination using CPT code 99203, and thereby falsely

represented that EM presented with moderately severe health problems as the result of her minor accident.

(xii)   On June 13, 2015, an Insured named SD was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-impact collision, that the airbags in SD's vehicle did not deploy, that the damage to SD's vehicle was minor, that SD's vehicle was drivable following the accident, that SD drove her vehicle following the accident, and that no one was injured in the accident. In keeping with the fact that SD was not seriously injured in the minor accident, SD did not visit any hospital following the accident. To the extent that SD suffered any health problems at all as the result of her minor accident, they were of low severity. Even so, following a purported initial examination of SD at Path Medical-Coral Springs Margate on August 14, 2015, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that SD presented with moderately severe health problems as the result of her minor accident.

(xiii)  On December 22, 2015, an Insured named KS was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-impact collision, that the airbags in KS's vehicle did not deploy, and that no one was injured in the accident. In keeping with the fact that KS was not seriously injured in the minor accident, KS did not visit any hospital following the accident. To the extent that KS suffered any health problems at all as the result of her minor accident, they were of low severity. Even so, following a purported initial examination of KS at Path Medical-Hollywood on December 28, 2015, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that KS presented with moderately severe health problems as the result of her minor accident.

(xiv)   On February 25, 2016, an Insured named IV was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the airbags in IV's vehicle did not deploy, that IV's vehicle was drivable following the accident, that IV drove the vehicle following the accident, that the damage to IV's vehicle was minor, and that no one was injured in the accident. In keeping with the fact that IV was not seriously injured in the minor accident, IV did not visit any hospital following the accident. To the extent that IV suffered any health problems at all as the result of her minor accident, they were of low severity. Even so, following a purported initial examination of IV at Path Medical-Hollywood on February 29, 2016, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that IV presented with

moderately severe health problems as the result of her minor accident.

(xv)     On February 25, 2016, an Insured named AV was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the airbags in AV's vehicle did not deploy, that AV's vehicle was drivable following the accident, that the damage to AV's vehicle was minor, and that no one was injured in the accident. In keeping with the fact that AV was not seriously injured in the minor accident, AV did not visit any hospital following the accident. To the extent that AV suffered any health problems at all as the result of her minor accident, they were of low severity. Even so, following a purported initial examination of AV at Path Medical-Hollywood on February 29, 2016, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that AV presented with moderately severe health problems as the result of her minor accident.

(xvi)    On February 27, 2016, an Insured named JN was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-impact collision, that the airbags in JN's vehicle did not deploy, that JN's vehicle was drivable following the accident, that JN drove the vehicle following the accident, that the damage to JN's vehicle was minor, and that no one was injured in the accident. In keeping with the fact that JN was not seriously injured in the minor accident, JN did not visit any hospital following the accident. To the extent that JN suffered any health problems at all as the result of his minor accident, they were of low severity. Even so, following a purported initial examination of JN at Path Medical-Broward on March 9, 2016, Path Medical, Lewin, Permaul, Manion, and Qian billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that JN presented with moderately severe health problems as the result of his minor accident.

(xvii)   On March 18, 2016, an Insured named JG was involved in a minor automobile accident. In keeping with the fact that JG was not seriously injured in the minor accident, JG did not visit any hospital following the accident. To the extent that JG suffered any health problems at all as the result of his minor accident, they were of low severity. Even so, following a purported initial examination of JG at Path Medical-OBT on March 22, 2016, Path Medical, Lewin, Permaul, Manion, and Marino billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that JG presented with moderately severe health problems as the result of his minor accident.

(xviii) On April 12, 2016, an Insured named RO was involved in a minor automobile

accident. The contemporaneous police report indicated that the accident was a low-impact collision, that the airbags in RO's vehicle did not deploy, that RO's vehicle was drivable following the accident, that RO drove the vehicle following the accident, that the damage to RO's vehicle was minor, and that no one was injured in the accident. In keeping with the fact that RO was not seriously injured in the minor accident, RO did not visit any hospital following the accident. To the extent that RO suffered any health problems at all as the result of his minor accident, they were of low severity. Even so, following a purported initial examination of RO at Path Medical-Dade on April 20, 2016, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that RO presented with moderately severe health problems as the result of his minor accident.

(xix)   On September 14, 2016, an Insured named MC was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the airbags in MC's vehicle did not deploy, that MC's vehicle was drivable following the accident, that MC drove the vehicle following the accident, that the damage to MC's vehicle was minor, and that no one was injured in the accident. In keeping with the fact that MC was not seriously injured in the minor accident, MC did not visit any hospital following the accident. To the extent that MC suffered any health problems at all as the result of his minor accident, they were of low severity. Even so, following a purported initial examination of MC at Path Medical-Plantation on September 19, 2016, Path Medical, Lewin, Permaul, Manion, and Qian billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that MC presented with moderately severe health problems as the result of his minor accident.

(xx)    On November 9, 2016, an Insured named GE was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the airbags in GE's vehicle did not deploy, that the damage to GE's vehicle was minor, that GE's vehicle was drivable following the accident, that GE drove the vehicle following the accident, and that GE complained of pain in her leg but denied any other injuries and refused medical attention. In keeping with the fact that GE was not seriously injured in the minor accident, GE did not visit any hospital following the accident. To the extent that GE suffered any health problems at all as the result of her minor accident, they were of low severity. Even so, following a purported initial examination of GE at Path Medical-Pines on December 1, 2016, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Qian billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that GE presented with moderately severe health problems as the result of her minor accident.

(xxi)    On November 29, 2016, an Insured named KJ was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the airbags in KJ's vehicle did not deploy, that KJ's vehicle was drivable following the accident, that KJ drove the vehicle following the accident, and that no one was injured in the accident. In keeping with the fact that KJ was not seriously injured in the minor accident, KJ did not visit any hospital following the accident. To the extent that KJ suffered any health problems at all as the result of his minor accident, they were of low severity. Even so, following a purported initial examination of KJ at Path Medical-Hollywood on December 1, 2016, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Wilensky billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that KJ presented with moderately severe health problems as the result of his minor accident.

(xxii)   On December 26, 2016, an Insured named SS was involved in a minor automobile accident. The contemporaneous police report indicated that the airbags in SS's vehicle did not deploy and that SS was not injured in the accident. In keeping with the fact that SS was not seriously injured in the minor accident, SS did not visit any hospital following the accident. To the extent that SS suffered any health problems at all as the result of his minor accident, they were of low severity. Even so, following a purported initial examination of SS at Path Medical-Kissimmee on December 27, 2016, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Marino billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that SS presented with moderately severe health problems as the result of his minor accident.

(xxiii)  On December 26, 2016, an Insured named PS was involved in a minor automobile accident. The contemporaneous police report indicated that the airbags in PS's vehicle did not deploy and that PS was not injured in the accident. In keeping with the fact that PS was not seriously injured in the minor accident, PS did not visit any hospital following the accident. To the extent that SS suffered any health problems at all as the result of her minor accident, they were of low severity. Even so, following a purported initial examination of PS on December 27, 2016, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Marino billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that PS presented with moderately severe health problems as the result of her minor accident.

(xxiv)   On January 3, 2017, an Insured named MM was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-impact collision, that the airbags in MM's vehicle did not

deploy, that the damage to MM's vehicle was minor, that MM's vehicle was drivable following the accident, that MM drove the vehicle following the accident, and that MM was not injured in the accident. In keeping with the fact that MM was not seriously injured in the minor accident, MM did not visit any hospital following the accident. To the extent that MM suffered any health problems at all as the result of her minor accident, they were of low severity. Even so, following a purported initial examination of MM at Path Medical-OBT on March 17, 2017, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Marino billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that MM presented with moderately severe health problems as the result of her minor accident.

(xxv) On January 15, 2017, an Insured named SF was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-impact collision, that the airbags in SF's vehicle did not deploy, that the damage to SF's vehicle was minor, that SF's vehicle was drivable following the accident, that SF drove the vehicle following the accident, and that SF was not injured in the accident. In keeping with the fact that SF was not seriously injured in the minor accident, SF did not visit any hospital following the accident. To the extent that SF suffered any health problems at all as the result of her minor accident, they were of low severity. Even so, following a purported initial examination of SF at Path Medical-St. Pete on January 16, 2017, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that SF presented with moderately severe health problems as the result of her minor accident.

(xxvi) On February 16, 2017, an Insured named NM was involved in a minor automobile accident. The contemporaneous police report indicated that no one was injured in the accident. In keeping with the fact that NM was not seriously injured in the minor accident, NM did not visit any hospital following the accident. To the extent that NM suffered any health problems at all as the result of his minor accident, they were of low severity. Even so, following a purported initial examination of NM at Path Medical-St. Pete on February 17, 2017, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that NM presented with moderately severe health problems as the result of his minor accident.

(xxvii) On February 26, 2017, an Insured named LF was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the airbags in LF's vehicle did not deploy, that the damage to LF's vehicle was minor, that LF's vehicle was drivable following the accident, that LF drove the vehicle

following the accident, and that no one was injured in the accident. In keeping with the fact that LF was not seriously injured in the minor accident, LF did not visit any hospital following the accident. To the extent that LF suffered any health problems at all as the result of her minor accident, they were of low severity. Even so, following a purported initial examination of LF at Path Medical-Coral Springs Margate on March 17, 2017, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Wilensky billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that LF presented with moderately severe health problems as the result of her minor accident.

(xxviii) On February 27, 2017, an Insured named SV was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the airbags in SV's vehicle did not deploy, that the damage to SV's vehicle was minor, that SV's vehicle was drivable following the accident, that SV drove the vehicle following the accident, and that no one was injured in the accident. In keeping with the fact that SV was not seriously injured in the minor accident, SV did not visit any hospital following the accident. To the extent that SV suffered any health problems at all as the result of her minor accident, they were of low severity. Even so, following a purported initial examination of SV at Path Medical-Longwood on February 28, 2017, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Marino billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that SV presented with moderately severe health problems as the result of her minor accident.

(xxix) On March 11, 2017, an Insured named OC was involved in a minor automobile accident. In keeping with the fact that the accident was minor and that OC was not injured in the accident, there was no police report generated as a result of the accident, and OC did not visit any hospital following the accident. To the extent that OC suffered any health problems at all as the result of his minor accident, they were of low severity. Even so, following a purported initial examination of OC at Path Medical-Broward on March 15, 2017, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Qian billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that OC presented with moderately severe health problems as the result of his minor accident.

(xxx) On March 17, 2017, an Insured named CC was involved in a minor automobile accident. The contemporaneous police report indicated that that the airbags in CC's vehicle did not deploy and that no one was injured in the accident. In keeping with the fact that CC was not seriously injured in the minor accident, CC did not visit any hospital following the accident. To the

extent that CC suffered any health problems at all as the result of her minor accident, they were of low severity. Even so, following a purported initial examination of CC at Path Medical-South Tampa on March 23, 2017, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that CC presented with moderately severe health problems as the result of her minor accident.

(xxxi)   On March 18, 2017, an Insured named JG was involved in a minor automobile accident. The contemporaneous police report indicated that that the airbags in JG's vehicle did not deploy and that no one was injured in the accident. In keeping with the fact that JG was not seriously injured in the minor accident, JG did not visit any hospital following the accident. To the extent that JG suffered any health problems at all as the result of his minor accident, they were of low severity. Even so, following a purported initial examination of JG at Path Medical-Longwood on March 22, 2017, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Marino billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that JG presented with moderately severe health problems as the result of his minor accident.

(xxxii)  On March 22, 2017, an Insured named OK was involved in a minor automobile accident. In keeping with the fact that OK was not seriously injured in the minor accident, OK did not visit any hospital following the accident. To the extent that OK suffered any health problems at all as the result of her minor accident, they were of low severity. Even so, following a purported initial examination of OK at Path Medical-North Tampa on March 28, 2017, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that OK presented with moderately severe health problems as the result of her minor accident.

(xxxiii) On March 22, 2017, an Insured named PK – an 8 year old child – was involved in a minor automobile accident. In keeping with the fact that PK was not seriously injured in the minor accident, PK did not visit any hospital following the accident. To the extent that PK suffered any health problems at all as the result of her minor accident, they were of low severity. Even so, following a purported initial examination of PK at Path Medical-North Tampa on March 28, 2017, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that PK presented with moderately severe health problems as the result of her minor accident.

(xxxiv) On March 25, 2017, an Insured named MW was involved in a minor

automobile accident. The contemporaneous police report indicated that MW's vehicle was drivable following the accident, that the airbags in MW's vehicle did not deploy, and that no one was injured in the accident. In keeping with the fact that MW was not seriously injured in the minor accident, MW did not visit any hospital following the accident. To the extent that MW suffered any health problems at all as the result of her minor accident, they were of low severity. Even so, following a purported initial examination of MW at Path Medical-St. Pete on April 7, 2017, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that MW presented with moderately severe health problems as the result of his minor accident.

(xxxv) On April 11, 2017, an Insured named LP was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the airbags in LP's vehicle did not deploy, that there was minor damage to LP's vehicle, and that no one was injured in the accident. In keeping with the fact that LP was not seriously injured in the minor accident, LP did not visit any hospital following the accident. To the extent that LP suffered any health problems at all as the result of his minor accident, they were of low severity. Even so, following a purported initial examination of LP at Path Medical-Boca on April 17, 2017, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that LP presented with moderately severe health problems as the result of his minor accident.

(xxxvi) On April 13, 2017, an Insured named OA was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the airbags in OA's vehicle did not deploy, that there was minor damage to OA's vehicle, that OA's vehicle was drivable following the accident, that OA drove the vehicle following the accident, and that no one was injured in the accident. In keeping with the fact that OA was not seriously injured in the minor accident, OA did not visit any hospital following the accident. To the extent that OA suffered any health problems at all as the result of his minor accident, they were of low severity. Even so, following a purported initial examination of OA at Path Medical-Plantation on April 17, 2017, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Qian billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that OA presented with moderately severe health problems as the result of his minor accident.

(xxxvii)     On May 4, 2017, an Insured named BF was involved in a minor automobile accident in a parking lot. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the

airbags in BF's vehicle did not deploy, that there was minor damage to BF's vehicle and no damage to the other vehicle, and that no one was injured in the accident. In keeping with the fact that BF was not seriously injured in the minor accident, BF did not visit any hospital following the accident. To the extent that BF suffered any health problems at all as the result of her minor accident, they were of low severity. Even so, following a purported initial examination of BF at Path Medical-Deltona on May 8, 2017, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Marino billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that BF presented with moderately severe health problems as the result of her minor accident.

(xxxviii)   On May 20, 2017, an Insured named MG was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-impact collision, that the airbags in MG's vehicle did not deploy, that there was minor damage to MG's vehicle, that MG's vehicle was drivable following the accident, that MG drove the vehicle following the accident, and that no one was injured in the accident. In keeping with the fact that MG was not seriously injured in the minor accident, MG did not visit any hospital following the accident. To the extent that MG suffered any health problems at all as the result of his minor accident, they were of low severity. Even so, following a purported initial examination of MG at Path Medical-Kissimmee on May 22, 2017, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Marino billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that MG presented with moderately severe health problems as the result of her minor accident.

(xxxix)   On May 22, 2017, an Insured named KS was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the airbags in KS's vehicle did not deploy, that there was minor damage to KS's vehicle, that KS's vehicle was drivable following the accident, and that no one was injured in the accident. In keeping with the fact that KS was not seriously injured in the minor accident, KS did not visit any hospital following the accident. To the extent that KS suffered any health problems at all as the result of her minor accident, they were of low severity. Even so, following a purported initial examination of KS at Path Medical-Kissimmee on May 23, 2017, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Marino billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that KS presented with moderately severe health problems as the result of her minor accident.

(xl)   On May 22, 2017, an Insured named RM was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a

low-speed, low-impact collision, that the airbags in RM's vehicle did not deploy, that there was minor damage to RM's vehicle, that RM's vehicle was drivable following the accident, and that no one was injured in the accident. In keeping with the fact that RM was not seriously injured in the minor accident, RM did not visit any hospital following the accident. To the extent that RM suffered any health problems at all as the result of his minor accident, they were of low severity. Even so, following a purported initial examination of RM at Path Medical-Kissimmee on May 23, 2017, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Marino billed GEICO for the initial examination using CPT code 99203, and thereby falsely represented that RM presented with moderately severe health problems as the result of his minor accident.

361. These are only representative examples. In all of the claims for initial examinations identified in Exhibit "1", Path Medical, Path Holdings, Lewin, Permaul, Manion, and – depending on the Path Medical clinic at issue – either Wilensky, Cheesman, Qian, or Marino, falsely represented that the Insureds presented with problems of moderate severity, when in fact the Insureds' problems were low-severity soft tissue injuries such as sprains and strains, to the limited extent that they had any presenting problems at all.

362. In the claims for initial examinations identified in Exhibit "1", Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino routinely falsely represented that the Insureds presented with problems of moderate severity in order to create a false basis for their charges for the examinations under CPT code 99203, because examinations billable under CPT code 99203 are reimbursable at higher rates than examinations involving presenting problems of low severity, or no severity.

363. In the claims for initial examinations identified in Exhibit "1", Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino also routinely falsely represented that the Insureds presented with problems of moderate severity in order to create a false basis for the laundry list of other Fraudulent Services that the

Defendants purported to provide to the Insureds, including medically unnecessary follow-up examinations and physical therapy services.

364.     Moreover, in the claims for initial examinations identified in Exhibit "1", Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino routinely falsely represented that the Insureds presented with problems of moderate severity in order to create a false basis for personal injury lawsuits filed by the personal injury attorneys – including Kanner, Pintaluga, and Kanner & Pintaluga – who referred insureds to the Path Medical clinics pursuant to the Defendants' collusive and unlawful cross-referral scheme.

**(ii)    Misrepresentations Regarding the Amount of Time Spent on the Initial Examinations**

365.     What is more, in every claim identified in Exhibit "1" for initial examinations under CPT code 99203, Path Medical, Path Holdings, Lewin, Permaul, Manion, and – depending on the Path Medical clinic at issue – either Wilensky, Cheesman, Qian, or Marino, misrepresented and exaggerated the amount of face-to-face time that the examining physician or chiropractor spent with the Insureds or the Insureds' families.

366.     Pursuant to the CPT Assistant, the use of CPT code 99203 to bill for a patient examination typically represents that the physician or chiropractor who conducted the examination spent at least 30 minutes of face-to-face time with the patient or the patient's family.

367.     As set forth in Exhibit "1", Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino virtually always billed for their putative initial examinations using CPT code 99203, and thereby represented that the physician or

chiropractor who purported to conduct the examinations spent at least 30 minutes of face-to-face time with the Insureds or their families during the examinations.

368.    In fact, in the initial examinations identified in Exhibit "1", the physicians and chiropractors who purported to perform the initial examinations on behalf of Path Medical almost never spent more than 15-20 minutes of face-to-face time with the Insureds or their families when conducting the examinations, much less 30 minutes.

369.    In keeping with the fact that the initial examinations in the claims identified in Exhibit "1" did not involve more than 15-20 minutes of face-to-face time with the Insureds, or the Insureds' families, to the extent that they were provided at all, the physicians and chiropractors who performed the initial examinations on behalf of Path Medical frequently used pre-printed checklist and template forms in conducting the examinations.

370.    All that was required to complete the pre-printed checklist and template forms was a brief patient interview and a perfunctory physical examination of the Insureds, consisting of a check of some of the Insureds' vital signs, and basic range of motion and muscle strength testing.

371.    These interviews and examinations did not require the physicians and chiropractors who performed the initial examinations on behalf of Path Medical to spend more than 15-20 minutes of face-to-face time with the Insureds during the putative initial examinations.

372.    In keeping with the fact that these interviews and examinations did not entail more than 15-20 minutes of face-to-face time with the Insureds, or the Insureds' families:

(i)     An Insured named LB gave testimony, during a March 22, 2017 examination under oath, indicating that her purported initial examination at Path Medical-

North Tampa did not take longer than 20 minutes. Even so, Lewin, Manion, Permaul, Path Medical, Path Holdings, and Cheesman billed the putative examination to GEICO under CPT code 99203, and thereby falsely represented that the examination entailed at least 30 minutes of face-to-face time with the Insured or the Insured's family.

(ii)    An Insured named KL gave testimony, during a July 27, 2017 examination under oath, indicating that her purported initial examination at Path Medical-North Tampa did not take longer than 10-15 minutes. Even so, Lewin, Manion, Permaul, Path Medical, Path Holdings, and Cheesman billed the putative examination to GEICO under CPT code 99203, and thereby falsely represented that the examination entailed at least 30 minutes of face-to-face time with the Insured or the Insured's family.

(iii)    An Insured named KS gave testimony, during an August 30, 2017 examination under oath, indicating that his purported initial examination at Path Medical-OBT did not take longer than 5 minutes. Even so, Lewin, Manion, Permaul, Path Medical, Path Holdings, and Marino billed the putative examination to GEICO under CPT code 99203, and thereby falsely represented that the examination entailed at least 30 minutes of face-to-face time with the Insured or the Insured's family.

(iv)    An Insured named KL gave testimony, during a September 5, 2017 examination under oath, indicating that his purported initial examination at Path Medical-South Tampa did not take longer than 15-20 minutes. Even so, Lewin, Manion, Permaul, Path Medical, Path Holdings, and Cheesman billed the putative examination to GEICO under CPT code 99203, and thereby falsely represented that the examination entailed at least 30 minutes of face-to-face time with the Insured or the Insured's family.

(v)    An Insured named TS gave testimony, during a September 5, 2017 examination under oath, indicating that her purported initial examination at Path Medical-South Tampa did not take longer than 20 minutes. Even so, Lewin, Manion, Permaul, Path Medical, Path Holdings, and Cheesman billed the putative examination to GEICO under CPT code 99203, and thereby falsely represented that the examination entailed at least 30 minutes of face-to-face time with the Insured or the Insured's family.

(vi)    An Insured named SZ gave testimony, during a September 21, 2017 examination under oath, indicating that his purported initial examination at Path Medical-Lakeland did not take longer than 5-10 minutes. Even so, Lewin, Manion, Permaul, Path Medical, Path Holdings, and Cheesman billed the putative examination to GEICO under CPT code 99203, and thereby falsely represented that the examination entailed at least 30 minutes of face-

to-face time with the Insured or the Insured's family.

(vii) An Insured named SB gave testimony, during a September 25, 2017 examination under oath, indicating that her purported initial examination at Path Medical-Central Tampa did not take longer than 20 minutes. Even so, Lewin, Manion, Permaul, Path Medical, Path Holdings, and Cheesman billed the putative examination to GEICO under CPT code 99203, and thereby falsely represented that the examination entailed at least 30 minutes of face-to-face time with the Insured or the Insured's family.

(viii) An Insured named PW gave testimony, during a October 10, 2017 examination under oath, indicating that she never received any initial examination at all from Path Medical-Dade. Even so, Lewin, Manion, Permaul, Path Medical, Path Holdings, and Wilensky billed the putative examination to GEICO under CPT code 99203, and thereby falsely represented that the examination actually was conducted in the first instance, and entailed at least 30 minutes of face-to-face time with the Insured or the Insured's family.

373. In the claims for initial examinations that are identified in Exhibit "1", Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino routinely misrepresented the amount of time that was spent in conducting the initial examinations because lengthier examinations that are billable under CPT code 99203 are reimbursable at higher rates than examinations that take less time to perform.

**(iii) Misrepresentations Regarding "Detailed" Physical Examinations**

374. Moreover, in every claim identified in Exhibit "1" for initial examinations under CPT code 99203, Path Medical, Path Holdings, Lewin, Permaul, Manion, and – depending on the Path Medical clinic at issue – either Wilensky, Cheesman, Qian, or Marino, falsely represented the extent of the underlying physical examinations.

375. Pursuant to the CPT Assistant, the use of CPT code 99203 to bill for a patient examination represents that the physician or chiropractor who performed the examination conducted a "detailed" physical examination.

376. As set forth in Exhibit "1", Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino virtually always billed for their putative initial examinations using CPT code 99203, and thereby represented that the physician or chiropractor who purported to conduct the examinations conducted "detailed" physical examinations of the Insureds who purportedly received the examinations.

377. Pursuant to the CPT Assistant, a "detailed" physical examination requires – among other things – that the physician or chiropractor performing the examination conduct an extended examination of the affected body areas and other symptomatic or related organ systems.

378. To the extent that the Insureds in the claims identified in Exhibit "1" had any actual complaints at all as the result of their minor automobile accidents, the complaints were limited to minor musculoskeletal complaints, specifically sprains and strains.

379. Pursuant to the CPT Assistant, in the context of patient examinations, a physician or chiropractor has not conducted an extended examination of a patient's musculoskeletal organ system unless the physician or chiropractor has documented findings with respect to the following:

(i)  measurement of any three of the following seven vital signs: (a) sitting or standing blood pressure; (b) supine blood pressure; (c) pulse rate and regularity; (d) respiration; (e) temperature; (f) height; (g) weight;

(ii)  general appearance of patient (e.g., development, nutrition, body habitus, deformities, attention to grooming);

(iii)  examination of peripheral vascular system by observation (e.g., swelling, varicosities) and palpation (e.g., pulses, temperature, edema, tenderness);

(iv)  palpation of lymph nodes in neck, axillae, groin and/or other location;

(v)     brief assessment of mental status;

(vi)    examination of gait and station;

(vii)   inspection and/or palpation of skin and subcutaneous tissue (e.g., scars, rashes, lesions, café au-lait spots, ulcers) in four of the following six areas: (a) head and neck; (b) trunk; (c) right upper extremity; (d) left upper extremity; (e) right lower extremity; and (f) left lower extremity;

(viii)  coordination;

(ix)    examination of deep tendon reflexes and/or nerve stretch test with notation of pathological reflexes; and

(x)     examination of sensation.

380.    In the claims for initial examinations identified in Exhibit "1", when Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino billed for the initial examinations under CPT code 99203, they falsely represented that a physician or chiropractor associated with Path Medical had performed "detailed" patient examinations on the Insureds they purported to treat during the initial examinations.

381.    In fact, with respect to the claims for initial examinations under CPT code 99203 that are identified in Exhibit "1", none of the physicians or chiropractors who purported to perform the initial examinations on behalf of Path Medical ever conducted an extended examination of the Insureds' musculoskeletal systems.

382.    For instance, in each of the claims under CPT code 99203 identified in Exhibit "1", the physicians or chiropractors who purported to perform the initial examinations on behalf of Path Medical did not conduct an extended examination of the Insureds' musculoskeletal systems, inasmuch as they did not document findings with respect to the following:

(i)     general appearance of patient (e.g., development, nutrition, body habitus, deformities, attention to grooming);

(ii)    examination of peripheral vascular system by observation (e.g., swelling, varicosities) and palpation (e.g., pulses, temperature, edema, tenderness);

(iii)   brief assessment of mental status;

(iv)    examination of gait and station;

(v)     inspection and/or palpation of skin and subcutaneous tissue (e.g., scars, rashes, lesions, café au-lait spots, ulcers) in four of the following six areas: (a) head and neck; (b) trunk; (c) right upper extremity; (d) left upper extremity; (e) right lower extremity; and (f) left lower extremity;

(vi)    coordination;

(vii)   examination of deep tendon reflexes and/or nerve stretch test with notation of pathological reflexes; and/or

(viii)  examination of sensation.

383.    For example:

(i)     On or about March 10, 2014, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named RG at Path Medical-Hollywood, and thereby represented that they had provided a "detailed" physical examination to RG. However, no physician or chiropractor associated with Path Medical documented an extended examination of RG's musculoskeletal system, despite the fact that – to the extent RG had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(ii)    On or about May 13, 2014, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named JE at Path Medical-Hollywood, and thereby represented that they had provided a "detailed" physical examination to JE. However, no physician or chiropractor associated with Path Medical documented an extended examination of JE's musculoskeletal system, despite the fact that – to the extent JE had any complaints at all as the result of his automobile accident – they were limited to minor musculoskeletal complaints.

(iii)    On or about May 17, 2014, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named LR at Path Medical-Hollywood, and thereby represented that they had provided a "detailed" physical examination to LR. However, no physician or chiropractor associated with Path Medical documented an extended examination of LR's musculoskeletal system, despite the fact that – to the extent LR had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(iv)    On or about June 6, 2014, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named VP at Path Medical-Hollywood, and thereby represented that they had provided a "detailed" physical examination to VP. However, no physician or chiropractor associated with Path Medical documented an extended examination of VP's musculoskeletal system, despite the fact that – to the extent VP had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(v)    On or about August 11, 2014, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named CB at Path Medical-Dade, and thereby represented that they had provided a "detailed" physical examination to CB. However, no physician or chiropractor associated with Path Medical documented an extended examination of CB's musculoskeletal system, despite the fact that – to the extent CB had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(vi)    On or about September 9, 2014, Path Medical, Lewin, Permaul, Manion, and Qian billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named NZ at Path Medical-Broward, and thereby represented that they had provided a "detailed" physical examination to NZ. However, no physician or chiropractor associated with Path Medical documented an extended examination of NZ's musculoskeletal system, despite the fact that – to the extent NZ had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(vii)    On or about September 22, 2014, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named EM at Path Medical-Dade, and thereby represented that they had provided a "detailed" physical examination

to EM. However, no physician or chiropractor associated with Path Medical documented an extended examination of EM's musculoskeletal system, despite the fact that – to the extent EM had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(viii)   On or about November 26, 2014, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named CS at Path Medical-Coral Springs Margate, and thereby represented that they had provided a "detailed" physical examination to CS. However, no physician or chiropractor associated with Path Medical documented an extended examination of CS's musculoskeletal system, despite the fact that – to the extent CS had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(ix)   On or about December 22, 2014, Path Medical, Lewin, Permaul, Manion, and Qian billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named TC at Path Medical-Broward, and thereby represented that they had provided a "detailed" physical examination to TC. However, no physician or chiropractor associated with Path Medical documented an extended examination of TC's musculoskeletal system, despite the fact that – to the extent TC had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(x)   On or about May 3, 2015, Path Medical, Lewin, Permaul, Manion, and Qian billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named CP at Path Medical-Pines, and thereby represented that they had provided a "detailed" physical examination to CP. However, no physician or chiropractor associated with Path Medical documented an extended examination of CP's musculoskeletal system, despite the fact that – to the extent CP had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(xi)   On or about May 3, 2015, Path Medical, Lewin, Permaul, Manion, and Qian billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named EM at Path Medical-Pines, and thereby represented that they had provided a "detailed" physical examination to EM. However, no physician or chiropractor associated with Path Medical documented an extended examination of EM's musculoskeletal system, despite the fact that – to the extent EM had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(xii)    On or about August 17, 2015, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named SD at Path Medical-Coral Springs Margate, and thereby represented that they had provided a "detailed" physical examination to SD. However, no physician or chiropractor associated with Path Medical documented an extended examination of SD's musculoskeletal system, despite the fact that – to the extent SD had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(xiii)    On or about December 28, 2015, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named KS at Path Medical-Hollywood, and thereby represented that they had provided a "detailed" physical examination to KS. However, no physician or chiropractor associated with Path Medical documented an extended examination of KS's musculoskeletal system, despite the fact that – to the extent KS had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(xiv)    On or about February 29, 2016, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named IV at Path Medical-Hollywood, and thereby represented that they had provided a "detailed" physical examination to IV. However, no physician or chiropractor documented an extended examination of IV's musculoskeletal system, despite the fact that – to the extent IV had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(xv)    On or about February 29, 2016, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named AV at Path Medical-Hollywood, and thereby represented that they had provided a "detailed" physical examination to AV. However, no physician or chiropractor associated with Path Medical documented an extended examination of AV's musculoskeletal system, despite the fact that – to the extent AV had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(xvi)    On or about March 9, 2016, Path Medical, Lewin, Permaul, Manion, and Qian billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named JN at Path Medical-Broward, and

thereby represented that they had provided a "detailed" physical examination to JN. However, no physician or chiropractor associated with Path Medical documented an extended examination of JN's musculoskeletal system, despite the fact that – to the extent JN had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(xvii)   On or about March 22, 2016, Path Medical, Lewin, Permaul, Manion, and Marino billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named JG at Path Medical-OBT, and thereby represented that they had provided a "detailed" physical examination to JG. However, no physician or chiropractor associated with Path Medical documented an extended examination of JG's musculoskeletal system, despite the fact that – to the extent JG had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(xviii)  On or about April 20, 2016, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named RO at Path Medical-Dade, and thereby represented that they had provided a "detailed" physical examination to RO. However, no physician or chiropractor associated with Path Medical documented an extended examination of RO's musculoskeletal system, despite the fact that – to the extent JG had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(xix)    On or about September 19, 2016, Path Medical, Lewin, Permaul, Manion, and Qian billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named MC at Path Medical-Plantation, and thereby represented that they had provided a "detailed" physical examination to MC. However, no physician or chiropractor associated with Path Medical documented an extended examination of MC's musculoskeletal system, despite the fact that – to the extent MC had any complaints at all as the result of his automobile accident – they were limited to minor musculoskeletal complaints.

(xx)     On or about November 10, 2016, Path Medical, Lewin, Permaul, Manion, and Qian billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named GE at Path Medical-Pines, and thereby represented that they had provided a "detailed" physical examination to GE. However, no physician or chiropractor associated with Path Medical documented an extended examination of GE's musculoskeletal system, despite the fact that – to the extent GE had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(xxi) On or about December 1, 2016, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named KJ at Path Medical-Hollywood, and thereby represented that they had provided a "detailed" physical examination to KJ. However, no physician or chiropractor associated with Path Medical documented an extended examination of KJ's musculoskeletal system, despite the fact that – to the extent KJ had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(xxii) On or about December 27, 2016, Path Medical, Lewin, Permaul, Manion, and Marino billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named PS at Path Medical-Kissimmee and thereby represented that they had provided a "detailed" physical examination to PS. However, no physician or chiropractor associated with Path Medical documented an extended examination of PS's musculoskeletal system, despite the fact that – to the extent PS had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(xxiii) On or about December 27, 2016, Path Medical, Lewin, Permaul, Manion, and Marino billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named SS at Path Medical-Kissimmee and thereby represented that they had provided a "detailed" physical examination to SS. However, no physician or chiropractor associated with Path Medical documented an extended examination of SS's musculoskeletal system, despite the fact that – to the extent SS had any complaints at all as the result of his automobile accident – they were limited to minor musculoskeletal complaints.

(xxiv) On or about January 12, 2017, Path Medical, Lewin, Permaul, Manion, and Marino billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named MM at Path Medical-OBT, and thereby represented that they had provided a "detailed" physical examination to MM. However, no physician or chiropractor associated with Path Medical documented an extended examination of MM's musculoskeletal system, despite the fact that – to the extent MM had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(xxv) On or about January 16, 2017, Path Medical, Lewin, Permaul, Manion, and Cheesman billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named SF at Path Medical-St.

Pete, and thereby represented that they had provided a "detailed" physical examination to SF. However, no physician or chiropractor associated with Path Medical documented an extended examination of SF's musculoskeletal system, despite the fact that – to the extent SF had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(xxvi) On or about January 16, 2017, Path Medical, Lewin, Permaul, Manion, and Cheesman billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named NM at Path Medical-St. Pete, and thereby represented that they had provided a "detailed" physical examination to NM. However, no physician or chiropractor associated with Path Medical documented an extended examination of NM's musculoskeletal system, despite the fact that – to the extent NM had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(xxvii) On or about February 28, 2017, Path Medical, Lewin, Permaul, Manion, and Marino billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named SV at Path Medical-Longwood, and thereby represented that they had provided a "detailed" physical examination to SV. However, no physician or chiropractor associated with Path Medical documented an extended examination of SV's musculoskeletal system, despite the fact that – to the extent SV had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(xxviii) On or about March 15, 2017, Path Medical, Lewin, Permaul, Manion, and Qian billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named OC at Path Medical-Broward, and thereby represented that they had provided a "detailed" physical examination to OC. However, no physician or chiropractor associated with Path Medical documented an extended examination of OC's musculoskeletal system, despite the fact that – to the extent OC had any complaints at all as the result of his automobile accident – they were limited to minor musculoskeletal complaints.

(xxix) On or about March 17, 2017, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named LF at Path Medical-Coral Springs Margate, and thereby represented that they had provided a "detailed" physical examination to LF. However, no physician or chiropractor associated with Path Medical documented an extended examination of LF's musculoskeletal system, despite the fact that – to the extent LF had any

complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(xxx) On or about March 22, 2017, Path Medical, Lewin, Permaul, Manion, and Marino billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named JG at Path Medical-Longwood, and thereby represented that they had provided a "detailed" physical examination to JG. However, no physician or chiropractor associated with Path Medical documented an extended examination of JG's musculoskeletal system, despite the fact that – to the extent JG had any complaints at all as the result of his automobile accident – they were limited to minor musculoskeletal complaints.

(xxxi) On or about March 23, 2017, Path Medical, Lewin, Permaul, Manion, and Cheesman billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named CC at Path Medical-South Tampa, and thereby represented that they had provided a "detailed" physical examination to CC. However, no physician or chiropractor associated with Path Medical documented an extended examination of CC's musculoskeletal system, despite the fact that – to the extent CC had any complaints at all as the result of his automobile accident – they were limited to minor musculoskeletal complaints.

(xxxii) On or about March 28, 2017, Path Medical, Lewin, Permaul, Manion, and Cheesman billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named OK at Path Medical-North Tampa, and thereby represented that they had provided a "detailed" physical examination to OK. However, no physician or chiropractor associated with Path Medical documented an extended examination of OK's musculoskeletal system, despite the fact that – to the extent OK had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(xxxiii) On or about March 28, 2017, Path Medical, Lewin, Permaul, Manion, and Cheesman billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named PK at Path Medical-North Tampa, and thereby represented that they had provided a "detailed" physical examination to PK. However, no physician or chiropractor associated with Path Medical documented an extended examination of PK's musculoskeletal system, despite the fact that – to the extent PK had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(xxxiv) On or about April 7, 2017, Path Medical, Lewin, Permaul, Manion, and

Cheesman billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named MW at Path Medical-St. Pete, and thereby represented that they had provided a "detailed" physical examination to MW. However, no physician or chiropractor associated with Path Medical documented an extended examination of MW's musculoskeletal system, despite the fact that – to the extent MW had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(xxxv) On or about April 17, 2017, Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named LP at Path Medical-Boca and thereby represented that they had provided a "detailed" physical examination to LP. However, no physician or chiropractor associated with Path Medical documented an extended examination of LP's musculoskeletal system, despite the fact that – to the extent LP had any complaints at all as the result of his automobile accident – they were limited to minor musculoskeletal complaints.

(xxxvi) On or about April 17, 2017, Path Medical, Lewin, Permaul, Manion, and Qian billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named OA at Path Medical-Plantation and thereby represented that they had provided a "detailed" physical examination to OA. However, no physician or chiropractor associated with Path Medical documented an extended examination of OA's musculoskeletal system, despite the fact that – to the extent OA had any complaints at all as the result of his automobile accident – they were limited to minor musculoskeletal complaints.

(xxxvii) On or about May 8, 2017, Path Medical, Lewin, Permaul, Manion, and Marino billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named BF at Path Medical-Deltona and thereby represented that they had provided a "detailed" physical examination to BF. However, no physician or chiropractor associated with Path Medical documented an extended examination of BF's musculoskeletal system, despite the fact that – to the extent BF had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(xxxviii) On or about May 22, 2017, Path Medical, Lewin, Permaul, Manion, and Marino billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named MG at Path Medical-Kissimmee and thereby represented that they had provided a "detailed" physical examination to MG. However, no physician or chiropractor associated with Path Medical documented an extended examination of MG's

musculoskeletal system, despite the fact that – to the extent MG had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(xxxix) On or about May 23, 2017, Path Medical, Lewin, Permaul, Manion, and Marino billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named KS at Path Medical-Kissimmee and thereby represented that they had provided a "detailed" physical examination to KS. However, no physician or chiropractor associated with Path Medical documented an extended examination of KS's musculoskeletal system, despite the fact that – to the extent KS had any complaints at all as the result of her automobile accident – they were limited to minor musculoskeletal complaints.

(xl)    On or about May 23, 2017, Path Medical, Lewin, Permaul, Manion, and Marino billed GEICO under CPT code 99203 for an initial examination that they purported to provide to an Insured named RM at Path Medical-Kissimmee and thereby represented that they had provided a "detailed" physical examination to RM. However, no physician or chiropractor associated with Path Medical documented an extended examination of RM's musculoskeletal system, despite the fact that – to the extent RM had any complaints at all as the result of his automobile accident – they were limited to minor musculoskeletal complaints.

384.    These are only representative examples. In all of the claims for initial examinations under CPT code 99203 that are identified in Exhibit "1", Path Medical, Path Holdings, Lewin, Permaul, Manion, and – depending on the Path Medical clinic at issue – either Wilensky, Cheesman, Qian, or Marino, falsely represented that they had provided "detailed" physical examinations. In fact, they had not provided detailed physical examinations because the examining physicians or chiropractors had not documented an extended examination of the Insureds' affected body areas and other symptomatic or related organ systems.

385.    In the claims for initial examinations under CPT code 99203 that are identified in Exhibit "1", Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky,

Cheesman, Qian, and Marino falsely represented that they had provided "detailed" physical examinations to the Insureds in order to create a false basis for their charges for the examinations under CPT code 99203, because examinations billable under CPT code 99203 are reimbursable at higher rates than examinations that do not require the examining physician to provide "detailed" physical examinations.

386.    In the claims for initial examinations under CPT code 99203 that are identified in Exhibit "1", Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino also falsely represented that they had provided "detailed" physical examinations to the Insureds in order to create the false appearance of serious injuries requiring more extended examinations, so as to create a false basis for personal injury lawsuits filed by the personal injury attorneys – including Kanner, Pintaluga, and Kanner & Pintaluga – who referred insureds to the Path Medical clinics pursuant to the Defendants' collusive and unlawful cross-referral scheme.

**(iv)    Misrepresentations Regarding the Extent of Medical Decision-Making**

387.    Furthermore, pursuant to the CPT Assistant, the use of CPT code 99203 to bill for a patient examination represents that the physician or chiropractor who performed the examination engaged in "low complexity" medical decision-making.

388.    In this context, pursuant to the CPT Assistant, the complexity of medical decision-making is measured by: (i) the number of diagnoses and/or the number of management options to be considered; (ii) the amount and/or complexity of medical records, diagnostic tests, and other information that must be retrieved, reviewed, and analyzed; and (iii) the risk of significant complications, morbidity, mortality, as well as co-morbidities

associated with the patient's presenting problems, the diagnostic procedures, and/or the possible management options.

389.    As set forth above, and in Exhibit "1", Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino billed for virtually all of their putative initial examinations using CPT code 99203, and thereby represented that the examining physicians or chiropractors engaged in some genuine, low-complexity medical decision-making during the initial examinations.

390.    In actuality, however, the purported initial examinations did not involve any legitimate medical decision-making at all.

391.    First, in Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino's claims for initial examinations identified in Exhibit "1", the initial examinations did not involve the retrieval, review, or analysis of any medical records, diagnostic tests, or other information.

392.    When the Insureds in the claims identified in Exhibit "1" presented to the Path Medical clinics for "treatment" pursuant to the Defendants' collusive and unlawful self-referral and cross-referral scheme, they did not arrive with any medical records.

393.    Furthermore, prior to the initial examinations, no one at the Path Medical clinics requested any medical records from any other health care providers, nor did they conduct any diagnostic tests.

394.    Second, in Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino's claims for initial examinations identified in Exhibit "1", there was no risk of significant complications or morbidity – much less mortality – from the

Insureds' minor soft-tissue injury complaints, to the extent that they ever had any complaints arising from automobile accidents at all.

395.    Nor, by extension, was there any risk of significant complications, morbidity, or mortality from the diagnostic procedures or treatment options provided at the Path Medical clinics, to the extent that the Path Medical clinics provided any such diagnostic procedures or treatment options in the first instance.

396.    In virtually every one of the claims identified in Exhibit "1", any diagnostic procedures and "treatments" that the Path Medical clinics actually provided were limited to a series of medically unnecessary follow-up examinations, chiropractic treatments, physical therapy treatments, and – less frequently – radiology services, none of which was health- or life-threatening if properly administered.

397.    Third, in Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino's claims for initial examinations identified in Exhibit "1", the examining physicians or chiropractors did not consider any significant number of diagnoses or treatment options for Insureds during the initial examinations.

398.    Rather, to the extent that the initial examinations were conducted in the first instance, Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino provided a nearly identical, pre-determined "diagnosis" for every Insured, and prescribed a virtually identical course of treatment for every Insured.

399.    Specifically, in almost every instance in the claims identified in Exhibit "1", during the initial examinations the Insureds did not report any continuing medical problems that legitimately could be traced to an underlying automobile accident.

400.     Even so, Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino prepared initial examination reports in which they provided phony, boilerplate sprain/strain "diagnoses" to virtually every Insured.

401.     Then, based upon these phony "diagnoses", Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino directed virtually every Insured to return to the Path Medical clinics: (i) every day for medically unnecessary chiropractic and physical therapy services during the first two weeks of "treatment"; and (ii) three times each week for medically unnecessary chiropractic and physical therapy services during the subsequent weeks of "treatment".

402.     In legitimate clinical setting, when a patient presents with a soft tissue injury such as a sprain or strain arising from an automobile accident, the initial standard of care is conservative treatment comprised of rest, ice, compression, and – if applicable – elevation of the affected body part.

403.     It generally is inappropriate to begin administering physical therapy or chiropractic manipulation to a patient with a soft tissue injury in the immediate aftermath of the injury, before the patient has first tried a more conservative course of rest, ice, compression, and – if applicable – elevation of the affected body part.

404.     Even so, in the claims identified in Exhibit "1", Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino routinely directed Insureds to immediately begin a course of physical therapy and/or chiropractic manipulation, often within days of their accident, or even on the same day of their accident, before the

Insureds had first tried a more conservative course of rest, ice, compression, and – if applicable – elevation of the affected body part.

405.     Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino routinely directed Insureds to immediately begin a course of physical therapy and/or chiropractic manipulation, often within days of their accidents, or even on the same day of their accidents, because their putative initial examinations involved no legitimate medical decision-making whatsoever, and had pre-determined outcomes.

406.     There are a substantial number of variables that can affect whether, how, and to what extent an individual is injured in a given automobile accident.

407.     An individual's age, height, weight, general physical condition, location within the vehicle, and the location of the impact all will affect whether, how, and to what extent an individual is injured in a given automobile accident.

408.     As set forth above, in the claims identified in Exhibit "1", virtually all of the Insureds who purportedly received treatment at the Path Medical clinics were involved in relatively minor, "fender-bender" accidents, to the extent that they were involved in any actual accidents at all.

409.     It is extremely improbable that any two or more Insureds involved in any one of the minor automobile accidents in the claims identified in Exhibit "1" would suffer substantially identical injuries as the result of their accidents, or require a substantially identical course of treatment.

410.     It is even more improbable – to the point of impossibility – that this would occur over and over again.

411.    It likewise is improbable – to the point of impossibility – that any two or more Insureds involved in any one of the minor automobile accidents in the claims identified in Exhibit "1" would present for an initial examination with substantially identical symptoms, and receive substantially identical diagnoses, on the <u>exact same date</u> after their underlying automobile accident.

412.    Even so, in keeping with the fact that Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino's putative "diagnoses" were phony, and in keeping with the fact that their putative initial examinations involved no actual medical decision-making at all, Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino frequently issued substantially identical, phony "diagnoses", on or around the same date, to more than one Insured involved in a single accident, and recommended a substantially identical course of medically unnecessary "treatment" to the Insureds.

413.    For example:

(i)    On December 18, 2014, two Insureds – EH and TC – were involved in the same minor automobile accident. Thereafter – incredibly – both EH and TC presented at Path Medical-Broward for initial examinations on the exact same date, December 22, 2014. EH and TC were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that EH and TC suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Lewin, Permaul, Manion, and Qian provided EH and TC with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to both of them.

(ii)    On May 3, 2015, two Insureds – CP and EM – were involved in the same minor automobile accident. Thereafter – incredibly – both CP and EM presented at Path Medical-Pines for initial examinations on the exact same

date, May 3, 2015. CP and EM were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that CP and EM suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Lewin, Permaul, Manion, and Qian provided CP and EM with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to both of them.

(iii)    On July 20, 2015, two Insureds – CM and JV – were involved in the same minor automobile accident. Thereafter – incredibly – both CM and JV presented at Path Medical-Coral Springs Margate for initial examinations on the exact same date, July 21, 2015. CM and JV were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that CM and JV suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Lewin, Permaul, Manion, and Wilensky provided CM and JV with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to both of them.

(iv)    On December 3, 2015, three Insureds – BE, SE, and SW – were involved in the same minor automobile accident. Thereafter – incredibly – BE, SE, and SW all presented at Path Medical-Dade for initial examinations on the exact same date, December 11, 2015. BE, SE, and SW were all different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that BE, SE, and SW suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Lewin, Permaul, Manion, and Wilensky provided BE, SE, and SW with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to all of them.

(v)    On December 15, 2015, two Insureds – SK and JL – were involved in the same minor automobile accident. Thereafter, on December 17, 2015, SK presented at Path Medical-North Miami/North Miami Beach for an initial examination. Less than one week later, on December 22, 2015, JL presented at Path Medical-North Miami/North Miami Beach for an initial examination. SK and JL were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that SK and JL suffered any

injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Lewin, Permaul, Manion, and Wilensky provided SK and JL with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to both of them.

(vi)     On January 20, 2016, two Insureds – CH and MH – were involved in the same minor automobile accident. Thereafter – incredibly – both CH and MH presented at Path Medical-Coral Springs Margate for initial examinations on the exact same date, January 26, 2016. CH and MH were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that CH and MH suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Lewin, Permaul, Manion, and Wilensky provided CH and MH with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to both of them.

(vii)    On February 25, 2016, two Insureds – IV and AV – were involved in the same minor automobile accident. Thereafter – incredibly – both IV and AV presented at Path Medical-Hollywood for initial examinations on the exact same date, February 29, 2016. IV and AV were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that IV and AV suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Lewin, Permaul, Manion, and Wilensky provided IV and AV with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to both of them. In keeping with the fact that Path Medical, Lewin, Permaul, Manion, and Wilensky provided IV and AV with phony "diagnoses" and treatment plans, Path Medical, Lewin, Permaul, Manion, and Wilensky actually stopped treating IV and AV on the same date.

(viii)   On March 24, 2016, two Insureds – GR and LT – were involved in the same minor automobile accident. Thereafter – incredibly – both GR and LT presented at Path Medical-Hollywood for initial examinations on the exact same date, March 29, 2016. GR and LT were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that GR and LT suffered any injuries at all in their minor accident, the

injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Lewin, Permaul, Manion, and Wilensky provided GR and LT with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to both of them.

(ix)     On April 23, 2016, two Insureds – JZ and BZ – were involved in the same minor automobile accident. Thereafter – incredibly – both JZ and BZ presented at Path Medical-Coral Springs Margate for initial examinations on the exact same date, April 25, 2016. JZ and BZ were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that JZ and BZ suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Lewin, Permaul, Manion, and Wilensky provided JZ and BZ with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to both of them. In keeping with the fact that Path Medical, Lewin, Permaul, Manion, and Wilensky provided JZ and BZ with phony "diagnoses" and treatment plans, Path Medical, Lewin, Permaul, Manion, and Wilensky actually stopped treating JZ and BZ on the same date.

(x)      On May 5, 2016, two Insureds – VP and DW – were involved in the same minor automobile accident. Thereafter – incredibly – both VP and DW presented at Path Medical-Hollywood for initial examinations on the exact same date, May 5, 2016. VP and DW were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that VP and DW suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Lewin, Permaul, Manion, and Wilensky provided VP and DW with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to both of them.

(xi)     On May 15, 2016, three Insureds – BB, EB, and MB – were involved in the same minor automobile accident. Thereafter – incredibly – BB, EB, and MB all presented at Path Medical-Hollywood for initial examinations on the exact same date, May 17, 2016. BB, EB, and MB were all different ages – ranging from seven to fifty years old – in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that BB, EB, and MB suffered any injuries at all in their minor accident, the injuries were different. Even so,

at the conclusion of the purported initial examinations, Path Medical, Lewin, Permaul, Manion, and Wilensky provided BB, EB, and MB with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to all of them.

(xii)   On June 11, 2016, two Insureds – SM and GT – were involved in the same minor automobile accident. Thereafter – incredibly – both SM and GT presented at Path Medical-Coral Springs Margate for initial examinations on the exact same date, June 13, 2016. SM and GT were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that SM and GT suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Lewin, Permaul, Manion, and Wilensky provided SM and GT with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to both of them.

(xiii)   On August 16, 2016, three Insureds – MA, CC, and MV – were involved in the same minor automobile accident. Thereafter – incredibly – MA, CC, and MV all presented at Path Medical-Plantation for initial examinations on the exact same date, August 18, 2016. MA, CC, and MV were all different ages – ranging from seven to fifty years old – in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that MA, CC, and MV suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Lewin, Permaul, Manion, and Qian provided MA, CC, and MV with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to all of them.

(xiv)   On September 21, 2016, two Insureds – JJ and YJ – were involved in the same minor automobile accident. More than seven months later – incredibly – both JJ and YJ presented at Path Medical-North Miami/North Miami Beach for initial examinations on the exact same date, May 4, 2017. JJ and YJ were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that JJ and YJ suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Lewin, Permaul, Manion, and Wilensky provided JJ and YJ with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically

unnecessary physical therapy and chiropractic treatment to both of them. In keeping with the fact that Path Medical, Lewin, Permaul, Manion, and Wilensky provided JJ and YJ with phony "diagnoses" and treatment plans, Path Medical, Lewin, Permaul, Manion, and Wilensky actually stopped treating JJ and YJ on the same date.

(xv)    On December 16, 2016, two Insureds – AE and ME – were involved in the same minor automobile accident. Thereafter – incredibly – both AE and ME presented at Path Medical-Pines for initial examinations on the exact same date, January 7, 2017. AE and ME were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that AE and ME suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Qian provided AE and ME with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to both of them.

(xvi)   On December 26, 2016, three Insureds – SS, PS, and RB – were involved in the same minor automobile accident. Thereafter, SS and PS presented at Path Medical-Kissimmee for initial examinations on the exact same date, December 27, 2016. Less than two weeks later, on January 6, 2017, RB also presented at Path Medical-Kissimmee for an initial examination. SS, PS, and RB were all different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that SS, PS, and RB suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Marino provided SS, PS, and RB with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to all of them.

(xvii)  On January 12, 2017, two Insureds – TB and MC – were involved in the same minor automobile accident. Thereafter – incredibly – both TB and MC presented at Path Medical-Kissimmee for initial examinations on the exact same date, January 14, 2017. TB and MC were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that TB and MC suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Marino provided TB and MC with substantially identical sprain/strain

"diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to both of them.

(xviii)  On January 20, 2017, two Insureds – JC and CM – were involved in the same minor automobile accident. Almost two months later – incredibly – both JC and CM presented at Path Medical-OBT for initial examinations on the exact same date, March 10, 2017. JC and CM were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that JC and CM suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Marino provided JC and CM with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to both of them.

(xix)  On January 21, 2017, two Insureds – LM and MR – were involved in the same minor automobile accident. Thereafter – incredibly – both LM and MR presented at Path Medical-Kissimmee for initial examinations on the exact same date, January 23, 2017. LM and MR were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that LM and MR suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Marino provided LM and MR with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to both of them.

(xx)  On January 22, 2017, two Insureds – JS and MW – were involved in the same minor automobile accident. Thereafter – incredibly – both JS and MW presented at Path Medical-Longwood for initial examinations on the exact same date, February 2, 2017. JS and MW were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that JS and MW suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Marino provided JS and MW with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to both of them.

(xxi)  On January 29, 2017, two Insureds – DW and MW – were involved in the same minor automobile accident. Thereafter – incredibly – both DW and MW

presented at Path Medical-St. Pete for initial examinations on the exact same date, January 31, 2017. DW and MW were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that DW and MW suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman provided DW and MW with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to both of them. In keeping with the fact that Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman provided DW and MW with phony "diagnoses" and treatment plans, Path Medical, Lewin, Permaul, Manion, and Cheesman actually stopped treating DW and MW on the same date.

(xxii)   On February 11, 2017, two Insureds – AP and LP – were involved in the same minor automobile accident. Thereafter – incredibly – both AP and LP presented at Path Medical-Coral Springs Margate for initial examinations on the exact same date, February 22, 2017. AP and LP were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that AP and LP suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Wilensky provided AP and LP with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to both of them.

(xxiii)   On February 13, 2017, two Insureds – JS and GT – were involved in the same minor automobile accident. Thereafter – incredibly – both JS and GT presented at Path Medical-Central Tampa for initial examinations on the exact same date, February 15, 2017. JS and GT were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that JS and GT suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman provided JS and GT with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to both of them.

(xxiv)   On February 22, 2017, two Insureds – JA and JM – were involved in the same minor automobile accident. Thereafter – incredibly – both JA and JM presented at Path Medical-Central Tampa for initial examinations on the exact

same date, February 22, 2017. JA and JM were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that JA and JM suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman provided JA and JM with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to both of them.

(xxv)  On March 2, 2017, two Insureds – JA and SA – were involved in the same minor automobile accident. Thereafter – incredibly – both JA and SA presented at Path Medical-Kissimmee for initial examinations on the exact same date, March 11, 2017. JA and SA were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that JA and SA suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Marino provided JA and SA with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to both of them.

(xxvi)  On March 6, 2017, two Insureds – DP and KM – were involved in the same minor automobile accident. Thereafter – incredibly – both DP and KM presented at Path Medical-Kissimmee for initial examinations on the exact same date, March 6, 2017. DP and KM were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that DP and KM suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Marino provided DP and KM with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to both of them.

(xxvii) On March 22, 2017, two Insureds – OK and PK – were involved in the same minor automobile accident. Thereafter – incredibly – both OK and PK presented at Path Medical-North Tampa for initial examinations on the exact same date, March 28, 2017. OK and PK were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that OK and PK suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial

examinations, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman provided OK and PK with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to both of them.

(xxviii) On May 1, 2017, two Insureds – SC and GL – were involved in the same minor automobile accident. Thereafter – incredibly – both SC and GL presented at Path Medical-Lakeland for initial examinations on the exact same date, May 5, 2017. SC and GL were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that SC and GL suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman provided SC and GL with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to both of them. In keeping with the fact that Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman provided SC and GL with phony "diagnoses" and treatment plans, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman actually stopped treating SC and GL on the same date.

(xxix) On May 22, 2017, two Insureds – KS and RM – were involved in the same minor automobile accident. Thereafter – incredibly – both KS and RM presented at Path Medical-Kissimmee for initial examinations on the exact same date, May 23, 2017. KS and RM were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that KS and RM suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Marino provided KS and RM with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to both of them.

(xxx) On June 14, 2017, two Insureds – CG and LL – were involved in the same minor automobile accident. Thereafter – incredibly – both CG and LL presented at Path Medical-North Tampa for initial examinations on the exact same date, June 23, 2017. CG and LL were different ages, in different physical conditions, located in different positions in the vehicle, and experienced the minor impact from different positions in the vehicle. To the extent that CG and LL suffered any injuries at all in their minor accident, the injuries were different. Even so, at the conclusion of the purported initial examinations, Path Medical, Path Holdings, Lewin, Permaul, Manion, and

Cheesman provided CG and LL with substantially identical sprain/strain "diagnoses", and recommended a substantially identical course of medically unnecessary physical therapy and chiropractic treatment to both of them.

414. Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino routinely inserted these false "diagnoses" in their initial examination reports in order to create the false impression that the initial examinations required some legitimate medical decision-making, and in order to create a false justification for the other Fraudulent Services that they purported to provide to the Insureds, including medically unnecessary follow-up examinations, chiropractic, and physical therapy services.

415. Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino also routinely inserted these false "diagnoses" in their initial examination reports in order to create a false basis for personal injury lawsuits filed by the personal injury attorneys – including Kanner, Pintaluga, and Kanner & Pintaluga – who referred insureds to the Path Medical clinics pursuant to the Defendants' collusive and unlawful cross-referral scheme.

416. To the extent that the Insureds in the claims identified in Exhibit "1" ever had any genuine medical problems at all as the result of their minor automobile accidents, the problems virtually always were limited to ordinary sprains or strains of the back, neck, or extremities.

417. The diagnosis and treatment of these ordinary sprains and strains did not require any "low complexity" medical decision-making on the part of Wilensky, Cheesman, Qian, Marino, or any other physicians or chiropractors associated with the Path Medical clinics.

418.    To the contrary, and as set forth above, Wilensky, Cheesman, Qian, Marino, and the other physicians and chiropractors who purported to perform the initial examinations did not engage in any legitimate medical decision-making at all in connection with the initial examinations in the claims identified in Exhibit "1", because the purported "results" of the examinations were pre-determined, phony, and designed to provide a false justification for the laundry-list of other Fraudulent Services that the Defendants purported to provide.

419.    In the claims for initial examinations identified in Exhibit "1", Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino routinely falsely represented that the initial examinations involved medical decision-making of low complexity in order to provide a false basis to bill for the initial examinations under CPT code 99203, because CPT code 99203 is reimbursable at a higher rate than examinations that do not require low complexity medical decision-making.

420.    In the claims for initial examinations identified in Exhibit "1", Path Medical, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino routinely fraudulently misrepresented that the examinations were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable, because:

(i)     the putative examinations were illusory, with outcomes that were pre-determined to result in substantially-identical, phony "diagnoses" and treatment recommendations, regardless of the Insureds' true individual circumstances and presentment;

(ii)    the charges for the putative examinations misrepresented the nature and extent of the examinations; and

(iii)   Path Medical never was eligible to collect PIP Benefits in connection with the examinations in the first instance, inasmuch as the Path Medical clinics were operated in violation of the Clinic Act, the Self-Referral Act, the Patient

Brokering Act, the Anti-Kickback Statute, and the Chiropractor Advertising Laws.

421.     In this context, Wilensky, Cheesman, Qian, and Marino – who at all relevant times purported to serve as the "medical directors" of the Path Medical clinics – did not, and could not have, "[c]onduct[ed] systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful." See Fla. Stat. § 400.9935(1).

422.     Had Wilensky, Cheesman, Qian, and Marino actually fulfilled their statutory role as the medical directors at the Path Medical clinics, they would have noted – among other things – that the Defendants routinely fraudulently represented in Path Medical's billing that the putative initial examinations were legitimately and lawfully performed.

423.     Wilensky, Cheesman, Qian, and Marino failed to do so, because they never actually served as legitimate medical directors at the Path Medical clinics in the first instance.

## 2.     The Fraudulent Charges for Follow-Up Examinations

424.     In addition to their fraudulent initial examinations, Lewin, Permaul, Manion, Path Medical, Path Holdings and – depending on the Path Medical clinic at issue – either Wilensky, Cheesman, Qian, or Marino, virtually always purported to subject each of the Insureds in the claims identified in Exhibit "1" to multiple, fraudulent follow-up examination(s) during the course of their fraudulent treatment and billing protocol.

425.     The follow-up examinations in the claims identified in Exhibit "1" were purportedly performed by physicians and chiropractors at the Path Medical clinics under the purported supervision of Wilensky, Cheesman, Qian, and Marino.

426.    As set forth in Exhibit "1", Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino then typically billed the follow-up examinations to GEICO under: (i) CPT code 99213, virtually always resulting in charges ranging from $160.00 to $275.00 for each follow-up examination they purported to provide; or (ii) CPT code 99214, virtually always resulting in charges ranging from $240.00 to $400.00 for each follow-up examination they purported to provide.

427.    In the claims for follow-up examinations identified in Exhibit "1", the charges for the follow-up examinations were fraudulent in that they misrepresented Path Medical's eligibility to collect PIP Benefits in the first instance.

428.    In fact, and as set forth above, Path Medical never was eligible to collect PIP Benefits, inasmuch as it was operated in violation of the licensing requirements set forth in the Clinic Act, as well as the Self-Referral Act, the Patient Brokering Act, the Anti-Kickback Statute, and the Chiropractor Advertising Laws.

429.    As set forth below, Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino's charges for the follow-up examinations identified in Exhibit "1" also were fraudulent in that they misrepresented the nature and extent of the follow-up examinations.

**(i)       Misrepresentations Regarding the Severity of the Insureds' Presenting Problems**

430.    Pursuant to the CPT Assistant, the use of CPT code 99214 to bill for a follow-up examination typically requires that the patient present with problems of moderate to high severity.

431.    The CPT Assistant provides various clinical examples of the types of presenting problems that qualify as moderately to highly severe, and thereby justify the use of CPT code 99214 to bill for a follow-up patient examination.

432.    For example, the CPT Assistant provides the following clinical examples of presenting problems that might support the use of CPT code 99214 to bill for a follow-up patient examination:

(i)     Office visit for a 68-year-old male with stable angina, two months post myocardial infarction, who is not tolerating one of his medications. (Cardiology)

(ii)    Office evaluation of 28-year-old patient with regional enteritis, diarrhea and low-grade fever, established patient. (Family Medicine/Internal Medicine)

(iii)   Weekly office visit for 5FU therapy for an ambulatory established patient with metastatic colon cancer and increasing shortness of breath. (Hematology/Oncology)

(iv)    Office visit with 50-year-old female, established patient, diabetic, blood sugar controlled by diet. She now complains of frequency of urination and weight loss, blood sugar of 320 and negative ketones on dipstick. (Internal Medicine)

(v)     Follow-up visit for a 60-year-old male whose post-traumatic seizures have disappeared on medication, and who now raises the question of stopping the medication. (Neurology)

(vi)    Follow-up office visit for a 45-year-old patient with rheumatoid arthritis on gold, methotrexate, or immunosuppressive therapy. (Rheumatology)

(vii)   Office evaluation on new onset RLQ pain in a 32-year-old woman, established patient. (Urology/General Surgery/Internal Medicine/Family Medicine)

(viii)  Office visit with 63-year-old female, established patient, with familial polyposis, after a previous colectomy and sphincter sparing procedure, now with tenesmus, mucus, and increased stool frequency. (Colon and Rectal Surgery)

433.    Accordingly, pursuant to the CPT Assistant, the moderately to highly severe presenting problems that could support the use of CPT code 99214 to bill for a follow-up patient examination typically are problems that pose a serious threat to the patient's health, or even the patient's life.

434.    Pursuant to the CPT Assistant, the use of CPT code 99213 to bill for a follow-up examination typically requires that the patient present with problems of low to moderate severity.

435.    The CPT Assistant provides various clinical examples of the types of presenting problems that qualify as problems of low to moderate severity, and thereby justify the use of CPT code 99213 to bill for a follow-up patient examination.

436.    For example, the CPT Assistant provides the following clinical examples of presenting problems that might qualify as problems of low to moderate severity, and therefore support the use of CPT code 99213 to bill for a follow-up patient examination:

(i)     Follow-up visit with 55-year-old male for management of hypertension, mild fatigue, on beta blocker/thiazide regimen. (Family Medicine/Internal Medicine)

(ii)    Follow-up office visit for an established patient with stable cirrhosis of the liver. (Gastroenterology)

(iii)   Outpatient visit with 37-year-old male, established patient, who is 3 years post total colectomy for chronic ulcerative colitis, presents for increased irritation at his stoma. (General Surgery)

(iv)    Routine, follow-up office evaluation at a three-month interval for a 77-year-old female with nodular small cleaved-cell lymphoma. (Hematology/Oncology)

(v)     Follow-up visit for a 70-year-old diabetic hypertensive patient with recent change in insulin requirement. (Internal Medicine/Nephrology)

(vi)     Quarterly follow-up office visit for a 45-year-old male, with stable chronic asthma, on steroid and bronchodilator therapy. (Pulmonary Medicine)

(vii)    Office visit with 80-year-old female established patient, for follow-up osteoporosis, status-post compression fractures. (Rheumatology)

437.     Accordingly, pursuant to the CPT Assistant, the low to moderate severity presenting problems that could support the use of CPT code 99213 to bill for a follow-up patient examination typically are problems that pose some ongoing, real threat to the patient's health.

438.     By contrast, and as set forth above, to the limited extent that the Insureds in the claims identified in Exhibit "1" suffered any injuries at all in their minor automobile accidents, the injuries were garden-variety soft tissue injuries such as sprains and strains.

439.     In keeping with the fact that the Insureds in the claims identified in Exhibit "1" almost never suffered any injuries more serious than garden-variety soft tissue injuries such as sprains and strains, in the vast majority of the claims identified in Exhibit "1" the Insureds did not seek treatment at any hospital as the result of their accidents.

440.     To the limited extent that the Insureds did report to a hospital after their accidents, they virtually always were briefly observed on an outpatient basis and then sent on their way after a few hours with, at most, a minor sprain or strain diagnosis.

441.     Furthermore, in the vast majority of cases, contemporaneous police reports indicated that the underlying accidents involved low-speed, low-impact collisions, that the Insureds' vehicles were drivable following the accidents, and that no one was seriously injured in the underlying accidents, or injured at all.

442.     Ordinary strains and sprains virtually always resolve after a short course of conservative treatment such as rest, ice, compression, and elevation, or no treatment at all.

443.     By the time the Insureds in the claims identified in Exhibit "1" presented at the Path Medical clinics for the putative follow-up examinations – typically weeks or even months after the underlying accidents – the Insureds either did not have any genuine presenting problems at all as the result of their minor automobile accidents, or their presenting problems were minimal.

444.     Even so, in the claims for follow-up examinations identified in Exhibit "1", Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino routinely billed for their putative follow-up examinations under CPT codes 99214 and 99213, and thereby falsely represented that the Insureds continued to suffer from presenting problems of either low to moderate severity or moderate to high severity at the time of the purported follow-up examinations.

445.     For example:

(i)      On February 27, 2014, an Insured named RG was involved in a minor automobile accident in a parking lot. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the airbags in RG's vehicle did not deploy, that the damage to RG's vehicle was minor and there was no damage to the other vehicle, that RG's vehicle was drivable following the accident, that RG drove the vehicle following the accident, and that RG was not injured in the accident. In keeping with the fact that RG was not seriously injured in the minor accident, RG did not visit any hospital following the accident. To the extent that RG suffered any health problems at all as the result of her minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following purported follow-up examinations of RG on April 30, 2014, and May 6, 2014 – between two and almost three months after the minor accident – Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO for the follow-up examinations using CPT codes 99214 and 99213, and thereby falsely represented that RG presented with problems of

either moderate to high severity or low to moderate severity.

(ii)     On May 12, 2014, an Insured named JE was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed collision, that the airbags in JE's vehicle did not deploy, and that no one was injured in the accident. In keeping with the fact that JE was not seriously injured in the minor accident, JE did not visit any hospital following the accident. To the extent that JE suffered any health problems at all as the result of his minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following purported follow-up examinations of JE on July 14, 2014, July 21, 2014, September 24, 2014, October 27, 2014, and November 3, 2014 – between two and six months after the minor accident – Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO for the follow-up examinations using CPT codes 99214 and 99213, and thereby falsely represented that JE presented with problems of either moderate to high severity or low to moderate severity. In keeping with the fact that JE had no presenting problems of moderate to high severity or low to moderate severity, Path Medical, Lewin, Permaul, Manion, and Wilensky actually stopped providing "treatment" to JE after the purported November 3, 2014 follow-up examination.

(iii)    On May 13, 2014, an Insured named LR was involved in a minor automobile accident. The contemporaneous police report indicated that the airbags in LR's vehicle did not deploy, and that no one was injured in the accident. In keeping with the fact that LR was not seriously injured in the minor accident, LR did not visit any hospital following the accident. To the extent that LR suffered any health problems at all as the result of her minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following purported follow-up examinations of LR on July 1, 2014, August 29, 2014, September 29, 2014, October 20, 2014, October 29, 2014, and December 1, 2014 – between two and seven months after the minor accident – Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO for the follow-up examinations using CPT codes 99214 and 99213, and thereby falsely represented that LR presented with problems of either moderate to high severity or low to moderate severity. In keeping with the fact that LR had no presenting problems of moderate to high severity or low to moderate severity, Path Medical, Lewin, Permaul, Manion, and Wilensky actually stopped providing "treatment" to LR after the purported December 1, 2014 follow-up examination.

(iv)     On August 11, 2014, an Insured named CB was involved in a minor automobile accident. In keeping with the fact that CB was not seriously

injured in the minor accident, CB did not visit any hospital following the accident. To the extent that CB suffered any health problems at all as the result of her minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following purported follow-up examinations of CB on September 4, 2014, and November 5, 2014 – between two and six weeks after the minor accident – Path Medical, Lewin, Permaul, Manion, and Marino billed GEICO for the follow-up examinations using CPT codes 99214 and 99213, and thereby falsely represented that CB presented with problems of either moderate to high severity or low to moderate severity.

(v)     On September 9, 2014, an Insured named NZ was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the damage to NZ's vehicle was minor, that the airbags in NZ's vehicle did not deploy, that NZ's vehicle was drivable following the accident, that NZ drove the vehicle following the accident, and that no one was injured in the accident. In keeping with the fact that NZ was not seriously injured in the minor accident, NZ did not visit any hospital following the accident. To the extent that NZ suffered any health problems at all as the result of her minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following purported follow-up examinations of NZ on October 10, 2014, October 20, 2014, November 26, 2014, December 12, 2014, and January 26, 2015 – between one and four months after the minor accident – Path Medical, Lewin, Permaul, Manion, and Qian billed GEICO for the follow-up examinations using CPT codes 99214 and 99213, and thereby falsely represented that NZ presented with problems of either moderate to high severity or low to moderate severity. In keeping with the fact that NZ had no presenting problems of moderate to high severity or low to moderate severity, Path Medical, Lewin, Permaul, Manion, and Qian actually stopped providing "treatment" to NZ after the purported January 26, 2015 follow-up examination.

(vi)    On November 18, 2014, an Insured named CS was involved in a minor automobile accident. The contemporaneous police report indicated that the airbags in CS's vehicle did not deploy and that no one was injured in the accident. In keeping with the fact that CS was not seriously injured in the minor accident, CS did not visit any hospital following the accident. To the extent that CS suffered any health problems at all as the result of her minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following purported follow-up examinations of CS on December 30, 2014, January 21, 2015, and March 24, 2015 – between one and four months after the minor accident – Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO for the

follow-up examinations using CPT code 99213, and thereby falsely represented that CS presented with problems of low to moderate severity. In keeping with the fact that CS had no presenting problems of low to moderate severity, Path Medical, Lewin, Permaul, Manion, and Wilensky actually stopped providing "treatment" to CS after the purported March 24, 2015 follow-up examination.

(vii)   On December 18, 2014, an Insured named TC was involved in a minor automobile accident. In keeping with the fact that TC was not seriously injured in the minor accident, TC did not visit any hospital following the accident. To the extent that TC suffered any health problems at all as the result of his minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following purported follow-up examinations of TC on March 6, 2015, June 5, 2015, and August 26, 2015 – between three and eight months after the minor accident – Path Medical, Lewin, Permaul, Manion, and Qian billed GEICO for the follow-up examinations using CPT codes 99214 and 99213, and thereby falsely represented that TC presented with problems of either moderate to high severity or low to moderate severity. In keeping with the fact that TC had no presenting problems of moderate to high severity or low to moderate severity, Path Medical, Lewin, Permaul, Manion, and Qian actually stopped providing "treatment" to TC after the purported August 26, 2015 follow-up examination.

(viii)   On December 18, 2014, an Insured named EH was involved in a minor automobile accident. In keeping with the fact that EH was not seriously injured in the minor accident, EH did not visit any hospital following the accident. To the extent that EH suffered any health problems at all as the result of his minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following purported follow-up examinations of EH on January 2, 2015, February 27, 2015, and July 27, 2015 – between three weeks and seven months after the minor accident – Path Medical, Lewin, Permaul, Manion, and Qian billed GEICO for the follow-up examinations using CPT codes 99214 and 99213, and thereby falsely represented that EH presented with problems of either moderate to high severity or low to moderate severity. In keeping with the fact that EH had no presenting problems of moderate to high severity or low to moderate severity, Path Medical, Lewin, Permaul, Manion, and Qian actually stopped providing "treatment" to EH after the purported July 27, 2015 follow-up examination.

(ix)   On May 3, 2015, an Insured named CP was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed collision, that the airbags in CP's vehicle did not deploy, and that

no one was injured in the accident. In keeping with the fact that CP was not seriously injured in the minor accident, CP did not visit any hospital following the accident. To the extent that CP suffered any health problems at all as the result of her minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following purported follow-up examinations of CP on June 17, 2015, July 2, 2015, July 17, 2015, and July 24, 2015 – between one and two and a half months after the minor accident – Path Medical, Lewin, Permaul, Manion, and Qian billed GEICO for the follow-up examinations using CPT codes 99214 and 99213, and thereby falsely represented that CP presented with problems of either moderate to high severity or low to moderate severity. In keeping with the fact that CP had no presenting problems of moderate to high severity or low to moderate severity, Path Medical, Lewin, Permaul, Manion, and Qian actually stopped providing "treatment" to CP after the purported July 24, 2015 follow-up examination.

(x)     On May 3, 2015, an Insured named EM was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed collision, that the airbags in EM's vehicle did not deploy, and that no one was injured in the accident. In keeping with the fact that EM was not seriously injured in the minor accident, EM did not visit any hospital following the accident. To the extent that EM suffered any health problems at all as the result of her minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following purported follow-up examinations of EM on June 17, 2015, July 2, 2015, and July 17, 2015 – between one and two and a half months after the minor accident – Path Medical, Lewin, Permaul, Manion, and Qian billed GEICO for the follow-up examinations using CPT codes 99214 and 99213, and thereby falsely represented that EM presented with problems of either moderate to high severity or low to moderate severity. In keeping with the fact that EM had no presenting problems of moderate to high severity or low to moderate severity, Path Medical, Lewin, Permaul, Manion, and Qian actually stopped providing "treatment" to EM after the purported July 17, 2015 follow-up examination.

(xi)    On December 22, 2015, an Insured named KS was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed collision, that the airbags in KS's vehicle did not deploy, and that no one was injured in the accident. In keeping with the fact that KS was not seriously injured in the minor accident, KS did not visit any hospital following the accident. To the extent that KS suffered any health problems at all as the result of her minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following purported follow-up examinations of KS on

January 25, 2016, January 28, 2016, March 2, 2016, and April 4, 2016 – between one and three months after the minor accident – Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO for the follow-up examinations using CPT codes 99214 and 99213, and thereby falsely represented that KS presented with problems of either moderate to high severity or low to moderate severity. In keeping with the fact that KS had no presenting problems of moderate to high severity or low to moderate severity, Path Medical, Lewin, Permaul, Manion, and Wilensky actually stopped providing "treatment" to KS after the purported April 4, 2016 follow-up examination.

(xii)   On February 25, 2016, an Insured named IV was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the airbags in IV's vehicle did not deploy, that IV's vehicle was drivable following the accident, that IV drove the vehicle following the accident, that the damage to IV's vehicle was minor, and that no one was injured in the accident. In keeping with the fact that IV was not seriously injured in the minor accident, IV did not visit any hospital following the accident. To the extent that IV suffered any health problems at all as the result of her minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following purported follow-up examinations of IV on April 7, 2016, May 10, 2016, and June 15, 2016 – between one and more than three months after the minor accident – Path Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO for the follow-up examinations using CPT codes 99214 and 99213, and thereby falsely represented that IV presented with problems of either moderate to high severity or low to moderate severity. In keeping with the fact that IV had no presenting problems of moderate to high severity or low to moderate severity, Path Medical, Lewin, Permaul, Manion, and Wilensky actually stopped providing "treatment" to IV after the purported June 15, 2016 follow-up examination.

(xiii)   On February 25, 2016, an Insured named AV was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the airbags in AV's vehicle did not deploy, that AV's vehicle was drivable following the accident, that the damage to AV's vehicle was minor, and that no one was injured in the accident. In keeping with the fact that AV was not seriously injured in the minor accident, AV did not visit any hospital following the accident. To the extent that AV suffered any health problems at all as the result of her minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following purported follow-up examinations of AV on April 7, 2016, May 10, 2016, and June 15, 2016 – between one and more than three months after the minor accident – Path

Medical, Lewin, Permaul, Manion, and Wilensky billed GEICO for the follow-up examinations using CPT codes 99214 and 99213, and thereby falsely represented that AV presented with problems of either moderate to high severity or low to moderate severity. In keeping with the fact that AV had no presenting problems of moderate to high severity or low to moderate severity, Path Medical, Lewin, Permaul, Manion, and Wilensky actually stopped providing "treatment" to AV after the purported June 15, 2016 follow-up examination.

(xiv)   On February 27, 2016, an Insured named JN was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-impact collision, that the airbags in JN's vehicle did not deploy, that JN's vehicle was drivable following the accident, that JN drove the vehicle following the accident, that the damage to JN's vehicle was minor, and that no one was injured in the accident. In keeping with the fact that JN was not seriously injured in the minor accident, JN did not visit any hospital following the accident. To the extent that JN suffered any health problems at all as the result of her minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following purported follow-up examinations of JN on March 14, 2016, April 15, 2016, and June 3, 2016 – between two weeks and more than three months after the minor accident – Path Medical, Lewin, Permaul, Manion, and Qian billed GEICO for the follow-up examinations using CPT codes 99214 and 99213, and thereby falsely represented that JN presented with problems of either moderate to high severity or low to moderate severity.

(xv)   On March 18, 2016, an Insured named JG was involved in a minor automobile accident. In keeping with the fact that JG was not seriously injured in the minor accident, JG did not visit any hospital following the accident. To the extent that JG suffered any health problems at all as the result of his minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following a purported follow-up examination of JG on September 26, 2016 – more than six months after the minor accident – Path Medical, Lewin, Permaul, Manion, and Marino billed GEICO for the follow-up examinations using CPT code 99214 and thereby falsely represented that JG presented with problems of moderate to high severity. In keeping with the fact that JG had no presenting problems of moderate to high severity, Path Medical, Lewin, Permaul, Manion, and Marino actually stopped providing "treatment" to JG after the purported September 26, 2016 follow-up examination.

(xvi)   On September 14, 2016, an Insured named MC was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the airbags in MC's

vehicle did not deploy, that MC's vehicle was drivable following the accident, that MC drove the vehicle following the accident, that the damage to MC's vehicle was minor, and that no one was injured in the accident. In keeping with the fact that MC was not seriously injured in the minor accident, MC did not visit any hospital following the accident. To the extent that MC suffered any health problems at all as the result of his minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following purported follow-up examinations of MC on October 20, 2016, and February 13, 2017 – between one and five months after the minor accident – Path Medical, Path Holdings, Lewin, Permaul, Manion, and Qian billed GEICO for the follow-up examinations using CPT codes 99214 and 99213, and thereby falsely represented that MC presented with problems of either moderate to high severity or low to moderate severity. In keeping with the fact that MC had no presenting problems of low to moderate severity or moderate to high severity, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Qian actually stopped providing "treatment" to MC after the purported February 13, 2017 follow-up examination.

(xvii)  On November 9, 2016, an Insured named GE was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the airbags in GE's vehicle did not deploy, that the damage to GE's vehicle was minor, that GE's vehicle was drivable following the accident, that GE drove the vehicle following the accident, and that GE complained of pain in her leg but denied any other injuries and refused medical attention. In keeping with the fact that GE was not seriously injured in the minor accident, GE did not visit any hospital following the accident. To the extent that GE suffered any health problems at all as the result of her minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following a purported follow-up examination of GE on March 10, 2017 – four months after the minor accident – Path Medical, Path Holdings, Lewin, Permaul, Manion, and Qian billed GEICO for the follow-up examination using CPT code 99214, and thereby falsely represented that GE presented with problems of moderate to high severity. In keeping with the fact that GE had no presenting problems of moderate to high severity, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Qian actually stopped providing "treatment" to GE after the purported March 10, 2017 follow-up examination.

(xviii)  On November 29, 2016, an Insured named KJ was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the airbags in KJ's vehicle did not deploy, that KJ's vehicle was drivable following the accident, that KJ drove the vehicle following the accident, and that no one was injured

in the accident. In keeping with the fact that KJ was not seriously injured in the minor accident, KJ did not visit any hospital following the accident. To the extent that KJ suffered any health problems at all as the result of his minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following purported follow-up examinations of KJ on January 9, 2017, and February 24, 2017 – between one and three months after the minor accident – Path Medical, Path Holdings, Lewin, Permaul, Manion, and Wilensky billed GEICO for the follow-up examinations using CPT code 99213, and thereby falsely represented that KJ presented with problems of low to moderate severity. In keeping with the fact that KJ had no presenting problems of moderate to high severity or low to moderate severity, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Wilensky actually stopped providing "treatment" to KJ after the purported February 24, 2017 follow-up examination.

(xix)    On January 15, 2017, an Insured named SF was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-impact collision, that the airbags in SF's vehicle did not deploy, that the damage to SF's vehicle was minor, that SF's vehicle was drivable following the accident, that SF drove the vehicle following the accident, and that SF was not injured in the accident. In keeping with the fact that SF was not seriously injured in the minor accident, SF did not visit any hospital following the accident. To the extent that SF suffered any health problems at all as the result of her minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following a purported follow-up examination of SF on March 7, 2017 – more than one month after the minor accident – Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman billed GEICO for the follow-up examination using CPT code 99213, and thereby falsely represented that SF presented with problems of low to moderate severity. In keeping with the fact that SF had no presenting problems of low to moderate severity, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman actually stopped providing "treatment" to SF after the purported March 7, 2017 follow-up examination.

(xx)    On February 11, 2017, an Insured named JA was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-impact collision, that the airbags in JA's vehicle did not deploy, that the damage to JA's vehicle was minor, that JA's vehicle was drivable following the accident, and that JA was not injured in the accident. In keeping with the fact that JA was not seriously injured in the minor accident, JA did not visit any hospital following the accident. To the extent that JA suffered any health problems at all as the result of her minor accident, they were of low severity at the outset, and had completely resolved within one

month of the minor accident. Even so, following a purported follow-up examination of JA on April 14, 2017 – more than two months after the minor accident – Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman billed GEICO for the follow-up examination using CPT code 99213, and thereby falsely represented that JA presented with problems of low to moderate severity. In keeping with the fact that JA had no presenting problems of low to moderate severity, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman actually stopped providing "treatment" to JA after the purported April 14, 2017 follow-up examination.

(xxi)   On February 11, 2017, an Insured named JM was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-impact collision, that the airbags in JM's vehicle did not deploy, that the damage to JM's vehicle was minor, that JM's vehicle was drivable following the accident, and that JM was not injured in the accident. In keeping with the fact that JM was not seriously injured in the minor accident, JM did not visit any hospital following the accident. To the extent that JM suffered any health problems at all as the result of her minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following a purported follow-up examination of JM on May 16, 2017 – more than three months after the minor accident – Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman billed GEICO for the follow-up examination using CPT code 99214, and thereby falsely represented that JA presented with problems of moderate to high severity. In keeping with the fact that JM had no presenting problems of moderate to high severity, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman actually stopped providing "treatment" to JM after the purported May 16, 2017 follow-up examination.

(xxii)   On February 16, 2017, an Insured named EW was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-impact collision, that the airbags in EW's vehicle did not deploy, that the damage to EW's vehicle was minor, that EW's vehicle was drivable following the accident, that EW drove the vehicle following the accident, and that EW was not injured in the accident. In keeping with the fact that EW was not seriously injured in the minor accident, EW did not visit any hospital following the accident. To the extent that EW suffered any health problems at all as the result of his minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following a purported follow-up examination of EW on April 11, 2017 – two months after the minor accident – Path Medical, Path Holdings, Lewin, Permaul, Manion, and Marino billed GEICO for the follow-up examination using CPT code 99214, and thereby falsely represented that EW presented with problems of moderate to high severity. In keeping with the

fact that EW had no presenting problems of moderate to high severity, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Marino actually stopped providing "treatment" to EW after the purported April 11, 2017 follow-up examination.

(xxiii) On February 26, 2017, an Insured named LF was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the airbags in LF's vehicle did not deploy, that the damage to LF's vehicle was minor, that LF's vehicle was drivable following the accident, that LF drove the vehicle following the accident, and that no one was injured in the accident. In keeping with the fact that LF was not seriously injured in the minor accident, LF did not visit any hospital following the accident. To the extent that LF suffered any health problems at all as the result of her minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following purported follow-up examinations of LF on March 22, 2017, April 24, 2017, and April 26, 2017 – between one and two months after the minor accident – Path Medical, Path Holdings, Lewin, Permaul, Manion, and Wilensky billed GEICO for the follow-up examinations using CPT codes 99214 and 99213, and thereby falsely represented that LF presented with problems of either moderate to high severity or low to moderate severity.

(xxiv) On March 11, 2017, an Insured named OC was involved in a minor automobile accident. In keeping with the fact that the accident was minor and that OC was not injured in the accident, there was no police report generated as a result of the accident, and OC did not visit any hospital following the accident. To the extent that OC suffered any health problems at all as the result of his minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following purported follow-up examinations of OC on March 31, 2017, May 12, 2017, and June 24, 2017 – between three weeks and three months after the minor accident – Path Medical, Path Holdings, Lewin, Permaul, Manion, and Qian billed GEICO for the follow-up examinations using CPT codes 99214 and 99213, and thereby falsely represented that OC presented with problems of either moderate to high severity or low to moderate severity.

(xxv) On March 17, 2017, an Insured named CC was involved in a minor automobile accident. The contemporaneous police report indicated that that the airbags in CC's vehicle did not deploy and that no one was injured in the accident. In keeping with the fact that CC was not seriously injured in the minor accident, CC did not visit any hospital following the accident. To the extent that CC suffered any health problems at all as the result of her minor accident, they were of low severity at the outset, and had completely resolved

within one month of the minor accident. Even so, following purported follow-up examinations of CC on April 7, 2017, and May 5, 2017 – between one and two months after the minor accident – Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman billed GEICO for the follow-up examinations using CPT codes 99214 and 99213, and thereby falsely represented that CC presented with problems of either moderate to high severity or low to moderate severity. In keeping with the fact that CC had no presenting problems of low to moderate severity or moderate to high severity, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman actually stopped providing "treatment" to CC after the purported May 5, 2017 follow-up examination.

(xxvi)  On March 25, 2017, an Insured named MW was involved in a minor automobile accident. The contemporaneous police report indicated that MW's vehicle was drivable following the accident, that the airbags in MW's vehicle did not deploy, and that no one was injured in the accident. In keeping with the fact that MW was not seriously injured in the minor accident, MW did not visit any hospital following the accident. To the extent that MW suffered any health problems at all as the result of her minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following a purported follow-up examination of MW on April 25, 2017 – one month after the minor accident – Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman billed GEICO for the follow-up examination using CPT code 99213, and thereby falsely represented that MW presented with problems of low to moderate severity.

(xxvii) On April 11, 2017, an Insured named LP was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the airbags in LP's vehicle did not deploy, that there was minor damage to LP's vehicle, and that no one was injured in the accident. In keeping with the fact that LP was not seriously injured in the minor accident, LP did not visit any hospital following the accident. To the extent that LP suffered any health problems at all as the result of his minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following purported follow-up examinations of LP on April 25, 2017, and May 3, 2017 – between two weeks and one month after the minor accident – Path Medical, Path Holdings, Lewin, Permaul, Manion, and Marino billed GEICO for the follow-up examination using CPT codes 99214 and 99213, and thereby falsely represented that LP presented with problems of either moderate to high severity or low to moderate severity.

(xxviii) On April 12, 2017, an Insured named VH was involved in a minor automobile accident. The contemporaneous police report indicated that the

accident was a low-impact collision, that the airbags in VH's vehicle did not deploy, that there was minor damage to VH's vehicle, that VH's vehicle was drivable following the accident, that VH drove the vehicle following the accident, and that no one was injured in the accident. In keeping with the fact that VH was not seriously injured in the minor accident, VH did not visit any hospital following the accident. To the extent that VH suffered any health problems at all as the result of his minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following purported a follow-up examination of VH on May 26, 2017 – more than one month after the minor accident – Path Medical, Path Holdings, Lewin, Permaul, Manion, and Wilensky billed GEICO for the follow-up examination using CPT code 99214, and thereby falsely represented that OA presented with problems moderate to high severity.

(xxix)   On April 13, 2017, an Insured named OA was involved in a minor automobile accident. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the airbags in OA's vehicle did not deploy, that there was minor damage to OA's vehicle, that OA's vehicle was drivable following the accident, that OA drove the vehicle following the accident, and that no one was injured in the accident. In keeping with the fact that OA was not seriously injured in the minor accident, OA did not visit any hospital following the accident. To the extent that OA suffered any health problems at all as the result of his minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following purported a follow-up examination of OA on June 19, 2017 – two months after the minor accident – Path Medical, Path Holdings, Lewin, Permaul, Manion, and Qian billed GEICO for the follow-up examination using CPT code 99213, and thereby falsely represented that OA presented with problems low to moderate severity.

(xxx)   On May 4, 2017, an Insured named BF was involved in a minor automobile accident in a parking lot. The contemporaneous police report indicated that the accident was a low-speed, low-impact collision, that the airbags in BF's vehicle did not deploy, that there was minor damage to BF's vehicle and no damage to the other vehicle, and that no one was injured in the accident. In keeping with the fact that BF was not seriously injured in the minor accident, BF did not visit any hospital following the accident. To the extent that BF suffered any health problems at all as the result of her minor accident, they were of low severity at the outset, and had completely resolved within one month of the minor accident. Even so, following a purported follow-up examination of BF on July 13, 2017 – more than two months after the minor accident – Path Medical, Path Holdings, Lewin, Permaul, Manion, and Marino billed GEICO for the follow-up examination using CPT code 99214, and thereby falsely represented that BF presented with problems of either

moderate to high severity. In keeping with the fact that BF had no presenting problems of moderate to high severity, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Marino actually stopped providing "treatment" to BF after the purported July 13, 2017 follow-up examination.

446.    These are only representative examples. In all of the claims for follow-up examinations identified in Exhibit "1", Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino falsely represented that the Insureds presented with problems of low to moderate severity, or even moderate to high severity, when in fact the Insureds either did not have any genuine presenting problems at all as the result of their minor automobile accidents at the time of the follow-up examinations, or else their presenting problems were minimal.

447.    In the claims for initial examinations identified in Exhibit "1", Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino routinely falsely represented that the Insureds presented with problems of either low to moderate severity or moderate to high severity in order to create a false basis for their charges for the examinations under CPT codes 99213 and 99214, because follow-up examinations billable under CPT codes 99213 and 99214 are reimbursable at higher rates than examinations involving presenting problems of minimal severity, or no severity.

448.    In the claims for follow-up examinations identified in Exhibit "1", Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino also routinely falsely represented that the Insureds presented with problems of either low to moderate severity or moderate to high severity in order to create a false basis for the other Fraudulent Services that the Defendants purported to provide to the Insureds, including additional, medically unnecessary follow-up examinations and physical therapy.

449.    Moreover, in the claims for follow-up examinations identified in Exhibit "1", Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino routinely falsely represented that the Insureds presented with problems of moderate severity in order to create a false basis for personal injury lawsuits filed by the personal injury attorneys – including Kanner, Pintaluga, and Kanner & Pintaluga – who referred insureds to the Path Medical clinics pursuant to the Defendants' collusive and unlawful cross-referral scheme.

**(ii)    Misrepresentations Regarding the Results of the Follow-Up Examinations**

450.    What is more, pursuant to the CPT Assistant, when Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino billed for their putative follow-up examinations under CPT code 99214, they represented that Wilensky, Cheesman, Qian, Marino, and the physicians and chiropractors they purported to supervise, performed at least two of the following three components: (i) took a "detailed" patient history; (ii) conducted a "detailed" physical examination; and (iii) engaged in medical decision-making of "moderate complexity".

451.    Similarly, pursuant to the CPT Assistant, when Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino billed for their putative follow-up examinations under CPT code 99213, they represented that Wilensky, Cheesman, Qian, Marino, and the physicians and chiropractors they purported to supervise, performed at least two of the following three components: (i) took an "expanded problem focused" patient history; (ii) conducted an "expanded problem focused physical examination"; and (iii) engaged in medical decision-making of "low complexity".

452.   In actuality, however, in the claims for follow-up examinations identified in Exhibit "1", neither Wilensky, Cheesman, Qian, Marino, nor any of the physicians and chiropractors they purported to supervise, ever recorded any legitimate patient histories, conducted any legitimate physical examinations, or engaged in any legitimate medical decision-making at all.

453.   Rather, following their purported follow-up examinations, Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino simply: (i) reiterated the false, boilerplate "diagnoses" from the Insureds' initial examinations; and either  (ii) referred the Insureds back to Path Medical for even more medically unnecessary physical therapy services, despite the fact that the Insureds purportedly already had received extensive physical therapy services from Path Medical that supposedly had not been successful in resolving their purported pain symptoms; or (iii) discharged the Insureds from "treatment", to the extent that their PIP Benefits had been exhausted.

454.   In a legitimate clinical setting, each individual patient's physical therapy schedule, and the specific physical therapy modalities that will be used, must be tailored to the specific patient's circumstances, symptomatology, and presentment.

455.   In a legitimate clinical setting, the nature of, extent of, and schedule for physical therapy is constantly adjusted for each individual patient based on each patient's treatment progress, as assessed during each patient's follow-up examinations and on an ongoing basis as they receive the physical therapy.

456.   By contrast, at the Path Medical clinics, the nature and extent of the physical therapy that each Insured purportedly received was pre-determined, and had no legitimate

connection to the Insureds' individual circumstances, presentment, or progress through the Defendants' fraudulent treatment and billing protocol.

457.     The nature and extent of the physical therapy that each Insured purportedly received at the Path Medical clinics was determined by factors that were totally unrelated to the Insureds' individual symptoms and presentment at the time of the purported follow-up examinations.

458.     Specifically, the nature and extent of the physical therapy that each Insured purportedly received at the Path Medical clinics was determined by: (i) the amount of remaining PIP Benefits that the Insureds had; and (ii) the needs of the personal injury attorneys – including Kanner, Pintaluga, and Kanner & Pintaluga – who referred Insureds to the Path Medical clinics pursuant to the Defendants' collusive and unlawful cross-referral scheme.

459.     Indeed, in many cases, the personal injury attorneys who referred Insureds to the Path Medical clinics – rather than the licensed health care providers who purported to "treat" the Insureds at the Path Medical clinics – were responsible for determining whether and to what extent the Insureds would receive physical therapy at the clinics.

460.     For example, one Insured, CN, was cross-referred to Path Medical-Broward by the Law Office of Mario J. Louis pursuant to the Defendants' collusive and unlawful cross-referral scheme. When the Law Office of Mario J. Louis cross-referred CN to Path Medical-Broward, they told her that she had to pursue treatment at Path Medical-Broward so they could build her case, and also told her that she needed to go to therapy for three months to show that she was really hurt.

461.    However, because CN was not seriously injured in the underlying accident, she only treated at Path Medical-Broward for a short period of time, and – as a result – the Law Office of Mario J. Louis dropped her case.

462.    In fact, Lewin and his associates have for years permitted the attorneys in the 411-PAIN "referral network" to dictate the extent to which Insureds received medically unnecessary physical therapy. For example, and as set forth above, the 2012 WKMG-TV report recounted the experiences of three automobile accident victims who: (i) called 1-800-411-PAIN; (ii) were referred not only to one of Lewin's chiropractic offices (the predecessors of the current Path Medical clinics), but also to personal injury attorneys; and (iii) were told by the personal injury attorneys how often they had to report to the Lewin chiropractic offices for "treatment".

463.    Similarly, and as set forth above, the Florida Bar Special Committee's Final Report recounted the experience of another automobile accident victim, who: (i) called 1-800-411-PAIN; (ii) was referred to a clinic (which was, upon information and belief, owned by Lewin); (iii) was told she had to meet with a personal injury attorney before she could see a doctor; and (iv) was told by the attorney – before she even saw a doctor – the approximate length of the "treatment" she supposedly would require.

464.    The phony "follow-up examinations" that Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino purported to provide the Insureds in the claims identified in Exhibit "1" were medically useless, and played no legitimate role in the treatment or care of the Insureds, because the putative "results" of the

examinations were pre-determined to comport with the Defendants' fraudulent and medically unnecessary treatment protocol.

465.   In the claims for follow-up examinations identified in Exhibit "1", Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino routinely fraudulently misrepresented that the examinations were lawfully provided and reimbursable, when in fact they were neither lawfully provided nor reimbursable, because:

(i)    the putative examinations were illusory, with outcomes that were pre-determined to result in substantially-identical, phony "diagnoses" and treatment recommendations, regardless of the Insureds' true individual circumstances and presentment;

(ii)   the charges for the putative examinations misrepresented the nature and extent of the examinations; and

(iii)  Path Medical never was eligible to collect PIP Benefits in connection with the examinations in the first instance, inasmuch as it unlawfully was operated in violation of the Clinic Act, the Self-Referral Act, the Patient Brokering Act, the Anti-Kickback Statute, and the Chiropractor Advertising Laws.

466.   In this context, Wilensky, Cheesman, Qian, and Marino – who at all relevant times purported to serve as the "medical directors" of the Path Medical clinics– did not, and could not have, "[c]onduct[ed] systematic reviews of clinic billings to ensure that the billings are not fraudulent or unlawful." See Fla. Stat. § 400.9935(1).

467.   Had Wilensky, Cheesman, Qian, and Marino actually fulfilled their statutory role as the medical directors at the Path Medical clinics, they would have noted – among other things – that the Defendants routinely fraudulently represented in Path Medical's billing that the putative follow-up examinations were legitimately and lawfully performed.

468.    Wilensky, Cheesman, Qian, and Marino failed to do so, because they never actually served as legitimate medical directors at the Path Medical clinics in the first instance.

**3.      The Fraudulent Charges for Physical Therapy Services**

469.    In addition to the fraudulent initial examinations and follow-up examinations, Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino virtually always purported to subject each of the Insureds in the claims identified in Exhibit "1" to between two and three months of medically unnecessary physical therapy services, in keeping with the fact that the schedule for the physical therapy was pre-determined, and not tailored to the unique circumstances of each individual Insured.

470.    As set forth in Exhibit "1", Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino then billed the purported physical therapy services to GEICO under:

(i)      CPT code 97010, for putative hot/cold pack application, resulting in charges ranging from $12.00 to $40.00 for each round of hot/cold pack therapy they purported to provide;

(ii)     CPT code 97012, for putative mechanical traction therapy, resulting in charges ranging from  $27.50 to $55.00 for each round of mechanical traction they purported to provide;

(iii)    CPT code 97018, for putative paraffin bath therapy, resulting in charges ranging from  $35.00 to $45.00 for each round of paraffin bath therapy they purported to provide;

(iv)     CPT code 97035, for putative ultrasound, resulting in charges ranging from $30.89 to $55.00 for each round of ultrasound they purported to provide;

(v)      CPT code 97110, for putative therapeutic exercises, resulting in charges ranging from $75.00 to $80.00 for each round of therapeutic exercises they purported to provide;

(vi)     CPT code 97112, for putative neuromuscular reeducation, resulting in charges ranging from $75.00 to $80.00 for each round of neuromuscular reeducation they purported to provide;

(vii)    CPT code 97140, for putative manual therapy, resulting in a charges ranging from $70.00 to $75.00 for each round of manual therapy they purported to provide;

(viii)   CPT code 97150, for putative group therapeutic procedures, resulting in a charges ranging from $41.90 to $52.00 for each round of group therapy procedures they purported to provide;

(ix)     CPT code 97530 for putative therapeutic activities, resulting in a charge of $75.00 for each round of manual therapy they purported to provide; and

(x)      Health Care Common Procedure Coding System ("HCCPCS") code G0283 for putative electric stimulation treatments, resulting in charges ranging from $40.00 to $55.00 for each round of electrical stimulation they purported to provide;

471.    In the claims for physical therapy services identified in Exhibit "1", the charges for the physical therapy services were fraudulent in that they misrepresented Path Medical's eligibility to collect PIP Benefits in the first instance.

472.    In fact, and as set forth above, Path Medical never was eligible to collect PIP Benefits, inasmuch as it was operated in violation of the licensing requirements set forth in the Clinic Act, as well as the Self-Referral Act, the Patient Brokering Act, the Anti-Kickback Statute, and the Chiropractor Advertising Laws.

473.    What is more, in a legitimate clinical setting, the individual physical therapy services that are provided to an individual patient should be tailored to that patient's individual circumstances and presentment.

474.    In keeping with the fact that the purported physical therapy services that were billed through Path Medical to GEICO were not medically necessary, Path Medical, Path

Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino did not tailor the chiropractic and physical therapy services they purported to provide to each Insured's individual circumstances and presentment.

475.    There are a large number of individual types of physical therapy services that potentially can be provided to a patient, depending on the patient's individual symptomatology and needs.

476.    However, Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino routinely purported to provide the same handful of chiropractic and physical therapy "treatments" to virtually every Insured in the claims identified in Exhibit "1", on substantially the same schedule, without regard for the Insureds' individual circumstances.

477.    Specifically, Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino purported to provide virtually every Insured in the claims identified in Exhibit "1" with two-to-three months of chiropractic and physical therapy services, consisting of chiropractic adjustments, hot/cold pack application, mechanical traction, paraffin bath, ultrasound, therapeutic exercises, neuromuscular reeducation, manual therapy, therapeutic activities, and electric stimulation. This, despite the fact that the Insureds were differently situated, and could not possibly all have required a substantially-identical course of physical therapy treatment.

4.      **The Fraudulent Charges for Services That Never Were Performed in the First Instance**

478.    Not only did Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino falsely represent that Path Medical was eligible to

collect PIP Benefits, when in fact it never was eligible to collect PIP Benefits because it was operated in violation of the Clinic Act, the Self-Referral Act, the Patient Brokering Act, the Anti-Kickback Statute, and the Chiropractor Advertising Laws, and not only did they misrepresent the nature, extent, and reimbursability of the Fraudulent Services, but they also routinely billed GEICO for services that they never provided in the first instance.

479.   Numerous Insureds have provided sworn testimony to the effect that they never received the services that were billed to GEICO through Path Medical.

480.   For example:

(i)    During an examination under oath on July 27, 2017, an Insured named KL gave testimony indicating that she never received any manual therapy at Path Medical-North Tampa, and that she only received one ultrasound treatment and one chiropractic manipulation at Path Medical-North Tampa. Even so, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman billed GEICO $142.70 for two manual therapy treatments they falsely purported to provide to KL, $123.56 for four ultrasound treatments they falsely purported to provide to KL, and $585.36 for six chiropractic manipulation treatments they falsely purported to provide to KL.

(ii)   During an examination under oath on August 17, 2017, an Insured named TT gave testimony indicating that he never received any hot/cold pack treatments from Path Medical-Broward. Even so, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Qian billed GEICO $270.00 for nine hot/cold pack treatments they falsely purported to provide to TT.

(iii)  During an examination under oath on August 17, 2017, an Insured named CR gave testimony indicating that she never received any mechanical traction or chiropractic manipulation at Path Medical-Lakeland. Even so, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman billed GEICO $192.35 for five mechanical traction treatments they falsely purported to provide to CR, and $487.80 for five chiropractic manipulation treatments they falsely purported to provide to CR.

(iv)   During an examination under oath on August 29, 2017, an Insured named GC gave testimony indicating that he never received any hot/cold pack treatments from Path Medical-Longwood. Even so, Path Medical, Path Holdings, Lewin,

Permaul, Manion, and Marino billed GEICO $187.00 for eight hot/cold pack treatments they falsely purported to provide to GC.

(v)     On August 31, 2017, an Insured named AS swore that she never received any hot/cold pack or mechanical traction treatments at Path Medical-OBT. Even so, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Marino billed GEICO $72 for six hot/cold pack treatments they falsely purported to provide to AS, and $230.82 for six mechanical traction treatments they falsely purported to provide to AS.

(vi)    On September 1, 2017, an Insured named IM swore that she never received any x-rays, neuromuscular reeducation, or chiropractic manipulation at Path Medical-Dade, and that she only received four massage treatments and one electrical stimulation treatment at Path Medical-Dade. Even so, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Wilensky billed GEICO $515.00 for three x-rays they falsely purported to provide to IM, $480.00 for four neuromuscular reeducation treatments they falsely purported to provide to IM, $570.00 for six chiropractic manipulation treatments they falsely purported to provide to IM, $432.00 for six massage treatments they falsely purported to provide to IM, and $350.00 for seven electrical stimulation treatments they falsely purported to provide to IM.

(vii)   During an examination under oath on September 5, 2017, an Insured named TS gave testimony indicating that she did not receive any treatment at all at Path Medical-South Tampa on June 1, 2017, June 6, 2017, June 13, 2017, or June 21, 2017. Even so, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman billed GEICO $2,850.00 for various treatments they falsely purported to provide to TS on those dates.

(viii)  On September 6, 2017, an Insured named JM swore that she never received any hot/cold pack treatments at Path Medical-Hollywood and Path Medical-Pines. Even so, Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, and Qian billed GEICO $50.00 for two hot/cold pack treatments they falsely purported to provide to JM.

(ix)    During an examination under oath on September 18, 2017, an Insured named SA gave testimony indicating that she never received any lumbar support belt from Path Medical-Hollywood. Even so, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Wilensky billed GEICO $800.00 for a lumbar support belt they falsely purported to provide to SA.

(x)     During an examination under oath on September 19, 2017, an Insured named DY gave testimony indicating that she never received any lumbar support belt or electrodes from Path Medical-Coral Springs Margate, and that she did not

receive any hot/cold pack, ultrasound, massage, or chiropractic manipulation treatments at Path Medical-Coral Springs Margate. Even so, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Wilensky billed GEICO $815.00 for a lumbar support belt and electrodes they falsely purported to provide to DY, as well as an additional $221.00 for hot/cold pack, ultrasound, massage, and chiropractic manipulation treatments they falsely purported to provide to DY.

(xi)    During an examination under oath on September 21, 2017, an Insured named SZ gave testimony indicating that he never received any chiropractic manipulation treatments from Path Medical-Lakeland. Even so, Path Medical, Path Holdings, Lewin, Permaul, Manion, and Cheesman billed GEICO $419.75 for six chiropractic manipulation treatments they falsely purported to provide to SZ.

481.    These are only representative examples. In the claims identified in Exhibit "1", numerous Insureds provided sworn statements to insurance investigators to the effect that Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino were billing for services they had not rendered, and which contradict the representations made by them in their bills to GEICO regarding the physical therapy services they purported to provide the Insureds.

## III.    The Fraudulent Claims the Defendants Submitted or Caused to be Submitted to GEICO

482.    To support their fraudulent charges, Path Medical, Path Holdings, Lewin, Permaul, Manion, Wilensky, Cheesman, Qian, and Marino – with the knowing and indispensable assistance of their co-Defendants – systematically submitted or caused to be submitted thousands of HCFA-1500 forms and treatment reports through Path Medical to GEICO seeking payment for the Fraudulent Services for which the Defendants were not entitled to receive payment.

483. The claims that the Defendants submitted or caused to be submitted to GEICO

were false and misleading in the following, material respects:

(i) The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that Path Medical was in compliance with the Clinic Act, the Self-Referral Act, the Patient Brokering Act, the Anti-Kickback Statute, and the Chiropractor Advertising Laws, and therefore was eligible to collect PIP Benefits in the first instance. In fact, Path Medical never was in compliance with the Clinic Act, the Self-Referral Act, the Patient Brokering Act, the Anti-Kickback Statute, and the Chiropractor Advertising Laws, and never was eligible to collect PIP Benefits, because of the fraudulent scheme described above.

(ii) The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement. In fact, the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement, because: (a) they were medically unnecessary and provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; and (b) they were provided – to the extent that they were provided at all – in pervasive violation of the Clinic Act, the Self-Referral Act, the Patient Brokering Act, the Anti-Kickback Statute, and the Chiropractor Advertising Laws.

(iii) The HCFA-1500 forms and treatment reports submitted or caused to be submitted by the Defendants uniformly misrepresented to GEICO that the Fraudulent Services were medically necessary and, in many cases, misrepresented to GEICO that the Fraudulent Services actually were performed. In fact, the Fraudulent Services frequently were not performed at all and, to the extent that they were performed, they were not medically necessary and were performed as part of a pre-determined fraudulent treatment and billing protocol designed solely to financially enrich the Defendants, not to benefit the Insureds who supposedly were subjected to them.

(iv) The HCFA-1500 forms and treatment reports submitted or caused to be submitted by and on behalf of the Defendants uniformly misrepresented and exaggerated the level of the Fraudulent Services and the nature of the Fraudulent Services that purportedly were provided.

484. The Defendants' fraudulent scheme is another in a long line of insurance fraud

scams aimed at Florida consumers and insurers. It is part of an insurance fraud epidemic that – in 2014-2015 alone – led to almost 1,200 convictions in Florida. <u>See</u> Florida Department of Financial Services, Division of Insurance Fraud Annual Report for Fiscal Year 2014-2015.

**IV.     The Defendants' Fraudulent Concealment and GEICO's Justifiable Reliance**

485.     The Defendants were legally and ethically obligated to act honestly and with integrity in connection with their performance of the Fraudulent Services and their submission of charges to GEICO

486.     To induce GEICO to promptly pay the fraudulent charges for the Fraudulent Services, the Defendants have systemically concealed their fraud and have gone to great lengths to accomplish this concealment.

487.     For instance, the Defendants knowingly misrepresented and concealed facts concerning their secret, collusive, and unlawful self-referral, cross-referral, and patient brokering arrangements in order to conceal them from GEICO and other insurers.

488.     What is more, the Defendants knowingly misrepresented and concealed facts related to the Fraudulent Services in an effort to prevent discovery that the Path Medical clinics lacked legitimate medical directors, and therefore were ineligible to collect PIP Benefits in the first instance.

489.     Furthermore, the Defendants knowingly misrepresented and concealed facts in order to prevent GEICO from discovering that the Fraudulent Services were medically unnecessary and were performed – to the extent that they were performed at all – pursuant to a fraudulent pre-determined protocol designed to maximize the charges that could be submitted, not to benefit the Insureds who supposedly were subjected to them.

490.     Likewise, the Defendants knowingly misrepresented and concealed facts in order to prevent GEICO from discovering that the Fraudulent Services frequently never were performed in the first instance.

491.     The Defendants have hired law firms to pursue collection of the fraudulent charges for the Fraudulent Services from GEICO and other insurers, including Landau & Associates. These law firms routinely file expensive and time-consuming litigation against GEICO and other insurers if the charges are not promptly paid in full.

492.     GEICO is under statutory and contractual obligations to promptly and fairly process claims within 30 days. The facially-valid documents submitted to GEICO in support of the fraudulent charges at issue, combined with the material misrepresentations and acts of concealment described above, were designed to and did cause GEICO to rely upon them. As a result, GEICO has incurred damages of more than $15,000,000.00.

493.     Based upon the Defendants' material misrepresentations and other affirmative acts to conceal their fraud from GEICO, GEICO did not discover and could not reasonably have discovered that its damages were attributable to fraud until shortly before it filed this Complaint.

## FIRST CAUSE OF ACTION
### Against Path Medical
### (Declaratory Judgment – 28 U.S.C. §§ 2201 and 2202)

494.     GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 493 above.

495.     There is an actual case in controversy between GEICO and Path Medical regarding more than $200,000.00 in pending fraudulent claims for the Fraudulent Services that

have been submitted to GEICO.

496.    Path Medical has no right to receive payment for any pending bills submitted to GEICO because it unlawfully was operated in violation of the Clinic Act, Self-Referral Act, Patient Brokering Act, Anti-Kickback Statute, and Chiropractor Advertising Laws.

497.    Path Medical has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not lawfully provided.

498.    Path Medical has no right to receive payment for any pending bills submitted to GEICO because the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them.

499.    Path Medical has no right to receive payment for any pending bills submitted to GEICO because, in many cases, the Fraudulent Services never were provided in the first instance.

500.    Path Medical has no right to receive payment for any pending bills submitted to GEICO because the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

501.    Accordingly, GEICO requests a judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, declaring that Path Medical has no right to receive payment for any pending bills submitted to GEICO.

**SECOND CAUSE OF ACTION**
**Against Lewin, Manion, Permaul, and Path Holdings**
**(Violation of RICO, 18 U.S.C. § 1962(c))**

502. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 493 above.

503. Path Medical is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

504. Lewin, Manion, Permaul, and Path Holdings knowingly have conducted and/or participated, directly or indirectly, in the conduct of Path Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over three years seeking payments that Path Medical was not eligible to receive under the No-Fault Law because: (i) Path Medical unlawfully was operated in violation of the Clinic Act, Self-Referral Act, Patient Brokering Act, Anti-Kickback Statute, and Chiropractor Advertising Laws; (ii) the underlying Fraudulent Services were not lawfully provided; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

505.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1".

506.    Path Medical's business is racketeering activity, inasmuch as the enterprise exists for the purpose of submitting fraudulent charges to insurers. The predicate acts of mail fraud are the regular way in which Lewin, Manion, Permaul, and Path Holdings operated Path Medical, inasmuch as Path Medical was not engaged in a legitimate health care practice, and acts of mail fraud therefore were essential in order for Path Medical to function. Furthermore, the intricate planning required to carry out and conceal the predicate acts of mail fraud implies a threat of continued criminal activity, as does the fact that the Defendants continue to attempt collection on the fraudulent billing submitted through Path Medical to the present day.

507.    Path Medical is engaged in inherently unlawful acts, inasmuch as it continues to submit and attempt collection on fraudulent billing submitted to GEICO and other insurers. These inherently unlawful acts are taken by Path Medical in pursuit of inherently unlawful goals – namely, the theft of money from GEICO and other insurers through fraudulent no-fault billing.

508.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $15,000,000.00 pursuant to the fraudulent bills submitted through Path Medical.

509. By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c), and any other relief the Court deems just and proper.

**THIRD CAUSE OF ACTION**
**Against Lewin, Manion, Permaul, Path Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, Landau & Associates, Wilensky, Cheesman, Qian, and Marino**
**(Violation of RICO, 18 U.S.C. § 1962(d))**

510. GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 493 above.

511. Path Medical  is an ongoing "enterprise," as that term is defined in 18 U.S.C. § 1961(4), that engages in activities that affected interstate commerce.

512. Lewin, Manion, Permaul, Path Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, Landau & Associates, Wilensky, Cheesman, Qian, and Marino are employed by or associated with the Path Medical enterprise.

513. Lewin, Manion, Permaul, Path Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, Landau & Associates, Wilensky, Cheesman, Qian, and Marino knowingly have agreed, combined and conspired to conduct and/or participate, directly or indirectly, in the conduct of Path Medical's affairs through a pattern of racketeering activity consisting of repeated violations of the federal mail fraud statute, 18 U.S.C. § 1341, based upon the use of the United States mails to submit or cause to be submitted thousands of fraudulent charges on a continuous basis for over three years seeking payments that Path Medical was not eligible to receive under the No-Fault Law because: (i) Path Medical unlawfully was operated in violation of the Clinic Act, Self-Referral

Act, Patient Brokering Act, Anti-Kickback Statute, and Chiropractor Advertising Laws; (ii) the underlying Fraudulent Services were not lawfully provided; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

514.    A representative sample of the fraudulent bills and corresponding mailings submitted to GEICO that comprise, in part, the pattern of racketeering activity identified through the date of this Complaint are described, in part, in the chart annexed hereto as Exhibit "1". Each such mailing was made in furtherance of the mail fraud scheme.

515.    Lewin, Manion, Permaul, Path Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, Landau & Associates, Wilensky, Cheesman, Qian, and Marino  knew of, agreed to and acted in furtherance of the common and overall objective (i.e., to defraud GEICO and other automobile insurers of money) by submitting or facilitating the submission of the fraudulent charges to GEICO.

516.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $15,000,000.00 pursuant to the fraudulent bills submitted through the Path Medical enterprise.

517.   By reason of its injury, GEICO is entitled to treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. §1964(c), and any other relief the Court deems just and proper.

## FOURTH CAUSE OF ACTION
### Against all Defendants
### (Under Fla. Stat. 501.201 et. seq.)

518.   GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1 through 493 above.

519.   The Defendants are actively engaged in trade and commerce in the State of Florida.

520.   GEICO and its Insureds are "consumers" as defined by Fla. Stat. 501.203.

521.   The Defendants engaged in unfair, deceptive, and unconscionable acts or trade practices in their trade or commerce in the pursuit and execution of their scheme to illegally-obtain PIP Benefits from GEICO.

522.   The claims and supporting documents submitted to GEICO in connection with the Fraudulent Services were fraudulent in that they misrepresented: (i) Path Medical's eligibility to collect PIP Benefits in the first instance; (ii) that the Fraudulent Services were lawfully provided; (iii) that the Fraudulent Services were medically necessary; and (iv) that the Fraudulent Services actually were performed in the first instance.

523.   Such acts and practices offend public policy and are immoral, unethical, oppressive, and unscrupulous.   Additionally, the conduct of the Defendants has been materially injurious to GEICO and its Insureds.

524.    The conduct of the Defendants was the actual and proximate cause of the damages sustained by GEICO.

525.    Defendants' unfair and deceptive acts have caused GEICO to sustain damages of at least $15,000,000.00.

526.    By reason of Defendants' conduct, GEICO is also entitled to recover costs, and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2).

**FIFTH CAUSE OF ACTION**
**Against Lewin, Manion, Permaul, Path Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, Landau & Associates, Wilensky, Cheesman, Qian, and Marino**
**(Under Fla. Stat. 772.103 et. seq.)**

527.    GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1 through 493 above.

528.    In furtherance of the fraudulent scheme, Lewin, Manion, Permaul, Path Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, Landau & Associates, Wilensky, Cheesman, Qian, and Marino submitted or caused to be submitted thousands of fraudulent bills through Path Medical to GEICO seeking payment pursuant under automobile insurance policies issued by GEICO to Florida Insureds.

529.    When the billing was submitted, Lewin, Manion, Permaul, Path Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, Landau & Associates, Wilensky, Cheesman, Qian, and Marino knew that the billing contained false and misleading information concerning facts material to the claims for which reimbursement was being sought in that: (i) Path Medical unlawfully was operated in

violation of the Clinic Act, Self-Referral Act, Patient Brokering Act, Anti-Kickback Statute, and Chiropractor Advertising Laws; (ii) the underlying Fraudulent Services were not lawfully provided; (iii) the underlying Fraudulent Services were not medically necessary and were provided – to the extent that they were provided at all – pursuant to pre-determined fraudulent protocols designed solely to financially enrich the Defendants, rather than to treat or otherwise benefit the Insureds who purportedly were subjected to them; (iv) in many cases, the Fraudulent Services never were provided in the first instance; and (v) the billing codes used for the underlying Fraudulent Services misrepresented and exaggerated the level of services that purportedly were provided in order to inflate the charges submitted to GEICO.

530.    These knowing and intentional acts constitute a pattern of criminal activity, in that said acts constitute insurance fraud in violation of Fla. Stat. § 817.234(1)(a).

531.    GEICO has been injured in its business and property by reason of the above-described conduct in that it has paid at least $15,000,000.00 pursuant to the fraudulent bills submitted through the Path Medical enterprise.

532.    By reason of Defendants' conduct, GEICO is also entitled to recover threefold the actual damages it actually sustained, reasonable attorney's fees, and court costs pursuant to Fla. Stat. § 772.104.

### SIXTH CAUSE OF ACTION
**Against Lewin, Manion, Permaul, Path Medical, Path Holdings, Wilensky, Cheesman, Qian, and Marino
(Common Law Fraud)**

533.    GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 493 above.

534.   Lewin, Manion, Permaul, Path Medical, Path Holdings, Wilensky, Cheesman, Qian, and Marino intentionally and knowingly made false and fraudulent statements of material fact to GEICO and concealed material facts from GEICO in the course of their submission of thousands of fraudulent bills through Path Medical for the Fraudulent Services.

341.   The false and fraudulent statements of material fact and acts of fraudulent concealment include: (i) in every claim, the representation that that Path Medical was in compliance with the Clinic Act, the Self-Referral Act, the Patient Brokering Act, the Anti-Kickback Statute, and the Chiropractor Advertising Laws, and eligible to collect PIP Benefits in the first instance, when in fact Path Medical never was in compliance with the Clinic Act, the Self-Referral Act, the Patient Brokering Act, the Anti-Kickback Statute, and the Chiropractor Advertising Laws, and never was eligible to collect PIP Benefits; (ii) in every claim, the representation that the Fraudulent Services were lawfully provided and eligible for PIP reimbursement, when in fact the Fraudulent Services were not lawfully provided, and were not eligible for PIP reimbursement; (iii) in every claim, the representation that the Fraudulent Services were medically necessary, when in fact they were not medically necessary; and (iv) in many claims, the representation that the Fraudulent Services actually were performed, when in many cases they were not actually performed.

535.   Lewin, Manion, Permaul, Path Medical, Path Holdings, Wilensky, Cheesman, Qian, and Marino intentionally made the above-described false and fraudulent statements and concealed material facts in a calculated effort to induce GEICO to pay charges submitted through Path Medical that were not reimbursable.

536.   GEICO justifiably relied on these false and fraudulent representations and acts of fraudulent concealment, and as a proximate result has been injured in its business and property by reason of the above-described conduct in that it has paid at least $15,000,000.00 pursuant to the fraudulent bills that were submitted or caused to be submitted by the Defendants through Path Medical.

537.   The Defendants' extensive fraudulent conduct demonstrates a high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

538.   Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

## SEVENTH CAUSE OF ACTION
### Against H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, and Landau & Associates
### (Aiding and Abetting Fraud)

539.   GEICO incorporates, as though fully set forth herein, each and every allegation in paragraphs 1 through 493 above.

540.   H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, and Landau & Associates knowingly aided and abetted the fraudulent scheme that was perpetrated on GEICO by Lewin, Manion, Permaul, Path Medical, Path Holdings, Wilensky, Cheesman, Qian, and Marino.

541.   The acts of H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, and Landau & Associates in furtherance of the fraudulent scheme include knowingly referring Insureds to Path Medical, or causing Insureds to be referred to Path Medical, in violation of the Self-Referral Act, the Patient Brokering Act, the

Anti-Kickback Statute, and the Chiropractor Advertising Laws, and entering into collusive and unlawful cross-referral arrangements in an attempt to conceal their unlawful referrals and Path Medical's ineligibility to collect PIP Benefits in the first instance.

542.   The conduct of H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, and Landau & Associates in furtherance of the fraudulent scheme was significant and material. The conduct of H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, and Landau & Associates was a necessary part of and was critical to the success of the fraudulent scheme because without their actions there would be no opportunity for Path Medical to obtain payment from GEICO and from other insurers.

543.   H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, and Landau & Associates aided and abetted the fraudulent scheme in a calculated effort to induce GEICO into paying charges to Path Medical for unreimburseable and medically unnecessary Fraudulent Services, because he sought to continue profiting through the fraudulent scheme.

544.   The conduct of H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, and Landau & Associates caused GEICO to pay more than $15,000,000.00 pursuant to the fraudulent bills submitted or caused to be submitted by the Defendants through Path Medical.

545.   H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, and Landau & Associates' extensive fraudulent conduct demonstrates a

high degree of moral turpitude and wanton dishonesty that entitles GEICO to recover punitive damages.

546.     Accordingly, by virtue of the foregoing, GEICO is entitled to compensatory and punitive damages, together with interest and costs, and any other relief the Court deems just and proper.

<div align="center">

**EIGHTH CAUSE OF ACTION**
**Against all Defendants**
**(Unjust Enrichment)**

</div>

547.     GEICO incorporates, as fully set forth herein, each and every allegation in paragraphs 1 through 493 above.

548.     As set forth above, the Defendants have engaged in improper, unlawful, and/or unjust acts, all to the harm and detriment of GEICO.

549.     When GEICO paid the bills and charges submitted or caused to be submitted by the Defendants through Path Medical, it reasonably believed that it was legally obligated to make such payments based on the Defendants' improper, unlawful, and/or unjust acts.

550.     The Defendants have been enriched at GEICO's expense by GEICO's payments which constituted a benefit that the Defendants voluntarily accepted notwithstanding their improper, unlawful, and unjust billing scheme.

551.     The Defendants' retention of GEICO's payments violates fundamental principles of justice, equity and good conscience.

552.     By reason of the above, the Defendants have been unjustly enriched in an amount to be determined at trial, but in no event less than $15,000,000.00.

## <u>JURY DEMAND</u>

553.     Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury.

**WHEREFORE**, Plaintiffs Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co. demand that a Judgment be entered in their favor:

A.     On the First Cause of Action against Path Medical, a declaration pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, that Path Medical has no right to receive payment for any pending bills submitted to GEICO;

B.     On the Second Cause of Action against Lewin, Manion, Permaul, and Path Holdings, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $15,000,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

C.     On the Third Cause of Action against Lewin, Manion, Permaul, Path Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, Landau & Associates, Wilensky, Cheesman, Qian, and Marino, compensatory damages in favor of GEICO in an amount to be determined at trial but in excess of $15,000,000.00, together with treble damages, costs, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c) plus interest;

D.     On the Fourth Cause of Action against all Defendants, compensatory damages in an amount to be determined at trial but in excess of $15,000,000.00, together with costs and reasonable attorneys' fees pursuant to Fla. Stat. 501.211(2);

E.      On the Fifth Cause of Action against Lewin, Manion, Permaul, Path Holdings, H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, Landau & Associates, Wilensky, Cheesman, Qian, and Marino, compensatory damages in an amount to be determined at trial but in excess of $15,000,000.00, together with treble damages, reasonable attorney's fees, and court costs pursuant to Fla. Stat. 772.104;

F.      On the Sixth Cause of Action against Lewin, Manion, Permaul, Path Medical, Path Holdings, Wilensky, Cheesman, Qian, and Marino, compensatory damages in an amount to be determined at trial but in excess of $15,000,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper;

G.      On the Seventh Cause of Action against H. Lewin, 411-PAIN, 411-IP, 411 Advertising, Kanner, Pintaluga, Kanner & Pintaluga, Landau, and Landau & Associates, compensatory damages in an amount to be determined at trial but in excess of $15,000,000.00, together with punitive damages, costs, interest and such other and further relief as this Court deems just and proper; and

H.      On the Seventh Cause of Action against all Defendants, more than $15,000,000.00 in compensatory damages, plus costs and interest and such other and further relief as this Court deems just and proper.

Dated:   November 27, 2017

*/s/ Lindsey R. Trowell*
Lindsey R. Trowell (FBN 678783), Trial Counsel
John P. Marino (FBN 814539)
Kristen W. Bracken (FBN 92136)
SMITH, GAMBRELL & RUSSELL, LLP
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Phone:  (904) 598-6100
Facsimile:  (904) 598-6204
ltrowell@sgrlaw.com
jmarino@sgrlaw.com
kbracken@sgrlaw.com

Barry I. Levy (pro hac vice pending)
Max Gershenoff (pro hac vice pending)
Christopher Casa (pro hac vice pending)
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11550
Phone: (516) 357-3000
Facsimile:  (516) 357-3333
barry.levy@rivkin.com
max.gershenoff@rivkin.com
chritopher.casa@rivkin.com

*Attorneys for Plaintiffs, Government Employees Insurance Co., GEICO Indemnity Co., GEICO General Insurance Company and GEICO Casualty Co.*