## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

### CASE NO.: 8:17-cv-2848-T-17TGW

GOVERNMENT EMPLOYEES INSURANCE
CO., GEICO INDEMNITY CO., GEICO
GENERAL INSURANCE COMPANY, and
GEICO CASUALTY CO.,

     Plaintiffs,

v.

PATH MEDICAL, LLC, PATH MEDICAL
CENTER HOLDINGS, INC., 1-800-411-PAIN
REFERRAL SERVICE, LLC, 1-800-411-I.P.
HOLDINGS, LLC, 411 PAIN ADVERTISING
GROUP, INC., ROBERT CASH LEWIN, D.C.,
HARLEY LEWIS, RUSSELL PERMAUL,
JOEL EARL MANION, D.C., LANDAU &
ASSOCIATES, P.A., THE LAW OFFICES OF
KANNER & PINTALUNGA, P.A., TODD
LANDAU, HOWARD KANNER, ERIC
PINTALUGA, MICHAEL H. WILENSKY,
M.D., DAVID A CHEESMAN, D.O., TIE
QIAN, M.D. and RALPH G. MARINO, M.D.,

     Defendants.

_____/

### TODD LANDAU'S AMENDED MOTION TO DISMISS COMPLAINT

    Defendant, Todd Landau, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and this Court's Order of March 3, 2018 [D.E. 79], moves this Court to DISMISS those counts pleaded against him in Plaintiffs' Complaint of November 27, 2017 [D.E. 1], and states as follows:

### INTRODUCTION

    Todd Landau has been a licensed attorney in good standing for over twenty years, and has built a successful business pursuing claims against insurance companies for payment of Personal

Injury Protection (PIP) benefits. Now, Plaintiffs, Government Employees Indemnity Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company, have filed a 200-page complaint, allegedly supported by an 8,300-page exhibit, in which they claim Landau, along with 17 other individuals and companies, conspired to violate federal and Florida law in connection with every single bill presented by the defendant medical providers to the plaintiffs. Through the submission of the medical bills, Plaintiffs claim Landau and the other defendants engaged in racketeering by cross-referring medical patients and legal clients to one another, causing fraudulent claims to be submitted to Plaintiffs (or one or some of them), and bilking Plaintiffs (or one or some of them) out of insurance proceeds by filing lawsuits to recover PIP benefits.

But despite the length and breadth of the complaint, and the apparent effort undertaken to produce such a filing, Plaintiffs have wholly failed to plead the ultimate facts required to state claims against Landau individually. Plaintiffs have not pleaded facts demonstrating Landau's knowledge of or participation in a conspiracy, except to state conclusory allegations regarding him, simultaneously with numerous other defendants. In nearly all of the allegations in which Landau's name appears, Plaintiffs have appended his name to a list of other defendants. Fatally, Plaintiffs have not alleged Landau himself committed any act that could form part of the elements required for the claims pursued in this action.

In the entire complaint, the only facts directed specifically at Landau are: (1) he is a part-owner of Landau & Associates, a firm the medical clinics have engaged to represent their interests in some PIP lawsuits against one or another of Plaintiffs (the Complaint does not say whom); and (2) he was involved with the formation of Motor City Accident Attorneys ("MCAA"), a personal injury law firm in Michigan, and attended a meeting in Michigan in which it was discussed that

this new law firm could handle PIP-related matters in Michigan, but there are no facts in the Complaint to raise the inference that any of the patients MCAA represented relate to Exhibit 1 of the Complaint, which the Plaintiffs cite are the acts comprising the conspiracy.  Simply put, Plaintiffs' Complaint falls far short of the standard required to state claims against Landau, and the Court should dismiss the Complaint against him in its entirety.

Viewed in a light most beneficial to Plaintiffs, the Complaint attempts to conjure a conspiracy by Landau arising out of the routine legal services he, in his capacity as a member of Landau & Associates, performed in certain payment disputes with Plaintiffs. In essence, Plaintiffs have sued Landau for doing his job as a lawyer. But the courts have recognized that providing legal services is protected by the litigation privilege (at least as to the state law counts), is not a basis for federal or state RICO liability (even under a "conspiracy" theory), and is not a practice of "commerce" subject to Florida's Deceptive and Unfair Trade Practices Act. Nor may Plaintiffs distort the provision of legal services into some kind of "aiding and abetting" others' alleged fraud. And to the extent Plaintiffs have attempted to recover against Landau for unjust enrichment, Plaintiffs cannot successfully allege that any benefit passed "unjustly" or otherwise from Plaintiffs to Landau. Therefore, Plaintiffs have failed to state a cause of action against Landau, and the Court should dismiss the complaint as alleged against him.

Alternatively, and in the face of extensive discussion devoted to the alleged fraudulent billing that occurred, and Plaintiffs' contention that all of the defendants, including Landau, participated in both perpetuating and concealing the fraud, Plaintiffs have apparently pivoted from the main thrust of their initial Complaint to now contend that their claims against Landau are

limited only to an alleged participation in improper referrals.[1]  This alternate view suffers from a fatal infirmity: <u>Plaintiffs have not alleged either Landau himself or Landau & Associates referred any patients to medical clinics</u>. However Plaintiffs choose to cast their own allegations, the only thread Plaintiffs can attempt to draw is that Landau was a member of a firm in which some of its other members, as part of a firm in which Landau is not a member, cross-referred patients in exchange for compensation Plaintiffs do not allege Landau shared.  Plaintiffs have simply failed to state a cause of action against Landau, and the Court should dismiss the action against him.

### THE COUNTS

Landau has been named in Counts III (Federal RICO Conspiracy), IV (Florida's Deceptive and Unfair Trade Practices Act), V (Florida's Civil Remedies for Criminal Acts – State RICO), VII (Aiding and Abetting Common Law Fraud), and VIII (Unjust Enrichment). This motion will address the Counts in the order in which they are presented in the Complaint.

### STANDARD OF REVIEW

In ruling on a motion to dismiss, the Court takes the material allegations of a complaint as true, and construes those in favor of Plaintiffs. *See American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1288 (11th Cir. 2010). But the Court does not consider purely conclusory allegations or those that merely purport to state the law. *See Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (U.S. 2007). Once the Court has identified and segregated the complaint's "well-pleaded factual allegations," it must consider whether those allegations "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," that is, whether they "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 679 (2009) (internal quotation marks omitted). "Plausibility" requires that the allegations be more than merely conceivable.

---

[1] *See* D.E. 73.

*Twombly*, 550 U.S. at 570. In this "context-specific task," the Court is to be guided by "its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Under Rule 9(b), Plaintiffs must plead their claims of fraud with particularity. Courts have found the Rule 9(b) requirements serve three main purposes, each pertinent to the instant action: (1) protecting a defendant's reputation from harm, (2) minimizing "strike suits" and "fishing expeditions" and (3) providing notice of the claim to the adverse party. *See Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir. 1994). To satisfy the Rule, Plaintiffs "must plead facts as to time, place and substance of the defendant's alleged fraud, specifically the details of the defendant's allegedly fraudulent acts, when they occurred, and who engaged in them." *U.S. v. McInteer*, 470 F.3d 1255, 1262 (11th Cir. 2006). The 9(b) particularity standard applies to RICO claims based on fraud. *See Brooks v. Blue Cross & Blue Shield of Fla.*, 116 F.3d 1364, 1380-81 (11th Cir. 1997). "[I]n a [RICO] case involving multiple defendants … the complaint should inform each defendant of the nature of his alleged participation in the fraud." *Id.* at 1381.

Rule 9(b) also applies to Plaintiffs' claim of aiding and abetting fraud. *See American United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1064-65 (11th Cir. 2007) (dismissing aiding and abetting fraud claim for failure to satisfy 9(b) pleading requirements). And because Plaintiffs' claims are all based on the same set of operative facts, the Rule 9(b) heightened pleading requirements apply to all of the other claims Plaintiffs have asserted against Landau. *See PB Prop. Mgmt. v. Goodman Mfg. Co., L.P.*, No. 3:12-cv-1366-J-20JBT, 2013 WL 12172912 at *6 (M.D. Fla. Aug. 28, 2013) (FDUTPA); *United States ex rel. Citizens United to Reduce & Block Fed. Fraud, Inc. v. Metro. Med. Ctr., Inc.*, No. 89-0592-CIV, 1990 WL 10519617 at *3 (S.D. Fla. Jan. 11, 1990) (unjust enrichment). When Rule 9(b) applies, "pleadings generally cannot be based on information and belief." *Great Florida Bank v. Countrywide Home Loans, Inc.*, No. 10–22124–CIV, 2011 WL

382588 at *5 (S.D. Fla. Feb. 3, 2011) (citing *United States v. Clausen*, 290 F.3d 1301, 1310 (11th Cir.2002)).

Further, where, as here, the complaint alleges claims against multiple defendants, Plaintiffs may not merely lump together all defendants in the fraud allegations. *See Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1317 (11th Cir. 2007). And where multiple plaintiffs claim they were defrauded, they must connect specific conduct by one or more of the defendants to specific damages suffered by each specific plaintiff. *See Lawrie v. Ginn Development Co.*, No. 3:09-cv-446-J-32JBT, 2014 WL 4788067 at *9 (M.D. Fla. Sept. 19, 2014). As a result of the heightened pleading standard, RICO claims face to particular scrutiny "due to their potential for abuse by civil litigants." *PortionPac Chemical Corp. v. Sanitech Systems, Inc.*, 210 F.Supp.2d 1302, 1305 (M.D. Fla. 2002) (citation omitted).

In addition, the Court should ignore vague, speculative allegations the Plaintiffs have asserted in their Complaint that are based only on "information and belief." *United States v. Clausen*, 290 F.3d 1301, 1310 (11th Cir. 2002) ("[P]leadings [related to Rule 9(b)] generally cannot be based on information and belief."); *see also United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) ("[E]ven where allegations are based on information and belief, the complaint must set forth a factual basis for such belief.").

In sum, when no construction of the well-pleaded, particular allegations will support a cause of action, the court should dismiss the matter. Stated another way, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679.

## ARGUMENT

**I.      Plaintiffs Cannot Maintain an Action Against Landau Based Solely on Referrals.**

In the Motion to Dismiss as originally filed, Landau devoted the majority of his discussion to challenging Plaintiffs' argument that Landau himself was liable for the claims alleged in the Complaint based on the work his firm performed in representing the medical defendants in PIP lawsuits. Given that Plaintiffs spent more than 150 paragraphs alleging the number of ways in which the medical defendants provided what Plaintiffs have defined as "Fraudulent Services," and given that Plaintiffs allege "the Defendants" – which would include Landau – misrepresented and concealed facts in order to prevent Plaintiffs from discovering the Fraudulent Services were either not necessary or performed in some fraudulent manner, the Complaint warrants this discussion. *See* D.E. 1 at ¶¶ 333-493. Further, in their claim-specific allegations, Plaintiffs include Landau with the other defendants as having knowledge of, and taking part in all aspects of the "racketeering activity," and in submitting fraudulent charges to Plaintiffs. *See id.* at ¶¶ 513; 515. Moreover, in document requests Plaintiffs have recently propounded, they seek, among other things, "[a]ll documents … relating to any lawsuit that has been filed or prosecuted by you … against GEICO seeking payment for healthcare services … provided by Path Medical or the Path Medical clinics." Accordingly, the instant Motion will assert the same arguments previously raised in the initial Motion, based on the presumption Plaintiffs still intend to seek liability against Landau based on all of the allegations contained in the Complaint.

But as this Court is aware, on February 26, 2018, Plaintiffs filed a memorandum in opposition to Landau's original motion to dismiss. [D.E. 73.] For reasons unclear, Plaintiffs, through their Response, have impliedly asked the Court to ignore most of the instances they lumped Landau in with the rest of the defendants in an effort to claim Landau was involved in all

aspects of the conspiracy. Despite all efforts to the contrary, Plaintiffs now claim they are "not trying to hold Landau liable for suing to collect on Path Medical claims that GEICO previously denied." [D.E. 73 at 17, fn. 11.] Indeed, taking the brief at face value, Plaintiffs have walked back every generalized claim they made against Landau, and have limited Landau's participation in the alleged conspiracy to referrals to and from the medical defendants. *See id.* at 3-4.

To satisfy a claim of liability based on improper referrals, Plaintiffs nevertheless rely only on the specific allegations that Landau partly owns Landau & Associates, and participated in opening MCAA. But there are no allegations in the Complaint that either Landau himself or Landau & Associates referred any patients to the medical defendants. There are no allegations in the Complaint that the medical defendants referred any cases to Landau personally. There are no allegations in the Complaint that Landau himself received any compensation from the medical defendants for any alleged referrals. There are no allegations in the Complaint that Landau accepted "bribes" from any other defendant in exchange for a patient referral. There are no allegations in the Complaint stating how Landau "concealed" any bribes or the existence of any improper referrals.

While the Complaint contends Landau was a member of MCAA, which Plaintiffs claim was formed in part in order to funnel additional compensation to parties other than Landau, Plaintiffs did not sue MCAA in this case. Moreover, as stated in the Complaint, it was other, unnamed personal injury attorneys who were to receive referrals from 411-PAIN; as a condition for receiving the referrals, these other attorneys were to include MCAA as co-counsel. D.E. 1 at ¶ 202. None of these attorneys were named as defendants in this case.  This is perhaps because, despite the attempts to imply otherwise, Plaintiffs do not allege that any of the referrals to the unnamed Michigan attorneys correspond to bills the Path defendants submitted to GEICO that are

reflected on Exhibit 1, nor do Plaintiffs allege that any referrals made by the defendants to the unnamed Michigan attorneys violated Florida law.

Ultimately, the allegations regarding MCAA do not, by themselves, form any part of the RICO claim against Landau; at most, they are anecdotal statements the Plaintiffs have used in an attempt to creatively buttress their allegations against Landau. In reality, when considering the allegations in the Complaint in the context of the motions to dismiss, Landau submits the Court should ignore the references to MCAA. All that remains, therefore, is that Landau himself is a part-owner of Landau & Associates. That one fact, standing alone, cannot form the basis of any of the causes of action Plaintiffs have asserted against Landau, regardless of how Plaintiffs attempt to characterize the facts they have alleged. Therefore, regardless of whether Plaintiffs' Complaint against Landau is based solely on the idea of improper referrals, or, as discussed below, the Court considers the Complaint as a whole, Plaintiffs have failed to state a cause of action as to the claims asserted against Landau, and the Court should dismiss the Complaint against him in its entirety.

## II.      Count III – Federal RICO Conspiracy

To state a claim for RICO conspiracy under 18 U.S.C. § 1962(d), Plaintiffs must allege with particularity that Landau agreed on the overall objective of a RICO conspiracy. Here, that would mean Landau agreed to violate § 1962(c) by "participating in the [RICO] enterprise through a pattern of racketeering activity,"[2] or agreed to the commission of two RICO predicate acts. *See U.S. v. Starrett*, 55 F. 3d 1525, 1544 (11th Cir. 1995); *U.S. v. Carter*, 721 F.2d 1514, 1529 (11th Cir. 1984). "The requirement to plead … conspiracy is not relaxed because of the complexity of

---

[2] Because Landau has been sued for RICO conspiracy, if the substantive RICO claim against the other defendants is deficient, the conspiracy count must also fall. *See U.S. v. Castro*, 89 F.3d 1443, 1450 (11th Cir. 1996) (explaining that RICO conspiracy requires agreement to "violate a substantive RICO provision").

LAW OFFICES
BECKER
1 EAST BROWARD BLVD., SUITE 1800 • FT. LAUDERDALE, FL  33301
TELEPHONE (954) 987-7550

the allegations or organizations involved in the RICO conspiracy." *Solomon v. Blue Cross and Blue Shield Ass'n*, 574 F.Supp.2d 1288, 1292 n.2 (S.D. Fla. 2008). "When the underlying allegations assert claims that are akin to fraud … the pleading requirements do not extend merely to plausibility, they demand plausibility based upon Rule 9(b)'s heightened degree of specificity." *Miccosukee Tribe of Indians of Florida v. Cypress*, 814 F.3d 1202, 1212 (11th Cir. 2015).

### A.   GEICO Fails to State any Specific Facts Regarding Landau's "Agreement."

"[P]roof of the agreement is at the heart of a conspiracy claim." *In re Managed Care Litig.*, 430 F. Supp. 2d 1336, 1345 (S.D. Fla. 2006). In the Complaint, Plaintiffs attempt to meet their burden by offering conclusory allegations that Landau – *together with nearly every other Defendant*[3] – "are employed by or associated with the Path Medical enterprise" (¶ 512), "entered into a secret scheme" (¶ 155) and "entered into collusive and unlawful cross-referral arrangements" (¶ 160). But these are merely statements of the elements of the cause of action. Plaintiffs then attempt to amplify their allegations by asserting other facts based only "upon information and belief" (¶ 205). Nowhere do Plaintiffs explain when, where, or how Landau *himself* entered into any such "scheme" or "arrangement." Plaintiffs do not plead any facts that would allow a finder of fact to infer that Landau *himself* "must necessarily have known that the others were also conspiring to participate in the same enterprise *through a pattern of racketeering activity*." *See U.S. v. Browne*, 505 F.3d 1229, 1264 (11th Cir. 2007). Plaintiffs have also failed to state facts that would suggest Landau *himself* was a willing participant in the alleged conspiracy. *See O'Malley v. O'Neill*, 887 F.2d 1557, 1560 (11th Cir. 1989); *see also In re Managed Care Litig.*, No. 03-

---

[3] The list excludes only the three medical directors and Path Medical.

21296-CIV, 2009 WL 812257 at *6 (S.D. Fla. Mar. 26, 2009) ("[M]ere opportunity to conspire alone without direct evidence of agreement is insufficient to infer the existence of a conspiracy.").

The Eleventh Circuit has upheld the dismissal of RICO actions based on this sort of conclusory pleading and lumping together of defendants. *See O'Malley*, 887 F.2d at 1563-64; *see also American Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1293-94 (11th Cir. 2010) (affirming dismissal of RICO conspiracy count predicated on allegation that "each defendant and member of the conspiracy, with knowledge and intent, agreed to the overall objective of the conspiracy …."); *Lawrie v. Ginn Development Co.*, 656 Fed. Appx. 464, 473 (11th Cir. 2016) (rejecting plaintiffs' suggestion to read the complaint "as a whole" and upholding dismissal based on failure to plead with specificity); *see also Ambrosia Coal*, 482 F.3d at 1317 (affirming dismissal where plaintiff "failed to plead its civil RICO claims against each defendant with the required level of specificity"); *Miccosukee Tribe*, 814 F.3d at 1212-13 (upholding dismissal based on failure to plead facts with specificity).

On the same basis, this Court in *Transatlantic, LLC v. Humana, Inc.*, dismissed a RICO conspiracy claim where the plaintiff failed "to meet its burden of specifically and particularly alleging the acts of each Defendant with respect to the conspiracy." No. 8:13-cv-1925-T-17TBM, 2014 WL 5039667 at *5 (M.D. Fla. Sept. 30, 2014); *see also Solomon v. Blue Cross & Blue Shield Ass'n*, 574 F. Supp. 2d 1288, 1292 (S.D. Fla. 2008) (dismissing RICO conspiracy count with prejudice where "[t]he allegation … merely identifies the entities within the enterprise … without elaborating about when or how those entities formed an agreement to violate RICO").

### B.    Landau's Provision of Legal Services Is Not a RICO Violation.

Once the Court cleaves the conclusory allegations from the complaint, Plaintiffs state only two specific allegations referencing Landau himself: (1) he is a partial owner of Landau &

Associates (¶ 33), and (2) that Landau (along with two other people) spoke with an attorney in Michigan regarding the creation of MCAA (¶ 204).[4] But Plaintiffs cite their Exhibit 1 as the acts comprising the racketeering activity, and there are no allegations in the Complaint that connect any of the so-called "fraudulent bills and corresponding mailings" detailed on Exhibit 1 to the allegations regarding MCAA. As pleaded, this is not a case in which the Court must scrutinize Plaintiffs' allegations and evaluate whether any inferences may be drawn from the facts asserted against Landau. Rather, as it relates to Landau, Plaintiffs have wholly failed to meet their pleading burden against him individually. There are no specific factual allegations directed at Landau that could, on any legally cognizable basis, state a claim against him.

To the extent the plaintiffs are inviting the Court to lump Landau individually with the facts alleged against Landau & Associates, there is an "obvious alternative explanation" to the allegations asserted against the firm that would suggest lawful, independent conduct: namely, that Landau & Associates was providing legal services to the medical defendants by filing and prosecuting PIP lawsuits against the plaintiffs. *See American Dental Ass'n*, 605 F.3d at 1294. Because the acts asserted against Landau & Associates are equally as indicative of rational, independent action as they are of concerted, illegitimate conduct, the Court should not consider

---

[4] The existence of only two facts cited in Plaintiffs' Complaint render inapposite the cases Plaintiffs, in their Response to the initial Motion to Dismiss, ask the Court to consider. *See, e.g., Govt. Employees Ins. Co. v. KJ Chiropractic Center, LLC*, No. 6:12-cv-1138-Orl-36DAB, 2014 WL 12617566 at *4-6 (M.D. Fla. Mar. 6, 2014) (denying motion to dismiss when, though plaintiffs had lumped together defendants in certain sections of the complaint, plaintiffs made specific allegations as to each individual defendant's role in the scheme, and acts taken in furtherance of it); *State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC*, 107 F.Supp.3d, 772, 787 (E.D. Mich. 2015) (denying motion to dismiss based on the argument of "group pleading" where "discreet paragraphs of the Complaint…further delineate exactly the offending conduct of each individual Defendant"). Though Plaintiffs characterize the cases cited as being "highly-analogous" to the matter at bar, it is worth noting that none of the cases Plaintiffs rely on involved claims against medical providers *and* law firms representing the providers.

those allegations to support a *prima facie* claim against Landau. *See id.* Where, as here, the basis of a defendant's alleged RICO liability has been the provision of legal services, the cases have been dismissed.

In this context, *RSM Production Corp. v. Freshfields Bruckhaus Derringer U.S. LLP* is instructive. 682 F.3d 1043 (D.C. Cir. 2012). In *Freshfields*, a license-holder brought a RICO conspiracy claim against a law firm claiming it conspired to bribe Grenadian officials on behalf of and as part of its representation of the State of Grenada, in order to terminate the plaintiff's natural gas exploration rights. *Id.* at 1047. The plaintiff claimed Freshfields knew about the bribery scheme because six distinct allegations, taken collectively, provided a basis for inferring agreement: (1) the firm was on notice its client "had a reputation for corruption and bribery;" (2) the firm knew another law firm declined representation because of the client's tainted reputation; (3) Freshfields was on notice that Model (a director of a competitor for the license) was a convicted felon; (4) Freshfields knew Model was paying Grenada's retainer and legal bills; (5) public reports claimed that Model and another director had bribed Grenadian officials; and (6) after learning that the third party who was paying its legal bills was also responsible for bribing Grenadian officials, Freshfields continued the representation. *Id.* at 1048-50. The trial court granted the law firm's motion to dismiss the RICO conspiracy charge, and an appeal ensued.  *Id.* at 1047.

The appellate court began its discussion by explaining that it required more than a pleading "consistent with" the "possibility" of liability. *Id.* at 1048. Rather, the allegations of the complaint must establish a "plausible inference" of culpability. *Id.* While the court noted allegations of corruption raised against Freshfields, and general media reports of corruption in Grenada, it noted there were no concrete allegations that Freshfields itself committed any predicate acts that might allow an inference of an agreement to join a conspiracy. *Freshfields*, 682 F.3d at 1048-49.

To the contrary, what Freshfields was alleged to have actually done was consistent with "its normal business practice of providing legal services for and representing clients …." *Id.* at 1051. Thus, there was no basis for an inference that Freshfields knew about or, in any event, supported the aims of the alleged conspiratorial agreement. "In sum, the allegations of the complaint target Freshfields' services as attorneys, nothing more," and "allegations that a defendant acted in ways consistent with a conspiratorial agreement, *but also equally well explained* by legitimate economic incentives, do not suffice to show illegality," so the appellate court upheld the dismissal. *Id.* [emphasis added].

Similarly, in *Domanus v. Locke Lord LLP*, 847 F.3d 469, 482 (7th Cir. 2017), the plaintiff claimed the defendant law firm conspired to steal money with certain members of a company the firm represented. The plaintiffs alleged the firm knew about the conspiracy because: 1) it helped extract money from the company by including entries on company legal bills that actually only benefitted the coconspirators; and 2) an e-mail by one of the firm's attorneys recommended the firm not extensively review its client's documents, even though he stated that through the review, "we might very well learn that certain of the allegations are technically true – i.e., that the transactions did occur and that they weren't entirely above board…." *Id.* at 476; 481.

In upholding the dismissal, the court stated that "mere association with conspirators is not enough to establish an agreement…. Claims that lawyers have conspired with their clients are insufficient in the absence of allegations that the arrangement involves more than standard legal representation." *Id.* at 482. Further, the court stated that the plaintiff's allegations against the law firm were easily explained by the firm's own self-interest: "making money and keeping a client happy…." *Id.*

Nevertheless, the plaintiff asserted the firm was doing more than providing legal representation to a client, because the firm was simultaneously doing the bidding of parties adverse to the client; thus, the plaintiff asked the court to infer the firm's conduct would not have occurred without an agreement in place between the firm and the coconspirators. *See id.* The court refused the plaintiff's request, finding that while "there may have been some agreement...it is not one that was ever tied to the RICO conspiracy...." *Id.* Accordingly, the court affirmed the trial court's dismissal of the complaint as against the law firm.

In this case, there are no allegations Landau himself committed any of the acts identified on Exhibit 1. There are no allegations any of the acts identified on Exhibit 1 are the result of any improper cross-referrals by Landau. There are no allegations Landau himself referred a single patient to the medical defendants. There are no allegations Landau had any involvement in any of the decisions regarding diagnosis, treatment, or examination of any of the patients whose entries comprise Exhibit 1, nor are there any allegations Landau himself had any control or authority over, or participated in, the coding of services provided, or the billing tendered to the GEICO Plaintiffs.[5]

In short, as to Landau, guilt by association is all that Plaintiffs have managed to conjure to tie him to the alleged conspiracy. Faced with the lack of specific facts, Plaintiffs have resorted to inviting this Court to accept that which the *Locke Lord* court rejected: to find that because Plaintiffs claim Kanner & Pintaluga inappropriately referred patients to the Path defendants, and because

---

[5]The lack of any requisite facts against Landau puts the instant case in stark contrast with those cited by Plaintiffs that demonstrate attorney participation in a RICO enterprise. *See, e.g., Handeen v. Lemaire*, 112 F.3d 1339, 1350 (8th Cir. 1997) (denying law firm's summary judgment motion on RICO conspiracy claim relating to a bankruptcy proceeding, where plaintiff alleged law firm directed clients to create sham debts to dilute an estate, prepared filings and schedules containing erroneous information, formulated and promoted fraudulent repayment plans, and conspired to conceal its client's new job from the bankruptcy trustee).

the Path defendants engaged Landau & Associates to pursue cases on their behalf to recover unpaid PIP benefits, Landau himself must have agreed to participate in the RICO conspiracy. [D.E. 73 at 6, fn 2.] It was not enough in *Locke Lord*; the Court should reach the same conclusion here.

Plaintiffs have not stated specific facts purporting to show Landau & Associates did anything other than provide legal services to Path on cases where GEICO had refused to pay for PIP benefits.[6] Even if such services did result in "expensive and time-consuming litigation" for one or more of the Plaintiffs, neither the law firm nor Landau may be liable for RICO conspiracy on that basis. As Judge Presnell concluded in *Design Pallets, Inc. v. Gray Robinson, P.A.*:

> "To be guilty of conspiracy ... parties must have agreed to commit an act that is itself illegal – parties cannot be found guilty of conspiring to commit an act that is not itself against the law." *Jackson v. Bellsouth Telecomms.*, 372 F.3d 1250, 1269 (11th Cir. 2004). Here, Plaintiffs have failed to produce any evidence that the Law Firm agreed to do anything other than provide lawful, legal services.

No. 6:07-cv-655-Orl-31KRS, 2008 WL 3200275 at *6 (M.D. Fla. Aug. 5, 2008). At most, the facts from which this Court could infer Landau's involvement in the conspiracy are far less than what the courts in *Freshfields* and *Locke Lord* found were insufficient to state a claim for relief. The Court should therefore dismiss Count III as against Landau.

---

[6] As this Court has itself determined, there is no "overlap" between the sort of claims-collection litigation pursued on behalf of his client by Landau, and the type of alleged violations of the statutes governing chiropractic referrals and advertising that constitute the meat of the putative conspiracy in this case. *See State Farm Mutual Auto. Ins. Co. v. Physicians Group of Sarasota, L.L.C.*, 9 F. Supp. 3d 1303, 1310 (M.D. Fla. 2014). Landau's alleged conduct is entirely outside the ambit of the purported scheme.

LAW OFFICES
BECKER
1 EAST BROWARD BLVD., SUITE 1800 • FT. LAUDERDALE, FL  33301
TELEPHONE (954) 987-7550

### III.    The State Law Claims

#### A.    All the State Law Counts Are Insufficiently Pleaded Under Rule 9(b)

The pleading standard established by *Twomby* and *Iqbal* applies to Plaintiffs' state-law claims. *See Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). Additionally, the heightened pleading requirements of Rule 9(b) apply to all of Plaintiffs' Florida law claims. *See PB Prop. Mgmt.*, 2013 WL 12172912 at *6 (M.D. Fla. Aug. 28, 2013) ("[T]he Middle District of Florida has consistently held that those FDUTPA claims that hinge on allegations of misrepresentation are 'grounded in fraud' and are therefore governed by Rule 9(b)'s heightened pleading requirements."); *Ambrosia Coal*, 482 F.3d at 1316 ("RICO claims predicated, as here, on mail fraud "are essentially a certain breed of fraud claims" and must also be pled with particularity under Rule 9(b)."); *Martinez*, 480 F.3d at 1064-65 (11th Cir. 2007) ("Thus, [plaintiff's] aiding and abetting claim also fails to conform to the requirements of Rule 9(b) ...."); *Metropolitan Med. Ctr.*, 1990 WL 10519617 at *3 (S.D. Fla. Jan. 11, 1990) ("[S]ince the unjust enrichment claim ... rests on [fraud] ..., it too must satisfy Rule 9(b).").

Plaintiffs' allegations that Landau performs legal work for his client, accompanied by purely conclusory allegations listing Landau amongst a number of others accused of a multitude of crimes and torts, is not sufficient to satisfy the requisite particularity needed to survive a motion to dismiss. Thus, the Court should dismiss all of Plaintiffs' state law claims.

#### B.    All the State Law Counts Are Barred by the Litigation Privilege

To the extent Plaintiffs' state law claims are predicated on the allegation that Landau participated in or aided various types of fraudulent activity by pursuing collections in Florida state courts, Landau's actions are protected by Florida's litigation privilege. *See Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1274-75 (11th Cir. 2004) ("Florida's litigation privilege applies to the

state-law claims adjudicated in federal court."). The litigation privilege provides "absolute immunity … to any act occurring during the course of a judicial proceeding … so long as the act has some relation to the proceeding." *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So. 2d 606, 608 (Fla. 1994). It applies regardless of the egregious nature of the alleged misconduct. *See Green Leaf Nursery v. DuPont De Nemours and Co.*, 341 F.3d 1292, 1303 (11th Cir. 2003) (affirming dismissal of RICO claims alleging "a massive scheme of perjury, falsification of evidence, and fraudulent concealment of evidence" to induce settlement of claims in prior state-court action). The privilege applies also to actions that are "necessarily preliminary to judicial proceedings." *AGM Investors, Ltd. Liab. Co. v. Business Law Group, P.A.*, 219 So. 3d 920, 924 (Fla. 2d DCA 2017); *see also Kelly v. Palmer, Reifler & Assocs., P.A.*, 681 F. Supp. 2d 1356, 1367-68 (S.D. Fla. 2009) (applying the same standard in federal court).

Specifically as it relates to Plaintiffs' FDUTPA claim, the Supreme Court of Florida's decision in *Echevarria, McCalla, Raymer, Barret & Frappier v. Cole* is instructive here. 950 So. 2d 380, 381 (Fla. 2007). There, the lawyer defendants, as part of foreclosure proceedings, sent out demand letters on behalf of their lender clients; in the letters, the lawyers demanded from the borrowers reimbursement of costs the lenders allegedly incurred in the foreclosure proceeding. *Id.* The borrowers later claimed to discover the lenders never incurred those costs, and as a result, the borrowers sued the attorneys for violating FDUTPA. *Id.*

In this case, essentially the same conduct is being alleged: Plaintiffs claim Landau, in his capacity as an attorney, has sued Plaintiffs to recover benefits his clients did not actually earn. Unsurprisingly, this District has found that filing and maintaining a legal action "is precisely the kind of activity protected by Florida's litigation privilege." *Dyer v. Choice Legal Group, P.A.*, No. 5:15-cv-69-OC-30PRL, 2015 WL 3650925 at *2 (M.D. Fla. Jun. 11, 2015). Because the Supreme

Court of Florida deemed the lawyer clients in *Echevarria* to have "absolute immunity" for their acts, this Court should give Landau the same relief. *See* 950 So. 2d at 384.[7]

Ultimately, Landau's activities of (1) submitting statutorily-required demand letters, (2) filing collections suits, and (3) litigating those suits to settlement or judicial resolution, all fall squarely within the litigation privilege. Landau cannot be held liable under any state law theories for his alleged role in filing complaints that seek reimbursement of billings on behalf of Path Medical. Accordingly, all of Plaintiffs' state law claims should be dismissed with prejudice.

### C. The FDUTPA Claim Fails Because the Practice of Law on Behalf of a Client Is Not Engaging in Trade or Commerce

Florida's Deceptive and Unfair Trade Practices Act prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." Fla. Stat. § 501.204(1). The Court must first address the threshold issue of whether Landau was engaged in "trade or commerce" before reaching the other merits of the FDUTPA claim. *See Kapila v. Militzok*, No. 15-60764-CIV-LENARD/GOODMAN, 2015 WL 7272761 at *6 (S.D. Fla. Nov. 18, 2015). Courts in Florida have routinely excluded the provision of legal services from FDUTPA's purview because law firms are not "in the conduct of any trade or commerce." *See, e.g., id.* at *7 (malpractice claim not trade or commerce); *Kelly*, 681 F. Supp. 2d at 1375 (allegedly fraudulent pre-suit demand letters sent by law firm not connected to trade or commerce); *Trent v. Mortgage Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1365 (M.D. Fla. 2007) (allegedly fraudulent pre-suit demand letters not trade or commerce); *Baker v. Baptist Hosp., Inc.*, 115 So. 3d 1123, 1125 (Fla. 1st DCA 2013) (filing hospital lien not trade or

---

[7] In addition, The Eleventh Circuit itself has held that Florida's litigation privilege bars subsequent fraud actions based on litigation conduct, including allegations that settlements were fraudulently induced. *See Green Leaf Nursery*, 341 F.3d at 1303.

commerce); *Office of Atty. Gen. v. Shapiro & Fishman, LLP*, 59 So. 3d 353 (Fla. 4th DCA 2011) (pursuing fraudulent foreclosure actions not trade or commerce).

Here, Plaintiffs allege that Landau aided or furthered a fraudulent scheme by Path Medical by pursuing legal remedies on Path Medical's behalf. Even if this were true, there is no trade or commerce between Plaintiffs (or one or any of them) and Landau, and FDUTPA "simply does not apply to these particular circumstances, even if a reasonable juror could find that the firm's conduct was deceptive." *Kapila*, 2015 WL 7272761 at *6 (quoting *Kelly*, 681 F. Supp. 2d at 1376); *see also Law Office of David J. Stern, P.A. v. State*, 83 So. 3d 847, 849-50 (Fla. 4th DCA 2011) (law firm not engaged in trade or commerce despite allegedly "preparing forgeries and fraudulent documents" for client lenders to use in foreclosure actions). Because Landau did not conduct any "trade or commerce" with any of Plaintiffs, Count IV should be dismissed with prejudice.

**D.    Plaintiffs' State Law RICO Conspiracy Claim Fails for the Same Reasons as the Federal RICO Claim and Because Under Florida Law, Landau Cannot Conspire with His Client; any Substantive RICO Claim Fails Because Plaintiffs Do Not Allege that Landau Committed Any Predicate Acts.**

In its state RICO claim, Plaintiffs have used a different statutory scheme to attempt to pin liability on Landau for conspiracy. The Florida RICO statute is patterned after the federal statute, and courts will look to the federal provision in interpreting and applying the state law. *See, e.g., Ruth v. State Dept. of Legal Affairs*, 661 So. 2d 901, 904 (Fla. 2nd DCA 1995). For the same reasons asserted herein that their federal RICO claim fails, Plaintiffs' state law RICO claim fails.[8] In addition, the Court should dismiss the state RICO claim against Landau because under Florida

---

[8] In their Opposition, Plaintiffs claim they are only pursuing a state RICO conspiracy claim against Landau. (D.E. 73 at 7 n.3.) Based on Plaintiffs' own statements, Landau will not argue in this Amended Motion that Plaintiffs' substantive state RICO claim against Landau fails to state a cause of action, but reserves the right to seek to file a reply in the event Plaintiffs change their position in their amended response to the instant motion.

law, Landau, as an attorney, cannot conspire with his corporate client, Path Medical, because they are not distinct entities for conspiracy analysis purposes.

In *American Credit Card Telephone Co. vs. National Pay Telephone Corp.*, the plaintiff alleged that National and its officers conspired with a law firm and one of its lawyers to restrain trade by prosecution of an administrative action. 504 So. 2d 486, 487 (Fla. 1st DCA 1987). The trial court dismissed the claim. *Id.* On appeal, the First District affirmed the dismissal, noting that, as a corporation, National could only participate in the litigation through the law firm, and thus "[National's] act of employing [the firm] as its advocate caused [them] to merge and become a single entity," which could not conspire with itself. *Id.* at 488.

In this case, Plaintiffs allegations against Landau derive entirely from his status as an attorney whose firm represented Path Medical. As a matter of law, he could not have conspired with Path Medical. Therefore, the Court should dismiss the state RICO conspiracy claim asserted against him.

> **E.    Plaintiffs Fail to Sufficiently Allege Knowledge of Fraud, Substantial Assistance, or the Existence of an Underlying Fraud to Aid or Abet.**

"It is unclear whether aiding and abetting fraud exists as a cause of action in Florida." *In re Brican America LLC Equipment Lease Litigation*, No. 10-md-02183-PAS, 2015 WL 11661980 at *1 (S.D. Fla. Oct. 4, 2015) (citing *Lamm v. State St. Bank & Trust*, 749 F.3d 938, 950 n. 9 (11th Cir. 2014)). As of the date of filing this motion, Landau is aware of no decision in the Eleventh Circuit or in the State of Florida in which a court has imposed liability for aiding and abetting a fraud. If such a cause of action were to exist, Plaintiffs would have to allege with particularity: (1)

the existence of the underlying fraud,[9] (2) defendant's actual knowledge of the fraud, and (3) defendant's "substantial assistance" in perpetrating the fraud. *See Lawrence v. Bank of America, N.A.*, 455 Fed. Appx. 904, 906-07 (11th Cir. 2012); *Martinez*, 480 F.3d at 1064-65. Here, as in the other Counts, Plaintiffs merely recite the elements of this claim in a conclusory fashion, without distinction amongst the named Defendants, and fail to allege any substantive facts, that, if proven, might raise the possibility Landau had aided and abetted a fraud (¶¶ 540-42).[10]

Courts have held that where it must be alleged the defendant had knowledge, conclusory statements about "actual knowledge" are insufficient; the plaintiff must plead facts adequate to support a finding of the same, and not merely that defendant "knew" or "should have known." *See Platinum Estates, Inc. v. TD Bank, N.A.*, No. 11-606700-CIV, 2012 WL 760791 at *3 (S.D. Fla. Mar. 8, 2012). "[R]ed flags or aroused suspicions do not constitute actual awareness of one's role in a fraudulent scheme." *Id. See also In re Brican America*, 2015 WL 11661980 at *4 (rejecting naked allegation that defendants "had 'actual knowledge of the underlying fraud'" as conclusory and disregarding same for pleading purposes).

Here, Plaintiffs offer only the purely conclusory allegation that Landau – together with eight other defendants, and without differentiating between them – "knowingly aided and abetted the fraudulent scheme" (¶ 540). This is precisely the sort of allegation courts have rejected as insufficient. *See In re Brican America*, 2015 WL 11661980 at *4.

---

[9] For this reason, if the substantive fraud allegations against the other Defendants are deficient, this aiding and abetting count against Landau must be dismissed as well.

[10] In their Memo in Opposition to the Initial Motion to Dismiss, Plaintiffs assert that Landau "conceal[ed] that bribes were bribes" by receiving collections work from Path Medical. (D.E. 73 at 17.) Not only is this pleaded nowhere in the Complaint, there is no logical way such after-the-fact behavior, if it occurred, could have been a causative or enabling element in any already-occurred fraud undertaken by a third party against Plaintiffs.

Even assuming, *arguendo*, that Plaintiffs had sufficiently pleaded that Landau was aware of some "fraudulent scheme," they cannot successfully plead that he offered "substantial assistance" to any such scheme. In an analogous case relating to an alleged fraud in the submission of insurance applications, the Eleventh Circuit noted that to state a claim for aiding and abetting fraud, a plaintiff must "confirm to the requirements of Rule 9(b)" and allege "facts that would show how [the defendant] assisted [the producer] to file a fraudulent insurance application…." *Martinez*, 480 F.3d at 1064–65. The assistance must occur at the time of the application's submission and cannot be based on after-the-fact conduct. *Id.* at 1054 ("The law does not countenance claims of accessory after the fact in civil fraud claims….").

In addition, the Complaint contends Landau made legal demands and filed suit for claims that Plaintiffs had rejected (¶ 491). The *sine qua non* of any fraud claim is the plaintiff's detrimental reliance on a material misrepresentation. *See Susan Fixel, Inc. v. Rosenthal & Rosenthal, Inc.*, 842 So. 2d 204, 209 (Fla. 3d DCA 2003); *Chino Electric, Inc. v. United States Fidelity & Guaranty Co.*, 578 So. 2d 320, 323 (Fla. 3d DCA 1991). But as alleged, any claim Landau handled for Path Medical came to him because one or another of Plaintiffs *had contested it and refused to pay it* as submitted by Path. That is, any claim handled by Landau had not been relied on by any of Plaintiffs. Thus there could be no underlying fraud concerning these claims which Landau's conduct, as a lawyer providing legal services related to contested claims, could aid or abet.

Nor can Landau's settlement of claims litigated on behalf of Path be the basis of a "fraud" he could later be claimed to aid or abet. Adversarial parties represented by counsel are *ipso facto* unable justifiably to rely on one another's representations in the negotiation of settlements. *See Pettinelli v. Danzig*, 722 F.2d 706, 710 (11th Cir. 1984) ("Even if representations were made that were false and did induce the appellants to enter into the Release in reliance thereon, such reliance

was unjustified…it was clear the parties were in an adversarial relationship…Florida law favors the finality of settlements."). In any case, the Eleventh Circuit has held that Florida's litigation privilege bars subsequent fraud actions based on litigation conduct, including allegations that settlements were fraudulently induced. *See Green Leaf Nursery*, 341 F.3d at 1303.

Because Plaintiffs have not alleged Landau had actual knowledge of any fraud, and have not alleged that he provided substantial assistance to any fraud, and because his alleged conduct cannot possibly be fraud and would in any event be protected by Florida's litigation privilege, the Court should dismiss Count VII.

### F.        Plaintiffs Cannot State a Claim against Landau for Unjust Enrichment.

An unjust enrichment claim in Florida requires proof of four elements: (1) Plaintiffs have conferred a benefit on Landau; (2) Landau has knowledge of the benefit; (3) Landau has accepted or retained the benefit conferred; and (4) the circumstances are such that it would be inequitable for Landau to retain the benefit without paying fair value for it. *See Della Ratta v. Della Ratta*, 927 So.2d 1055, 1059 (Fla. 4th DCA 2006). Plaintiffs have no actionable unjust enrichment claim against Landau because none of them have conferred any benefit on Landau, and even if one (or some, or all) of Plaintiffs had conferred a benefit, it could not be found inequitable as a matter of Florida law because there was due consideration.

#### 1. Plaintiffs Have Not Conferred a Benefit on Landau

"To prevail on an unjust enrichment claim, the plaintiff must directly confer a benefit to the defendant." *Kopel v. Kopel*, 229 So. 3d 812, 816 (Fla. 2017). Here, the main thrust of the Complaint is that Plaintiffs were induced to pay medical bills submitted "through Path Medical" (¶ 549). In other words, Plaintiffs' allegations, accepted as true, are that the subject medical bills were paid by Plaintiffs to Path Medical for services provided to Plaintiffs' insureds. Thus, any

benefit conferred by Plaintiffs based on these medical bills would flow to Plaintiffs insureds or the Path Medical defendants, not Landau.

Moreover, to the extent Plaintiffs are alleging that the benefit conferred upon Landau was the attorney's fees Plaintiffs ultimately paid on claims filed by Landau, those fees were a benefit conferred upon Path Medical, not Landau. Attorneys' fees are awardable under Florida's PIP statute pursuant to Section 627.428. "The one entitled to an award of attorney's fees under the statute is the insured not the insured's attorney." *Fortune Ins. Co. v. Gollie*, 576 So. 2d 796, 797 (Fla. 5th DCA 1991). Thus, as a matter of law, when Plaintiffs (or one or any of them) have been required to pay attorney fees in claims brought by Landau, the fee is being paid as an entitlement owed to his client and thus, Plaintiffs are conferring a benefit upon the client, not Landau directly.

### 2. Unjust Enrichment Cannot Lie for an Actionable Tort

Federal courts applying Florida law have held that where the basis of the "unjust" claim is an actionable tort, then a claim for unjust enrichment cannot lie. In *State of Florida v. Tenet Healthcare Corp.*, the state and competing hospitals attempted to recover Medicare payments from an "outlier trust fund" for hospital services allegedly paid to Tenet hospitals on the basis of false or inflated submissions. 420 F. Supp. 2d 1288, 1309 (S.D. Fla. 2005). The court dismissed the unjust enrichment claim, noting that:

> The Court need not reach the issue of whether the Hospital Plaintiffs actually conferred a benefit on Tenet, *because the allegations of the Complaint, which are premised on Tenet's purported RICO violations and theft of outlier funds, cannot support a claim for unjust enrichment.* "Liability in unjust enrichment has in principle nothing to do with fault. It has to do with wealth being in one person's hands when it should be in another person's." *Guyana Tel. & Tel. Co. v. Melbourne Int'l Comms., Ltd.*, 329 F.3d 1241, 1245 n. 3 (11th Cir. 2003). Thus, the "paradigm examples of unjust enrichment are mistaken transfers." *Id.* However, as soon as a claimant relies on a wrong to supply the unjust factor, as the Hospital

Plaintiffs do here, "the right on which [the plaintiff] relies arises from that wrong, not from unjust enrichment." *Id.* (citation omitted). Here, the Hospital Plaintiffs predicate their unjust enrichment claim on "the wrongful conduct of Tenet" in allegedly submitting "inflated and improper 'costs.'" Plaintiffs' right of recovery, if any, "arises from the wrong of the [alleged] tort," which, if proven, might entitle them to damages, "rather than unjust enrichment." *Guyana*, 329 F.3d at 1245 n.3. Because "[t]he law of unjust enrichment is concerned solely with enrichments that are unjust independently of [alleged] wrongs," Plaintiffs' unjust enrichment claims must be dismissed. *Flint v. ABB, Inc.*, 337 F.3d 1326, 1330 n.2 (11th Cir. 2003) (noting that when the plaintiff relies on a wrong to supply the unjust factor, "the causative event is a wrongful enrichment rather than an unjust enrichment").

*Id.* (emphasis added); *but see State Farm Fire & Cas. Co. v. Silver Star Health & Rehab Inc.*, No. 6:10-cv-1103-Orl-31GJK, 2011 WL 6338496 at *6 (M.D. Fla. Dec. 19, 2011) (declining to apply *Guyana* rationale on motion for summary judgment on unjust enrichment claim).

Similarly here, Plaintiffs' claims are based on alleged violations of state and federal law, and are based on alleged tortious conduct by the defendants. While none of the statements directed at Landau properly form the basis of any of the causes of action asserted in this matter, a claim for unjust enrichment arising out of facts purporting to show "wrongful enrichment" does not lie. Therefore, the Court should dismiss the unjust enrichment claim against Landau.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 3.01(j), Landau requests oral argument on this motion.   He estimates the time necessary for his argument to be one hour.

## CONCLUSION

Plaintiffs have failed sufficiently or plausibly to plead every Count asserted against Landau. There are no set of facts contained in the Complaint, nor any interpretation of those facts, that can state claims against Landau individually. Based on the foregoing points and authorities, the Defendant, Todd Landau, prays this Court to DISMISS the Counts pleaded against him in the Complaint, and for such other relief as the Court deems just.

Dated: March 16, 2018      Respectfully submitted,

            BECKER
            1 East Broward Blvd., Suite 1800
            Ft. Lauderdale, FL 33301
            Telephone: (954) 987-7550
            Facsimile: (954) 985-4176
            GRosen@beckerlawyers.com
            JCooper@beckerlawyers.com
            MDavidson@beckerlawyers.com
            ECuellar@beckerlawyers.com

            By: */s/ Jude C. Cooper*
             Gary C. Rosen, Esq
             Florida Bar No. 310107
             Jude C. Cooper, Esq.
             Florida Bar No. 366160
             Matthew T. Davidson
             Florida Bar No. 713821

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on March 16, 2018, a true and correct copy of the foregoing was electronically filed with the Clerk of the Court by using the CM/ECF SYSTEM, which will send electronic notification to all CM/ECF participants in this case.

            By: */s/ Jude C. Cooper*
             Jude C. Cooper

ACTIVE: 10665647_2