**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

GOVERNMENT   EMPLOYEES   INSURANCE
CO., *et al.*,

      Plaintiffs,

v.

PATH MEDICAL, LLC, *et al.*

      Defendants.

_____/

      **Case No.: 8:17-cv-02848-EAK-TGW**

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANT TODD LANDAU'S AMENDED MOTION TO DISMISS**

      Plaintiffs, Government Employees Insurance Company, GEICO Indemnity Company, GEICO General Insurance Company, and GEICO Casualty Company (collectively, "GEICO" or "Plaintiffs"), respectfully submit this memorandum of law in opposition to the amended motion by Defendant Todd Landau ("Landau") to dismiss Plaintiffs' Third, Fourth, Fifth, Seventh, and Eighth Causes of Action pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b). See Docket No. 80.

      In their detailed Complaint, Plaintiffs allege – in substance – that Landau and his co-Defendants submitted a massive amount of fraudulent no-fault ("no-fault", "personal injury protection", or "PIP") insurance billing to GEICO, or caused such billing to be submitted, in pervasive violation of, among other things: (i) Florida's patient brokering act, Fla. Stat § 817.505 (the "Patient Brokering Act"); (ii) Florida's anti-kickback statute, Fla. Stat. § 456.054 (the "Anti-Kickback Statute"); and (iii) Florida's Patient Self-Referral Act, Fla. Stat. § 456.053 (the "Self-Referral Act").  All of this fraudulent PIP billing – which was submitted through a network of purported health care clinics (the "Path Medical Clinics") owned by Landau's co-

Defendants, Robert Cash Lewin, D.C. ("Lewin"), Russell Permaul, Joel Earl Manion, D.C., Path Medical, LLC, and Path Medical Center Holdings, Inc. (collectively the "Path Medical Defendants") – falsely represented, among other things, that the underlying health care services were lawfully provided and reimbursable under Florida's PIP insurance laws, when in fact they were not.

GEICO's allegations against Landau are pleaded with granular specificity, via a straightforward and easily-understandable narrative, and he cannot legitimately claim to be "left in the dark" as to the specific misconduct in which he is alleged to have engaged. In this context, and as the Court is aware, not only Landau, but all of the Defendants in their original motions to dismiss, improperly purported to "incorporate by reference" large sections of each other's briefs. The Court therefore denied the original motions to dismiss without prejudice after GEICO opposed the various motions. See Docket No. 79. Thus, in preparing his amended motion to dismiss, Landau had the benefit of being able to review GEICO's papers in opposition to his original motion to dismiss. Even so, and as set forth herein, Landau's motion to dismiss continues to rely on a mischaracterization of the allegations in Plaintiffs' Complaint, and a misunderstanding of the governing law. Accordingly, his motion to dismiss should be denied.

## STATEMENT OF RELEVANT FACTS

GEICO commenced this action on November 27, 2017. See Docket No. 1. GEICO respectfully refers the Court to the Complaint for the full contours of Landau and his co-Defendants' fraudulent scheme.

As is relevant to the present motion, however, GEICO alleges that Lewin, a chiropractor, not only was an owner of the Path Medical Clinics, but also was the founder and

– together with Defendants Harley Lewin, 1-800-411-PAIN Referral Service, LLC, 1-800-411-I.P. Holdings, LLC, and 411 PAIN Advertising Group, Inc. (collectively, with Lewin, the "411-PAIN Defendants") – an owner of a putative medical and legal "referral service" that operated in the State of Florida and elsewhere under the name "1-800-411-PAIN" (the "411-PAIN Referral Service"). See Docket No. 1, ¶¶ 3, 26, and passim.

For his part, Landau was one of three owners of a closely-held law firm, Defendant Landau & Associates, P.A. ("Landau & Associates"), which pursued collection of the vast majority of the Path Medical Clinics' fraudulent PIP billing. See Docket No. 1, ¶¶ 32-48, 165. The other two owners of Landau & Associates (whose names were conspicuously omitted from the name of the law firm) were Defendants Howard Kanner ("Kanner") and Eric Pintaluga ("Pintaluga"). Id.

In addition to co-owning Landau & Associates with Landau, Kanner and Pintaluga also were the owners of another law firm, Defendant Kanner & Pintaluga, P.A. ("Kanner & Pintaluga"), which represented individuals in personal injury lawsuits, and which referred virtually all of its personal injury clients to the Path Medical Clinics. Id., ¶¶ 32-48, 161, 164, and passim.

As set forth in detail in the Complaint, the Path Medical Defendants, the 411-PAIN Defendants, Landau, Landau & Associates, Kanner, Pintaluga, and Kanner & Pintaluga entered into a collusive and unlawful series of arrangements whereby:

(i)      the 411-PAIN Referral Service (which was owned by Lewin) referred personal injury clients to Kanner, Pintaluga, and Kanner & Pintaluga;

(ii)     as an unlawful quid-pro-quo for the personal injury client referrals from the 411-PAIN Referral Service, Kanner, Pintaluga, and Kanner & Pintaluga agreed to cross-refer their

newly-minted personal injury clients to the Path Medical Clinics (which also were owned by Lewin) for medically unnecessary and otherwise unreimbursable "treatment"; and

(iii)   as _further_ unlawful consideration for the cross-referrals from Kanner, Pintaluga, and Kanner & Pintaluga to the Path Medical Clinics, the Path Medical Defendants agreed to retain Landau & Associates (which was owned not only by Landau, but also by Kanner and Pintaluga, despite the fact that their names did not appear in Landau & Associates' firm name) to pursue collection on the vast majority of the Path Medical Clinics' bills, thereby generating massive legal fees for Landau, Kanner, and Pintaluga.

See Docket No. 1, ¶¶ 159-165, 193-196, and passim.

What is more, as _additional_ unlawful consideration given to Kanner, Pintaluga, and Kanner & Pintaluga for their cross-referrals to the Path Medical Clinics, the 411-PAIN Defendants required Michigan attorneys wishing to receive personal injury client referrals from the 411-PAIN Referral Service to: (i) appoint _yet another_ law firm owned by Landau, Kanner, and Pintaluga – called "Motor City Accident Attorneys" – as nominal "co-counsel" on any resulting personal injury cases, with the understanding that Motor City Accident Attorneys would not do any actual work on the cases; and (ii) pay Motor City Accident Attorneys up to 50 percent of the settlements in the resulting personal injury cases, despite the fact that Motor City Accident Attorneys did not actually work on any of the cases. See Docket No. 1, ¶¶ 200-204.[1]

---

[1] Notably, Landau does not deny these substantive allegations in his motion to dismiss. Nor does he contend, anywhere in his motion papers, that these allegations – if accepted as true, as they should be on this motion – fail to state a claim.

These collusive arrangements – which amounted to pervasive violations of Florida's Patient Brokering Act, Anti-Kickback Statute, and Self-Referral Act – resulted in a steady stream of unlawful patient referrals to the Path Medical Clinics. This, in turn, enabled the Path Medical Defendants to submit millions of dollars of fraudulent PIP billing to GEICO and other automobile insurers, all of which misrepresented – among other things – the Path Medical Clinics' compliance with Florida law and eligibility to collect PIP benefits in the first instance, and the medical necessity of the underlying health care services. See Docket No. 1, ¶¶ 482-483, and passim.

## ARGUMENT

### I.  GEICO Certainly May Maintain This Action Against Landau

Landau sets up a red herring argument in the face of these well-pleaded allegations. Specifically, he contends – in substance – that GEICO cannot maintain an action against him based on his participation in the Defendants' patient brokering and self-referral scheme because "there are no allegations in the Complaint that Landau himself received any compensation from the [Path Medical Defendants] for any alleged referrals." Landau Br., p. 8 (Emphasis added).

However, as set forth above (and in detail in the Complaint), GEICO very plausibly has alleged that Landau was the co-owner of two closely-held law firms (i.e., Landau & Associates and Motor City Accident Attorneys) that received bribes, in exchange for which his partners in those two closely-held firms – namely Kanner and Pintaluga – referred patients to the Path Medical Clinics. Evidently, Landau hopes to persuade the Court that – even if his two closely-held law firms did receive bribes in exchange for patient referrals to the Path Medical Clinics –

he himself was not <u>personally</u> engaged in the unlawful referral and patient brokering scheme.[2] This, despite the fact that GEICO has plausibly alleged that Landau <u>personally</u> agreed to participate in the scheme. <u>See</u>, <u>e.g.</u>, Docket No. 1, ¶¶ 160-161, 201-205, and <u>passim</u>.

Along similar lines, Landau sets up another red herring argument, contending that "[t]here are no allegations in the Complaint that either Landau himself or Landau & Associates referred any patients to the [Path Medical Clinics]." Landau Br., p. 8. This, too, misses the point. As alleged with specificity in GEICO's Complaint, Landau was the owner of two closely-held law firms – Landau & Associates and Motor City Accident Attorneys – that received bribes from the Path Medical Defendants and 411-PAIN Defendants, in exchange for which Landau's partners in Landau & Associates and Motor City Accident Attorneys (namely, Kanner and Pintaluga) referred patients to the Path Medical Clinics for medically unnecessary "treatment". In this context, GEICO's allegations that Landau personally engaged in these unlawful arrangements through his two closely-held law firms, in order to profit from them, are more than plausible.[3]

---

[2] Landau also makes various contentions in his brief to the effect that there supposedly was no connection between Motor City Accident Attorneys and the fraudulent PIP claims that the Defendants submitted, or caused to be submitted, through Path Medical. <u>See</u> Landau Br., pp. 2-3, 8-9. For this proposition, Landau contends that Motor City Accident Attorneys did not represent any of the GEICO insureds who purportedly received treatment at Path Medical. <u>Id</u>. This misses the point. While GEICO does not allege that Motor City Accident Attorneys <u>itself</u> referred GEICO insureds to the Path Medical Clinics, or that Motor City Accident Attorneys <u>itself</u> represented GEICO insureds who purportedly were treated at the Path Medical Clinics, GEICO <u>does</u> plausibly allege that Motor City Accident Attorneys was used as a vehicle to funnel additional unlawful consideration to Kanner, Pintaluga, and Kanner & Pintaluga for <u>their</u> cross-referrals to the Path Medical Clinics, in violaton of – among other things – the Patient Brokering Act. <u>See</u> Docket No. 1, ¶¶ 200-204. Lest there be any doubt about the plausibility of these allegations, they are supported by – among other things – the deposition testimony of one of the Michigan personal injury lawyers who was approached by Landau, Kanner, and Pintaluga, and offered client referrals by the 411-PAIN Referral Service, provided that she would list Motor City Accident Attorneys as sham "co-counsel" on any resulting cases, and split her fees with Motor City Accident Attorneys, with the understanding that Motor City Accident Attorneys would do no actual work on the cases. <u>See</u> Docket No. 1, ¶¶ 200-204.

[3] In this context, while Landau falsely contends that "there are no specific factual allegations against Landau that could, on a legally cognizable basis, state a claim against him" (Landau Br., p. 12), the Patient Brokering Act – to select just one example – not only makes it unlawful to <u>pay</u> a bribe of any kind in exchange for a

At bottom, Landau's arguments to the effect that "it was just my two closely-held law firms that engaged in the scheme, not me personally" raises a question of proof, not pleading. At the pleading stage, the Court should construe the allegations in the Complaint in the light most favorable to Plaintiffs. See, e.g., Branch Banking & Trust Co. v. Jomar Real Invs., LLC, 2014 U.S. Dist. LEXIS 27398 at * 6 (M.D. Fla. 2014)(Kovachevich, J.). Likewise, the Court should evaluate all inferences derived from the facts alleged in the Complaint in the light most favorable to Plaintiffs. See, e.g., Tilton v. Playboy Entm't Group, Inc., 2007 U.S. Dist. LEXIS 1393 at * 7 (M.D. Fla. 2007). In this setting, it certainly is reasonable to infer that Landau – the co-owner of the two closely-held law firms that received the bribes that were intrinsic to the Defendants' unlawful patient brokering and self-referral scheme – is liable for his involvement in the scheme. Especially at the pleading stage.

## II.   To the Extent That GEICO's Allegations Against Landau are Alleged Upon Information and Belief, the Allegations are Proper

Landau goes on to contend that GEICO's allegations against him are impermissibly predicated "upon information and belief". See, e.g., Landau Br., pp. 5, 6, 10. However, Landau misapplies the legal standard. While it is true – as Landau contends – that fraud-based pleadings "generally cannot be based upon information and belief" (emphasis added), this is only part of the pertinent picture.

---

patient referral, but also makes it unlawful to receive a bribe of any kind in exchange for a patient referral, or to "aid, abet, advise, or otherwise participate" in the payment or receipt of bribes in exchange for patient referrals. See Fla. Stat. § 817.505. GEICO certainly has plausibly alleged facts to demonstrate that Landau not only received bribes in exchange for patient referrals to the Path Medical Clinics, but also to demonstrate that Landau aided, abetted, advised, or otherwise participated in his co-Defendants' patient brokering scheme. What is more, this Court has sustained fraud-based claims based on similar violations of the Patient Brokering Act and Anti-Kickback Statute. See State Farm Mut. Auto. Ins. Co. v. Physicians Group of Sarasota, L.L.C., 9 F. Supp. 3d 1303 (M.D. Fla. 2014)(Kovachevich, J.).

Specifically, and as this Court has noted, "an exception exists where the Plaintiffs cannot be expected to have personal knowledge of the facts constituting the wrongdoing. … In such cases, a complaint based on information and belief is sufficient if it includes a statement of the facts upon which the belief is based." In re Checkers Sec. Litig., 858 F. Supp. 1168, 1178 (M.D. Fla. 1994)(Kovachevich, J.).[4]

Against this backdrop, the full facts regarding the collusive and unlawful patient brokering and self-referral arrangements between and among Landau and his co-Defendants – which the Defendants went to great lengths to conceal – necessarily are peculiarly within the Defendants' knowledge or control. Even so – even at the pleading stage and in advance of substantive discovery – GEICO has managed to set forth a strong factual basis for each and every one of the allegations it makes upon information and belief.

For example, at paragraph 40 of the Complaint, GEICO alleges upon information and belief that Landau conspired in, aided, and abetted his co-Defendants' pervasive violation of Florida's Patient Brokering Act, Anti-Kickback Statute, Self-Referral Act, Clinic Act, and Chiropractor Advertising Laws. This allegation is hardly made in a vacuum. Rather, the basis for this information and belief is set forth at length in the subsequent paragraphs of the Complaint, where GEICO alleges the exact nature of the collusive and unlawful patient brokering and kickback arrangements between Landau and his co-Defendants. See Docket No. 1, ¶¶ 159-165, 193-196, 200-206, and passim.

As described at length in the Complaint, including through numerous, claim-specific examples, these collusive arrangements – which amounted to pervasive violations of Florida

---

[4] See also SEC v. Physicians Guardian Unit Inv. Trust by & Through Physicians Guardian, Inc., 72 F. Supp. 2d 1342, 1352 (M.D. Fla. 1999)(Kovachevich, J.)(same).

law – enabled the Path Medical Defendants to submit millions of dollars of fraudulent PIP billing to GEICO and other insurers, all of which misrepresented, among other things, the Path Medical Clinics' compliance with Florida law and eligibility to collect PIP benefits in the first instance, and the medical necessity of the underlying health care services.

GEICO respectfully submits that these well-pleaded facts set forth a more than sufficient basis for its allegations upon information and belief.

**III.**   **GEICO's Allegations Against Landau do not Amount to Impermissible "Group Pleading"**

Though Landau makes passing reference in his brief to familiar "group pleading" arguments – contending, for example, that GEICO has engaged in "conclusory pleading and lumping together of defendants" (see Landau Br., p. 11) – any fair reading of Plaintiffs' Complaint should leave Landau with no doubt as to what he is alleged to have done. Specifically, and as set forth in considerable detail in the Complaint, Landau is alleged to have: (i) owned Landau & Associates, together with Kanner and Pintaluga; (ii) owned a Michigan law firm called  Motor City Accident Attorneys, together with Kanner and Pintaluga; and (iii) together with Kanner and Pintaluga, used Landau & Associates and Motor City Accident Attorneys as vehicles to receive unlawful compensation from the Path Medical Defendants and 411-PAIN Defendants in exchange for patient referrals to the Path Medical Clinics. See, e.g., Docket No. 1, ¶¶ 32-48, 159-165, 193-196, 200-206.

These allegations are not pleaded in a conclusory vacuum, either. Rather, they are supported by numerous facts, including: (i) deposition testimony from a Michigan personal injury attorney, who recounted how Landau, Kanner, and Pintaluga met her in a Michigan hotel, and offered her the opportunity to receive personal injury client referrals from the 411-

PAIN Referral Service, provided she would agree to pay Motor City Accident Attorneys up to 50 percent of the recovery on any resulting cases, pursuant to a sham "co-counsel" arrangement; and (ii) numerous, claim-specific examples, set forth in detail in the Complaint, recounting the improper referrals from Kanner, Pintaluga, and Kanner & Pintaluga to the Path Medical Clinics that were produced through these illegal cross-referral arrangements, and which resulted in substantial fraudulent PIP billing to GEICO. Id.[5]

This is more than sufficient to satisfy Rule 9(b). In fact, substantially-similar "group pleading" arguments repeatedly have been raised by defendants in highly-analogous federal PIP fraud cases, only to have been rejected by virtually every court to consider them. See, e.g., Gov't Emples. Ins. Co. v. KJ Chiropractic Ctr. LLC, 2014 U.S. Dist. LEXIS 28913 at *13 (M.D. Fla. 2014)(noting that "[a]lthough GEICO has lumped the Defendants together in certain portions of the Second Amended Complaint, this does not negate the fact that GEICO has still alleged specific instances of conduct sufficient to inform each Defendant of its individual role in the alleged scheme."); State Farm Mut. Auto. Ins. Co. v. Pointe Physical Therapy, LLC, 107 F. Supp. 3d 772, 787 (E.D. Mich. 2015)(rejecting "group pleading" argument where "[e]ach of the Defendants is on fair notice of what it is they are alleged to have done for their part in carrying out the alleged fraudulent scheme … .")[6]; State Farm Mut. Auto. Ins. Co. v. Universal

---

[5] In this context, it is worthwhile to emphasize that Kanner and Pintaluga – who owned Kanner & Pintaluga, the law firm that unlawfully cross-referred GEICO insureds to the Path Medical Clinics (owned by Lewin) in exchange for personal injury client referrals from the 411-PAIN Referral Service (also owned by Lewin) – also co-owned Landau & Associates, which pursued collection on the vast majority of the Path Medical Clinics' billing. Against this unsavory backdrop, where one group of attorneys refers a large number of personal injury clients to a health care provider, and an overlapping and manifestly related group of attorneys receives the lucrative right to collect on that same health care provider's billing, GEICO respectfully submits that the allegations regarding Landau's knowledge of and involvement in his co-Defendants' fraud are more than sufficiently plausible to proceed to discovery.

[6] Taking advantage of his ability to review Plaintiffs' opposition to his original motion to dismiss in drafting his amended motion to dismiss, Landau attemps to distinguish KJ Chiropractic Ctr. LLC, Pointe Physical Therapy, LLC, and the other cases cited in Plaintiffs' original opposition papers, by contending that "none of the cases

Health Group, Inc., 14-cv-10266, 2014 U.S. Dist. LEXIS 151213, at *6 - *9 (E.D. Mich. Oct. 24, 2014)(rejecting "group pleading" argument where each of the defendants was "alleged to have contributed to or orchestrated" the overall scheme); Allstate Ins. Co. v. Ahmed Halima, 06-cv-1316 (DLI) (SMG), 2009 U.S. Dist. LEXIS 22443, at *18 - *20 (E.D.N.Y. Mar. 19, 2009)(rejecting similar "group pleading" argument).

## IV.    GEICO Has Sufficiently Alleged its Federal and State Racketeering Conspiracy Claims Against Landau

Landau goes on to contend that GEICO has not sufficiently alleged its federal and state racketeering conspiracy claims, because GEICO supposedly has not sufficiently alleged that Landau agreed to the overall objective of the racketeering conspiracy – namely, to defraud GEICO into paying unreimbursable PIP billing submitted through the Path Medical Clinics. See Landau Br., pp. 10-11, 20-21.

It is impossible to square this argument with the actual allegations in GEICO's Complaint, which – notably – Landau completely elides in his motion papers. As set forth in GEICO's Complaint, two closely-held law firms co-owned by Landau, Kanner, and Pintaluga – namely Landau & Associates and Motor City Accident Attorneys – were used to receive unlawful consideration from the Path Medical Defendants (in the form of lucrative collections work that would produce thousands of dollars in legal fees) and the 411-PAIN Defendants (in the form of personal injury client referrals from the 411-PAIN Referral Service and no-show

---

Plaintiffs rely on [in their opposition to Landau's original motion to dismiss] involved claims against medical providers and law firms representing the providers." Landau Br., p. 12, fn. 4. However, Landau offers no authority for his apparent proposition that an attorney or law firm somehow is immune from liability for their involvement in an unlawful patient brokering and self-referral scheme, solely by virtue of their status as a licensed attorney, because there is none. Though Landau – throughout his brief – contends that all he did was provide legal services to the Path Medical Clinics (see Landau Br., p. 12, and passim), that is not what GEICO has alleged in its well-pleaded Complaint. Rather, GEICO has alleged that Landau participated in an unlawful patient brokering and self-referral scheme – which had nothing to do with the legitimate representation of any client – and GEICO has set forth detailed facts in support of its allegations. See Docket No. 1, ¶¶ 159-165, 193-196, 200-204, and passim.

work as sham "co-counsel" on Michigan personal injury cases), in exchange for which Landau's partners, Kanner and Pintaluga, cross-referred large numbers of GEICO insureds to the Path Medical Clinics for medically unnecessary treatment through their ostensibly-independent law firm, Kanner & Pintaluga.  In this context, GEICO's allegations that Landau agreed to the overall objective of the racketeering conspiracy are hardly "conclusory", as Landau claims.[7]

In light of these allegations, GEICO has sufficiently alleged Landau's agreement to the overall objective of the racketeering conspiracy – especially considering the law that has developed in numerous, highly-analogous federal PIP fraud cases, which Landau noticeably fails to cite. See, e.g., State Farm Mut. Auto. Ins. Co. v. Kugler, 2011 U.S. Dist. LEXIS 107005 at *37 (S.D. Fla. 2011)(noting that "[w]here there is no direct evidence of an agreement on an overall objective, the existence of the agreement may be established by circumstantial evidence of a scheme or inferences from the conduct of the alleged participant", and sustaining RICO conspiracy claims against non-physician defendants who were "instrumental in creating and implementing the scheme, and contributed to its continuity by supplying a steady patient stream, all with full awareness that the scheme would ultimately result in … mailing to State Farm of fraudulent medical bills on behalf of automobile accident patients …"); State Farm Mut. Auto. Ins. Co. v. Warren Chiropractic & Rehab Clinic P.C., 2015 U.S. Dist. LEXIS 104332 at *26 - *29 (E.D. Mich. 2015)(RICO conspiracy claim against alleged PIP fraud ring was sufficient where – as in the present case – the complaint outlined

---

[7] For example, it is impossible to see how Landau – who co-owned two closely-held law firms that received bribes in exchange for patient referrals to the Path Medical Clinics – lacked knowledge that the result of his scheme with his co-Defendants would be the submission of fraudulent billing through the Path Medical Clinics to GEICO. Especially where, as on this motion, the facts alleged in the Complaint and the inferences that may be drawn therefrom should be evaluated in the light most favorable to Plaintiffs.

"how the Defendants agreed to work with and needed each other to carry out and achieve the common purpose of their fraud scheme … ."); Gov't Emples. Ins. Co. v. Badia, 2015 U.S. Dist. LEXIS 33667 at *5 - *6 (E.D.N.Y. 2015)(GEICO's RICO conspiracy claim was legally-sufficient where defendants were alleged to have agreed to contribute to the fraudulent scheme by providing health care practice with access to patients in exchange for kickbacks).

Relatedly, Landau contends that all he did was provide legal services to the Path Medical Clinics, and that no RICO conspiracy claim can lie based on the mere provision of legal services. See Landau Br., pp. 11-16.[8] That may be so, but that is not what GEICO has alleged against Landau in its well-pleaded Complaint. As summarized above, and as set forth with specificity in the Complaint, GEICO alleges that Landau was the co-owner of two closely-held law firms (i.e., Landau & Associates and Motor City Accident Attorneys) that received bribes in exchange for patient referrals to the Path Medical Clinics. GEICO further alleges that these bribes and referrals violated the Patient Brokering Act, Anti-Kickback Statute, and Self-Referral Act, rendering the resulting billing from the Path Medical Clinics unlawful, unreimbursable, and fraudulent. GEICO further alleges that Landau knew these

---

[8] In a footnote, Landau contends that, "[a]s this Court has itself determined, there is no 'overlap' between the sort of claims-collection litigation pursued on behalf of his client by Landau, and the type of alleged violations of the statutes governing chiropractic referrals and advertising that constitute the meat of the putative conspiracy in this case." Landau Br., p. 16, fn. 6, citing Physicians Group of Sarasota, L.L.C., 9 F. Supp. 3d at 1310. This seriously misrepresents the holding in Physicians Group of Sarasota, L.L.C. In fact, in Physicians Group of Sarasota, L.L.C., the defendants argued that the Court should have abstained from exercising jurisdiction in a similar PIP fraud case, pursuant to the Colorado River abstention doctrine, because they had PIP collections suits pending in state court that supposedly were "parallel" to the plaintiff-insurer's federal PIP fraud case. Id. This Court rejected that argument, because the legal issues and parties in the federal PIP fraud case and the state court PIP collections suits did not "overlap" for purposes of determining parallelism in the abstention context. Id. Landau apparently is trying to divorce the Court's holding in Physicians Group of Sarasota, L.L.C. from its context, in an attempt to show that he cannot be held liable for representing the Path Medical Clinics in PIP collections suits. However, and as discussed above, Landau's argument flows from an incorrect premise: GEICO is not seeking to hold Landau liable for representing the Path Medical Clinics in PIP collections suits. Rather, GEICO is seeking to hold Landau liable for his participation in an unlawful patient brokering and kickback scheme, with the knowledge that the scheme would result in the submission of fraudulent PIP billing to GEICO.

arrangements were unlawful, and would result in the submission of fraudulent billing to GEICO.[9]

In this context, Landau is alleged to have been a key and integral part of the overall scheme, and his actual role in the scheme had nothing to do with the provision of legal services to a client. In cases where a defendant's participation in a racketeering scheme goes beyond the mere provision of professional services, courts have not hesitated to permit RICO claims to proceed. See, e.g., Handeen v. Lemaire, 112 F.3d 1339, 1350 (8th Cir. 1997)(defendant law firm sufficiently could have participated in bankruptcy estate/RICO enterprise by "navigat[ing] the estate through the bankruptcy system" in an effort to defraud the creditors)[10]; Napoli v. United States, 32 F.3d 31, 36 (2d Cir. 1994)(attorneys sufficiently participated in affairs of law firm/RICO enterprise where they not only provided peripheral advice, but also participated in the core activities that constituted the affairs of the firm, namely, trying cases and obtaining settlements, and discharged their responsibility through a pattern of illegal acts); Tribune Co. v.

---

[9] Though Landau contends that these allegations are "conclusory", it is impossible to credit this contention, considering the detailed allegations in GEICO's Complaint to the effect that: (i) Landau was an owner of Landau & Associates, the closely-held law firm that received virtually all of the lucrative PIP collections work from the Path Medical Clinics; (ii) the other two owners of Landau & Associates were Kanner and Pintaluga, who referred large numbers of GEICO insureds to the Path Medical Clinics for medically unnecessary and otherwise unreimbursable health care services through still another law firm, Kanner & Pintaluga; and (iii) Landau, Kanner, and Pintaluga approached Michigan personal injury attorneys, and offered them the opportunity to receive personal injury client referrals from the 411-PAIN Referral Service (which, like the Path Medical Clinics, was owned by Lewin), provided that the Michigan personal injury attorneys agreed to list Motor City Accident Attorneys – yet another closely-held law firm owned by Landau, Kanner, and Pintaluga – as sham "co-counsel" on any resulting personal injury cases, and to split any recoveries with Motor City Accident Attorneys, despite the fact that Landau, Kanner, Pintaluga, and Motor City Accident Attorneys did no actual work on the cases. In this setting, GEICO's allegations against Landau are plausible, not "conclusory".

[10] Landau – having had the opportunity to review Plaintiffs' opposition to his original motion to dismiss in preparing his amended motion to dismiss – attempts to distinguish Handeen in his amended brief, by contending that, in contrast to the Handeen plaintiff, GEICO supposedly has not pleaded "any requisite facts against Landau". Landau Br., p. 15, fn. 5. This contention does not withstand inspection. As set forth above, and in detail in the Complaint, GEICO very plausibly has alleged that Landau received bribes through two closely-held law firms, in exchange for which his partners in those law firms – namely Kanner and Pintaluga – agreed to refer patients to the Path Medical Clinics in pervasive violation of the Patient Brokering Act, the Anti-Kickback Statute, and the Self-Referral Act.

Purcigliotti, 869 F. Supp. 1076, 1098 (S.D.N.Y. 1994)(allegations that an attorney and a physician knowingly substantiated and pursued fraudulent workers compensation claims were sufficient to state a RICO claim).[11]

Landau also argues that GEICO's FCRCPA claim should be dismissed because it supposedly is based on allegations that Landau, in his capacity as an attorney, conspired with his corporate client, Path Medical, and under Florida law an attorney cannot conspire with his corporate client. See Landau Br., pp. 20-21. Landau is only half-right on the law. While a lawyer ordinarily cannot conspire with his or her client in the course of legitimate representation, courts have held that – where the lawyer crosses the line from legitimate representation into actual wrongdoing – a conspiracy claim can lie. See, e.g., Rosenthal Toyota, Inc. v. Thorpe, 824 F.2d 897, 902 (11th Cir. 1987)(holding that the evidence supported a finding that the lawyer conspired with his client to commit theft and conversion); Bocciolone v. Solowsky, 2009 U.S. Dist. LEXIS 34296 at *18 (S.D. Fla. 2009)(refusing to dismiss conspiracy claims where the lawyer's conduct went beyond the offering of legal advice).

In the present case, GEICO's conspiracy claims against Landau are based on well-pleaded allegations to the effect that he orchestrated the payment and receipt of bribes in

---

[11] The cases cited by Landau are inapposite, for various reasons. See Landau Br., pp. 13-16, citing RSM Prod. Corp. v. Freshfields Bruckhaus Deringer US LLP, 682 F.3d 1043, 1051 (D.C. Cir. 2012)(RICO allegations targeted attorneys' "services as attorneys, nothing more", and therefore were "distinguishable from instances in which attorneys have been held liable under RICO § 1962(c) and (d) for performing, under the guise of providing legal services, illegal acts … ."); Domanus v. Locke Lord LLP, 847 F.3d 469, 481-482 (7th Cir. 2017)(no allegations to tie the defendant-attorneys' alleged wrongdoing to the underlying purpose of the alleged racketeering conspiracy, and there was an "absence of allegations" that the attorneys' conduct involved "more than standard legal representation"); Design Pallets, Inc. v. Gray Robinson, P.A., 2008 U.S. Dist. LEXIS 59890 at *17 (M.D. Fla. 2008)(on a summary judgment motion, not a motion to dismiss, the court entered judgment for defendant law firm on RICO conspiracy claim, where the plaintiffs "failed to produce any evidence that the Law Firm agreed to do anything other than provide legal services. Furthermore, Plaintiffs have presented no evidence that any actions taken by any member of the alleged enterprise were illegal.")

exchange for patient referrals to the Path Medical Clinics, not that he provided legal services to the Path Medical Clinics.[12]

## V.        The Florida Litigation Privilege Presents No Bar to GEICO's State Law Claims

Landau also contends that the Florida litigation privilege bars GEICO's state law claims. See Landau Br., pp. 17-19. Once again, Landau's argument is based entirely on the mistaken notion that GEICO is seeking to hold him liable for the act of commencing and prosecuting PIP collections lawsuits on behalf of the Path Medical Clinics.

However, GEICO's state law claims against Landau are not based on the fact that he initiated or litigated collections suits on behalf of a client.  Rather, GEICO's state law claims against Landau are based on allegations that he accepted bribes in exchange for patient referrals, with the knowledge that the referrals would result in the submission of fraudulent PIP claims by the Path Medical Clinics to GEICO and other automobile insurers.

In this context, "[t]he litigation privilege protects only acts that take place during the course of a judicial proceeding, not those that take place before one begins." MI Windows & Doors, LLC v. Liberty Mut. Fire Ins. Co., 123 F. Supp. 3d 1332, 1340 (M.D. Fla. 2015)(internal quotations and citation omitted). While Florida courts have applied the litigation privilege to conduct that is "necessarily preliminary" to judicial proceedings, the conduct must be "really of a kind that can be regarded as having been undertaken in the course of a judicial proceeding and not conduct undertaken separately from it." AGM Investors, LLC v. Business

---

[12] Again, the case cited by Landau in support of his argument that a lawyer cannot conspire with his corporate client is inapposite. See Landau Br., p. 21, citing American Credit Card Tel. Co. v. National Pay Tel. Corp., 504 So. 2d 486, 487 (Fla. 1st DCA 1987). In National Pay Tel. Corp., there was no allegation that the attorney and law firm defendants did anything other than act as attorneys for or employees of their client. Id. at 487-488. Thus, any conduct on behalf of their client or employer was "wholly unilateral", precluding any conspiracy. Id. By contrast, in the present case GEICO very plausibly has alleged that Landau orchestrated the receipt of bribes in exchange for patient referrals. That sort of unlawful conduct is totally different than the act of representing a corporate client.

Law Group, P.A., 219 So. 3d 920, 924, 927-928 (Fla. 2d DCA 2017)(reversing summary judgment for defendant attorneys and law firm where unresolved factual disputes precluded a finding that their conduct was "necessarily preliminary" to judicial proceedings).

None of Landau's conduct that forms the basis of GEICO's claims against him was taken during the course of any litigation, nor was it necessarily preliminary to any litigation.[13]

## VI. Landau was Engaged in "Trade or Commerce" for Purposes of GEICO's FDUTPA Claim

Landau goes on to contend that: (i) attorneys, when representing their clients, are not engaged in "trade or commerce" within the meaning of the Florida Deceptive and Unfair Trade Practices Act (the "FDUTPA"); and (ii) because a defendant must be engaged in trade or commerce for a FDUTPA claim to lie, GEICO's FDUTPA claim should be dismissed. See Landau Br., pp. 19-20.

Landau's argument once again misconstrues the nature of GEICO's allegations against him, which should be crystal-clear from any fair reading of GEICO's detailed Complaint. GEICO is not seeking to hold Landau liable under the FDUTPA for providing legal services to his clients. Rather, GEICO's FDUTPA claim against Landau is based on allegations that he accepted bribes in exchange for patient referrals, in pervasive violation of the Patient Brokering

---

[13] Again, the cases cited by Landau are broadly inapposite, or else actually contravene his arguments. See Landau Br., pp. 17-19, citing Echevarria, McCalla, Raymer, Barrett & Frappier v. Cole, 950 So. 2d 380, 381 (Fla. 2007)(litigation privilege barred state law claims based on allegations that defendant attorneys acted unlawfully by asserting a claim for a debt that was in excess of the actual costs their clients incurred during foreclosure proceedings); Dyer v. Choice Legal Grp. P.A., 2015 U.S. Dist. LEXIS 75783 (M.D. Fla. 2015)(plaintiff's state law claim was based solely on the fact that the defendant law firm filed and maintained a foreclosure action, nothing more); Green Leaf Nursery v. E.I. DuPont de Nemours & Co., 341 F.3d 1292, 1303 (11th Cir. 2003)(all of the defendant's alleged wrongful conduct was committed during the course of litigation); AGM Investors, LLC, supra (court actually reversed summary judgment for defendant attorneys and law firms due to unresolved fact questions as to whether the defendants' conduct really was "necessarily preliminary" to judicial proceedings); Kelly v. Palmer, Reifler & Assocs., P.A., 681 F. Supp. 2d 1356, 1369 (S.D. Fla. 2009)(on summary judgment motion, rejecting application of the litigation privilege to attorney demand letters, where there was "conflicting evidence in the record" as to whether defendant law firm "acted in good faith in sending the demand letters.")

Act, Anti-Kickback Statute, and Self-Referral Act, with the knowledge that the referrals would result in the submission of fraudulent PIP claims by the Path Medical Clinics to GEICO and other insurers. Though Landau is an attorney, he was not acting as an attorney when he engaged in these activities, and he can be held liable under the FDUTPA for these activities. See, e.g., Palmer, Reifler & Assocs., P.A., 681 F. Supp. 2d at 1371 (declining to exclude attorneys from liability under the FDUTPA based solely on their status as attorneys).

In this context, numerous courts – including this Court – have recognized that insurers such as GEICO may assert claims under the FDUTPA based on fraudulent insurance billing. See, e.g., Physicians Group of Sarasota, L.L.C., 9 F. Supp. 3d at 1312-1313 (Kovachevich, J.)(observing that the FDUTPA is to be "liberally construed", rejecting motion to dismiss plaintiff-insurer's FDUTPA claims based on an automobile insurance fraud scheme, and noting that plaintiff-insurer had sufficiently alleged its FDUTPA claims in a very similar case by setting forth "the relationships between co-defendants and the roles played by each to conceal the nature of those relationships in order to ensure a continued supply of referrals to Physicians Group clinics")[14]; State Farm Mut. Auto. Ins. Co. v. Comprehensive Physician Servs., 2014 U.S. Dist. LEXIS 172824 at *6- *7 (M.D. Fla. 2014) (M.D. Fla. Dec. 15, 2014)(denying motion to dismiss plaintiff-insurer's FDUTPA claim based on automobile insurance fraud scheme).

## VII.    GEICO Has Stated a Claim Against Landau for Aiding and Abetting his Co-Defendants' Fraud

Landau contends that it is unclear whether aiding or abetting fraud exists as a cause of action in Florida. See Landau Br., p. 21. However, while courts have expressed uncertainty as

---

[14] GEICO respectfully submits that, in the present case, it has likewise set forth "the relationships between co-defendants and the roles played by each to conceal the nature of those relationships in order to ensure a continued supply of referrals to" the Path Medical Clinics.

to whether a cause of action for aiding and abetting fraud exists in Florida, they have nonetheless permitted well-pleaded aiding and abetting fraud claims to proceed. See, e.g., Hsi Chang v. JPMorgan Chase Bank, N.A., 845 F.3d 1087, 1098 (11th Cir. 2017)("Florida courts have assumed that the cause of action exists."); BCIJ, LLC v. LeFevre, 2010 U.S. Dist. LEXIS 28984 at *17 (M.D. Fla. 2010)(Kovachevich, J.)(denying motion to dismiss aiding and abetting fraud claim).

Landau goes on to contend that GEICO has not sufficiently alleged facts to demonstrate his actual knowledge of his co-Defendants' fraudulent scheme, and labels GEICO's "knowledge" allegations as "purely conclusory". See Landau Br., p. 22. For this proposition, Landau takes a single line from paragraph 540 of Plaintiffs' Complaint – that Landau "knowingly aided and abetting the fraudulent scheme" – divorces it completely from its context, and pretends that it is the sole allegation regarding his knowledge that is set forth in the Complaint. Id.

Of course, Landau omits to mention that, in several other places in the Complaint, GEICO very colorably alleges that Landau orchestrated and received illegal bribes – though both Landau & Associates and Motor City Accident Attorneys – in exchange for which Kanner and Pintaluga, his partners at Landau & Associates and Motor City Accident Attorneys, unlawfully cross-referred GEICO insureds to the Path Medical Clinics for medically unnecessary and otherwise unreimbursable services. In the context of this scheme – from which Landau personally and handsomely profited (via not only the right to handle virtually all of the Path Medical Clinics' collections work, which generated large attorneys' fees, but also from the "no-show" work as ersatz "co-counsel" on Michigan personal injury cases) – GEICO's "knowledge" allegations are not conclusory – they are plausible.

In any case, "[m]alice, intent, knowledge and other condition of mind of a person may be averred generally." Talib v. Skyway Communs. Holding Corp., 2005 U.S. Dist. LEXIS 33589 at *12 (M.D. Fla. 2005)(Kovachevich, J.), quoting Fed. R. Civ. P. 9(b). GEICO respectfully submits that – when assessed in their proper context – its allegations that Landau knowingly aided and abetted his co-Defendants' fraudulent scheme are more than sufficient.

GEICO also has sufficiently alleged that Landau provided substantial assistance to his co-Defendants' fraudulent scheme, by orchestrating and accepting bribes in exchange for patient referrals to the Path Medical Clinics – and acting to conceal that the bribes were bribes[15] – with the knowledge that they would result in the submission of fraudulent PIP claims to GEICO, from which he would personally profit.[16] Federal courts adjudicating analogous PIP fraud cases have held similar allegations sufficient to state both substantive fraud and aiding and abetting fraud claims. See, e.g., Physicians Group of Sarasota, L.L.C., supra, 9 F. Supp. 3d at 1311 (plaintiff-insurer stated common law fraud claims against all defendants in a similar alleged PIP fraud scheme, by setting forth "the relationships between co-defendants and the

---

[15] Landau – having had the opportunity to review Plaintiffs' papers in opposition to his original motion to dismiss – contends that GEICO has not alleged his concealment of the nature of the bribes. See Landau Br., p. 22, fn. 10. Landau is incorrect. For example, GEICO alleges that Motor City Accident Attorneys' no-show work as sham "co-counsel" on Michigan personal injury cases – an arrangement orchestrated by Landau, among others – was disguised, unlawful consideration for patient referrals to the Path Medical Clinics. See Docket No. 1, ¶ 202, and passim. More generally, giving every favorable inference to the allegations in GEICO's Complaint, it is clear that the unlawful quid-pro-quo arrangements Landau, Kanner, and Pintaluga orchestrated with the Path Medical Defendants and 411-PAIN Defendants were structured to conceal the fact that they were bribes.

[16] Landau appears to be aware that his receipt of bribes in exchange for patient referrals provides a sufficient factual basis for GEICO's aiding and abetting claims. He therefore proffers a red herring argument, to the effect that: (i) all he did was sue to collect on the fraudulent Path Medical claims; and (ii) by the time he sued to collect on the claims, GEICO no longer was relying on the claims. See Landau Br., pp. 23-24. This misses the point. GEICO is not trying to hold Landau liable for suing to collect on Path Medical claims that GEICO previously denied. Rather, GEICO alleges that it voluntarily paid – i.e., did not deny – fraudulent Path Medical claims that never would have materialized (i.e. the services would not have been provided) or submitted absent the Defendants' pervasive violations of the Patient Brokering Act, Anti-Kickback Statute, and Self-Referral Act, in which Landau played an integral part.

roles played by each to conceal the nature of those relationships in order to ensure a continued supply of referrals to Physicians Group clinics"); Gov't Emples. Ins. Co. v. Korn, 310 F.R.D. 125 (D.N.J. 2015)(denying motion to dismiss by health care providers alleged to have aided and abetted a PIP fraud scheme by knowingly referring GEICO insureds for treatment pursuant to illegal self-referral and kickback arrangements).

## VIII.   GEICO Has Stated a Claim Against Landau for Unjust Enrichment

Finally, Landau contends that GEICO cannot state a claim against him for unjust enrichment because: (i) GEICO did not confer any benefit directly on Landau; and (ii) GEICO cannot assert an unjust enrichment claim in tandem with tort claims. See Landau Br., pp. 24-26.

For his first proposition, Landau cites to Kopel v. Kopel, 229 So. 3d 812, 818 (Fla. 2017), which does note that "to prevail on an unjust enrichment claim, the plaintiff must directly confer a benefit to the defendant". However, federal courts in Florida – including in decisions issued after Kopel – have made clear that "direct benefit" is not the same thing as contractual privity, or direct contact. See, e.g., Li v. Walsh, 2017 U.S. Dist. LEXIS 114552 at *29 (S.D. Fla. 2017)(" [T]his Court has recognized that an unjust enrichment claim may go forward where a benefit is conferred through an intermediary, finding that direct contact, or privity, is not the equivalent of conferring a direct benefit.")

In this respect, GEICO has pleaded considerable facts – even at the pleading stage, and in advance of substantive discovery – to permit the Court to draw an inference that Landau and the Path Medical Defendants, on whom GEICO most certainly did confer a "direct benefit", were embarked together on a collusive and unlawful joint venture to engage in PIP fraud against GEICO and the automobile insurance industry. Against this backdrop, and considering

every favorable inference that may be drawn from the Complaint, GEICO's unjust enrichment claim against Landau should not be dismissed at the pleading stage. See, e.g., Wilson v. Everbank, N.A., 77 F. Supp. 3d 1202, 1237 (S.D. Fla. 2015)("[w]hether [Defendants] did or did not receive a direct benefit from Plaintiff is a question of fact that cannot be resolved at the motion to dismiss stage … .")(Internal quotations and citation omitted).

In keeping with this authority, this Court itself has refused to dismiss unjust enrichment claims under analogous circumstances. See, e.g., Physicians Group of Sarasota, L.L.C., supra, 9 F. Supp. 3d  at 1311-1312 (rejecting identical argument, and noting that "[i]t can be reasonably inferred that individuals intimately involved with the organization and operation of the entity that directly received a benefit have benefitted themselves so as to support a claim for unjust enrichment against them in their individual capacities.")(Internal quotations and citation omitted).[17]

Finally, Landau's contention that GEICO may not assert an unjust enrichment claim in tandem with its tort claims is an argument that repeatedly has been raised by defendants in similar PIP fraud cases, only to be rejected by the courts. See, e.g., Silver Star Health & Rehab, Inc., supra at * 16 (analyzing and rejecting the same argument raised by Landau herein); State Farm Mut. Auto. Ins. Co. v. Altamonte Springs Diagnostic Imaging, Inc., 2011 U.S. Dist. LEXIS 146926 at *14 (M.D. Fla. 2011)(rejecting substantially identical argument).

---

[17] In the Physicians Group of Sarasota, L.L.C. case, this Court also disposed of a related argument to the effect that the plaintiff-insurer could not have a claim for unjust enrichment because it supposedly received consideration in the form of health care services for its insureds. As this Court held, "Unlawfully rendered services … cannot qualify as adequate consideration." Physicians Group of Sarasota, L.L.C., 9 F. Supp. 3d at 1312; see also State Farm Fire & Cas. Co. v. Silver Star Health & Rehab, Inc., 2011 U.S. Dist. LEXIS 145629 at *16 (M.D. Fla. 2011)(rejecting identical argument)

**IX.** **To the Extent That the Court Finds any Defect, GEICO Requests Leave to Replead**

GEICO believes that its Complaint adequately alleges its claims against Landau. To the extent, however, that the Court finds the Complaint to be inadequate in any manner, GEICO respectfully requests leave pursuant to Fed. R. Civ. Proc. 15(a) to serve an amended complaint, as it believes that any such inadequacies would be merely issues of technical pleading rather than substantive defects in the claims. When a party requests leave to amend its complaint, permission generally should be freely granted. See, e.g., Chrystall v. Serden Techs., Inc., 2011 U.S. Dist. LEXIS 144613, at *18 (S.D. Fla. 2011).

<b><u>CONCLUSION</u></b>

Landau's motion to dismiss should be denied for the reasons set forth above.

Respectfully submitted,

*/s/ Max Gershenoff*
Barry I. Levy (admitted pro hac vice)
Max Gershenoff (admitted pro hac vice)
Christopher Casa (admitted pro hac vice)
RIVKIN RADLER LLP
926 RXR Plaza
Uniondale, New York 11550
Phone: (516) 357-3000
Facsimile:  (516) 357-3333
barry.levy@rivkin.com
max.gershenoff@rivkin.com
chritopher.casa@rivkin.com

Lindsey R. Trowell (FBN 678783)
John P. Marino (FBN 814539)
Kristen W. Bracken (FBN 92136)
SMITH, GAMBRELL & RUSSELL, LLP
50 North Laura Street, Suite 2600
Jacksonville, Florida 32202
Phone:  (904) 598-6100
Facsimile:  (904) 598-6204
ltrowell@sgrlaw.com
jmarino@sgrlaw.com
kbracken@sgrlaw.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on March 29, 2018, I electronically filed the foregoing document with the

Clerk of the Court using the CM/ECF system, which will send a notice of electronic filing to

the counsel of record in this case.

*John P. Marino*
Attorney